**IN THE U.S. DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **BRUCE SMITH,** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CAUSE NO. 5:23-cv-538** |
| | § | |
| **THE UNIVERSITY OF TEXAS AT** | § | |
| **SAN ANTONIO, THE UNIVERSITY** | § | |
| **OF TEXAS SYSTEM, JOANN** | § | |
| **BROWNING, AND THOMAS** | § | |
| **TAYLOR EIGHMY,** | § | |
| *Defendants.* | § | **Jury Demanded** |

---

**PLAINTIFF'S COMPLAINT**
**AND JURY DEMAND**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Bruce Smith, hereinafter called Plaintiff, complaining of and about the University of Texas at San Antonio, the University of Texas System, JoAnn Browning, and Thomas Taylor Eighmy hereinafter called Defendants, and for cause of action shows unto the Court the following:

**PARTIES AND SERVICE**

1.      Plaintiff, Bruce Smith, is an Individual whose mailing address is 13018 Woller Creek, San Antonio, Bexar County, Texas 78249.

2.      The last three numbers of Bruce Smith's driver's license number are 009. The last three numbers of Bruce Smith's social security number are 788.

3.      Defendant, the University of Texas at San Antonio, a public university in the state

of Texas, may be served by delivering a copy of the summons and complaint to the President of said public University, Thomas Taylor Eighmy, in his official capacity, at One UTSA Circle, Main Building, Suite 4.122, San Antonio, Texas 78249, through personal delivery, certified mail return receipt requested, or any other method permitted by state law.

4. Defendant, the University of Texas System, a public university system in the state of Texas, may be served by delivering a copy of the summons and complaint to the chief executive officer of the University of Texas System, James B. Miliken, in his official capacity, at 210 West 7th Street, Austin, Texas 78701, through personal delivery, certified mail return receipt requested, or any other method permitted by state law, or by and through General Counsel for the University of Texas System, Daniel H. Sharphorn, in his official capacity, at 210 West 7th Street, Austin, Texas 78701, through personal delivery, certified mail return receipt requested, or any other method permitted by state law.

5. Defendant, JoAnn Browning, an individual and a citizen of the State of Texas, may be served, in her personal capacity, with process at One UTSA Circle, BSE Building, Room 2.106F, San Antonio, Texas 78249, through personal delivery, certified mail return receipt requested, or any other method permitted by state law.

6. Defendant, Thomas Taylor Eighmy, an individual and a citizen of the State of Texas, may be served, in his personal capacity, with process at One UTSA Circle, Main Building, Suite 4.122, San Antonio, Texas 78249, through personal delivery, certified mail return receipt requested, or any other method permitted by state law.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the lawsuit because the action arises under the constitution and laws of the United States of America.

8.     This court has supplemental jurisdiction of state law claims, if any, discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

9.     This is an action under Article 1, Section 8 & 19, of the Texas Constitution, the First, Fifth, and Fourteenth Amendments of the United States Constitution, and 42 U.S.C. § 1983 to correct unlawful infringements of Plaintiff's constitutional rights, and 29 U.S.C. §§ 2601 et seq. to correct unlawful infringements of Plaintiff's rights under the Family and Medical Leave Act, as more fully described hereinafter.

## CONDITIONS PRECEDENT

10.     All conditions precedent to jurisdiction have occurred, been complied with, or otherwise satisfied.

## FACTUAL ALLEGATIONS

11.     Starting in the Fall 2001 semester, Dr. Bruce Smith ("Plaintiff" or "Dr. Smith") accepted an appointment to serve as a tenured professor at the University of Texas at San Antonio ("UTSA" or the "University").

12.     On July 18, 2018, an op-ed piece, authored by Plaintiff, was published in the San Antonio Express News. In that piece, Plaintiff wrote, "Last September, I gave a report to the Dean of the College of Engineering at UTSA that indicated that the electrical engineering program's present 126 credit-hour curriculum could be reduced to 120 and still satisfy all requirements of SACSCOC, ABET, as well as the state's requirements." Plaintiff also pointed out that other electrical engineering degrees from Texas public universities only require 120 hours. Plaintiff noted that at public universities, a portion of the cost of taking a course is paid by taxpayers. He reported that "each year the taxpayers pay 1 million dollars for the excess credit-hours in the

college [of engineering]." The rest is paid by students. In either case, requiring these unnecessary hours is harmful to members of the public. In summation, he asked that "the legislators require the curriculum of all electrical engineering programs in the state be reduced down to 120 credit-hours."

13.    On April 5, 2019, UTSA President, Dr. Thomas Taylor Eighmy ("President Eighmy" or "Dr. Eighmy") met with Plaintiff, to consider whether to act on a proposed termination recommended to him by the Dean of the College of Engineering, JoAnn Browning ("Dean Browning" or "Dr. Browning"). In that meeting, President Eighmy brought up the op-ed piece in the context of a potential removal of Plaintiff from his tenured professor position.

14.    On April 24, 2019, President Eighmy decided to "end the termination proceedings," and instead place Plaintiff on a Performance Improvement Plan ("PIP"). President Eighmy instructed "the Provost to develop a Performance Improvement Plan for you, in collaboration with [his] Dean," Dean Browning.

15.    On June 1, 2019, Plaintiff met with his supervisor, Dr. JoAnn Browning ("Dean Browning") and received the that PIP. It appeared to establish impossible standards. Thus, to be sure Plaintiff was understanding it correctly, Plaintiff sent emails to Dean Browning seeking clarification, and she responded in kind. Still, the clarified PIP expectations were excessive, unreasonably, and required Plaintiff to achieve some goals that were outside of his control.

16.    Accordingly, on July 15, 2019, Plaintiff filed a grievance to address these concerns. Plaintiff specifically complained that the PIP's research requirements were excessive and unreasonably, and could not be accomplished in the time provided.  Plaintiff explained how there would not be enough time in the day to complete the required work. The ombudsperson designated

to receive faculty grievances refused to accept (or hear) his grievance, and I was specifically told that it was "not a grievable action."

17.     Previously, Dr. Bruce Smith was in a bicycle accident. An unattended dog ran out in front of his bike causing him to flip over the handlebars and suffer serious injuries including broken ribs. This accident led to significant limitations and a lengthy recovery. As the beginning of the Fall 2019 semester was fast approaching, Dr. Smith sought medical guidance on whether he could safely perform the work in the PIP. Dr. Smith was still experiencing significant pain, shortness of breath, lack of stamina, and lightheadedness. He could not stand and lecture for extended periods of time.

18.     Thus, in August 2019, Plaintiff sought and was granted FMLA leave. Plaintiff's return to work came with restrictions and physical limitations. Plaintiff simply could not stand and lecture for more than 1 hour a day.  As a result, Dr. Browning modified the PIP to focus on research, instead of teaching. On or about September 1, 2019, Dr. Smith received the modified PIP ("Fall 2019 PIP"). While the PIP was titled Fall 2019 PIP for Dr. Bruce Smith, it required some actions to be completed "by the end of Spring 2020." In other words, it was anticipated, if not expected, that the PIP would extend through the following Spring. Thus, while UTSA sometimes refers to a Fall 2019 PIP and a Spring 2020 PIP, as if Dr. Smith was placed on two PIPs, it was just one PIP.

19.     Prior to coming to work under the Fall 2019 PIP, Plaintiff had been on a teaching-only assignment. That is, he had not conducted research in his field as part of his work, in approximately five years. As such, Dr. Smith had no research momentum. That is, Dr. Smith did not have research work in the pipeline. He had no co-authorship opportunities. Dr. Smith would have to start his research essentially from scratch. Equally, Dr. Smith had no research assistants or

graduate students to assist him in meeting the PIP's research expectations. Moreover, UTSA did not assign Plaintiff persons to assist with the research or otherwise assist him in fulfilling the PIP's requirements. In fact, UTSA provided Dr. Smith with no resources to help him successfully complete the PIP.

20.     Moreover, the requirements of the new PIP were steep. It required (1) that Plaintiff have "three conference papers accepted for regional or national conferences to be presented in Spring 2020"; (2) that Plaintiff "attend 4 research workshops hosted by the VPREDKE, as determined by the ECE Chair Prior to Fall 2019"; (3) that Plaintiff "write and submit two research proposals"; (4) that Plaintiff "write and submit . . . two peer reviewed journal (on Web of Science or Scopus) papers in Fall 2019"; (4) that "one peer-reviewed journal (on Web of Science or Scopus) paper . . . be accepted by the end of Fall 2019"; (5) that Plaintiff "must have 2 peer-reviewed journal (on Web of Science or Scopus) papers accepted by the end of Spring 2020" and (6) that Plaintiff attend "workshops and professional development activities through the UTSA Teaching & Learning Services." These PIP requirements were substantively the same as those under the pre-FMLA PIP. Thus, as Plaintiff had already filed a complaint and sought to grieve these same requirements in the pre-FMLA version of the PIP, and as he was told by UTSA that the PIP was "not grievable," he did not file a second grievance or complaint.

21.     At the end of the Fall 2019 semester, Plaintiff submitted a report summarizing his efforts under the PIP. Attached to that report were 26 pages (or approximately 42 manuscript pages) of draft or accepted research papers, illustrating his progress towards achieving the goals of the Fall 2019 PIP. Those pages including a conference paper (that had been accepted), a patent disclosure (on a research idea Plaintiff was pursuing), and a demonstration (titled "Demonstration and Discussion of AvgM Algorithm for North Star Imaging, Inc."). It was, nevertheless,

determined that Plaintiff had not met the PIP requirements. The PIP continued into the Spring 2020 semester (the "Spring 2020 PIP" hereafter).

22.     The requirements for the Spring 2020 PIP were identical to those in the Fall 2019 PIP. To meet those requirements, Plaintiff continued to progress on two significant research thrusts, which he began in the fall semester. Unfortunately, the global pandemic made accomplishing those goals even more difficult. Nonetheless, Plaintiff produced 19 more pages of research (30 manuscript pages). Further, Plaintiff outlined efforts to gain funding, secure a patent, establish a partnership with private firms, build a relationship with the Air Force, and other steps toward achieving the ultimate research goals established by the PIP.

23.     On May 1, 2020, Plaintiff submitted a report of his work under the Spring 2020 PIP. Attached to that report were the 19 pages of a draft paper to be submitted for possible publication in a journal and in white paper.

24.     On May 22, 2020, Dr. Browning recommended Plaintiffs' termination on the basis that Plaintiff had failed to complete the PIP's requirements. However, Dr. Browning also relied on several old grounds for termination that had previously been rejected by President Eighmy, who instead elected to have Plaintiff placed on a PIP.  Those grounds were student drop-fail-withdraw ("DFW") rates, student evaluations, and a March 2013 PIP.

25.     The matter was referred to Provost Dr. Kimberly Andrews Espy ("Provost Espy" or "Dr. Espy"). Dr. Espy adopted Dr. Browning's recommendation and the matter was forwarded to President Eighmy.

26.     On January 22, 2021, President Eighmy sent a letter indicating in relevant part that:

 My decision to refer this matter to a special hearing tribunal is based on the charges
 and evidence presented that establish your inability or unwillingness to meet the
 requirements of your Fall 2019 and Spring 2020 Performance Improvement Plans
 (PIPs) or otherwise demonstrate a commitment to improve your performance as a

UTSA tenured faculty member. The facts supporting these charges are described in detail in the July 21, 2020, memorandum and exhibits submitted to me by Dr. Espy, of which you were provided a copy.

In your in-person and written response, you repeatedly emphasize your disagreement with the appropriateness or achievability of the PIPs' metrics. Your disagreement with the metrics did not excuse your obligation to put forth effort to achieve them or permit you to substitute your own performance measures. Further, the evidence in Dr. Espy's memorandum and exhibits combined with your responses support the charges that you did not fulfill the requirements of the PIPs or adequately attempt to achieve them.

The Fall 2019 and Spring 2020 PIPs were issued as a result of a prior Rule 31008 process initiated to terminate your tenured appointment. In April 2019, I decided not to recommend termination but instead directed that you be placed on a PIP. In my April 24, 2019, letter, I explained that it was my expectation that you would resolve the deficiencies in your performance through achieving the milestones laid out in a PIP Plan, which would be designed to provide you the opportunity and structure to successfully meet the performance expectations of your faculty responsibilities. I also explained that failure to improve your performance and cure the deficiencies will lead to further disciplinary action up to and including termination.

I will write to you soon regarding the scheduling of the hearing. My next notification to you will identify the names of the faculty members selected for the tribunal, and of the date, time, and place (or remote logistics) for the hearing.

27.     On February 8, 2021, Dr. Eighmy send a letter to Dr. Smith via email identifying the faculty members selected for the tribunal and giving Dr. Smith an opportunity to object to the selected members if Dr. Smith was "not satisfied with the fairness or objectivity of any member." That letter further stated: "In my letter dated January 22, 2021, I informed you of the charges against you in connection with the continuation of your employment as a tenured faculty member of the University of Texas at San Antonio and notified you of my decision to convene a special hearing tribunal to hear the charges."

28.     On March 23, 2021, Plaintiff wrote a letter to President Eighmy's chief of staff, Carlos Martinez. (President Eighmy had delegated the task of handling Plaintiff's hearing to Mr. Martinez). To ensure absolute clarity and transparency, Plaintiff asked President Eighmy's office

in that letter for "[n]otice of the charges or allegations that the University will rely on at the Hearing to support Dr. Smith's termination as a tenured faculty member at UTSA." The Charges in President Eighmy's letter dated January 22, 2021, only pointed to Dr. Smith's alleged "inability or unwillingness to meet the requirements of your Fall 2019 and Spring 2020 Performance Improvement Plans (PIPs) or otherwise demonstrate a commitment to improve your performance as a UTSA tenured faculty member."

29.     On March 26, 2021, UT System attorney Paige Barnett responded, on behalf of the University, to Plaintiff's request for "Notice of the charges or allegations that the University will rely on at the Hearing to support Dr. Smith's termination as a tenured faculty member at UTSA" as follows: "[UT System attorneys] Ms. Barbour and Ms. Tynan will present the University's case based on the charges and allegations referenced in Dr. Eighmy's January 22, 2021, letter to Dr. Smith, including but not limited to Paragraph 3 of that letter." Ms. Barnett then quoted Paragraph 3 of the letter, which was:

> My decision to refer this matter to a special hearing tribunal is based on the charges and evidence presented that establish your inability or unwillingness to meet the requirements of your Fall 2019 and Spring 2020 Performance Improvement Plans (PIPs) or otherwise demonstrate a commitment to improve your performance as a UTSA tenured faculty member. The facts supporting these charges are described in detail in the July 21, 2020, memorandum and exhibits submitted to me by Dr. Espy, of which you were provided a copy.

30.     No other communications were exchanged on this topic, and the University never attempted to further clarify the "charges to be heard" by the panel. Clearly, the charges were that Plaintiff's failure to meet  the goals of the Fall 2019-Spring 2020 PIP and/or failure to otherwise show improvement under the Fall 2019/Spring 2020 PIP. Plaintiff did not expect other charges to be made by the University at hearing.

31.     On April 26 and 27 of 2021, the special hearing tribunal heard the matter. During the hearing, evidence was offered and testimony adduced by the UTSA that introduced other charges, for which Plaintiff did not receive adequate notice, including a 2013 PIP, vague assertions of anonymous student complaints, DFW rates and student ratings, and other matters that were not related to the 2019-2020 PIP.

32.     At hearing, the University essentially argued that the overall performance and employment record of Dr. Smith over a period of almost 10 years warranted his termination. Moreover, UTSA introduced evidence on these matters to. In just one exhibit submitted by UTSA, comprised of 331 pages, UTSA included the entire memorandum and exhibits of Dr. Espy's recommendation to Dr. Eighmy that Plaintiff be discharged, including materials related to the 2013 PIP.

33.     Yet, President Eighmy's charging letter of January 22, 2021 made no mention of the 2013 PIP, anonymous student complaints, and other matters that occurred before the 2019-2020 PIP. Moreover, UTSA and the UT System were clear that all the charges to be submitted for hearing to the panel were in President Eighmy's letter of January 22, 2021, not Dr. Espy's memo recommending to President Eighmy that Plaintiff be discharged.

34.     Further, during the hearing, some panel members engaged in misconduct, including by offering their own testimony and information which they had obtained by googling topics during the hearing.

35.     On July 7, 2021, the hearing tribunal issued is recommendation that Plaintiff be terminated by a 3-2 vote. The tribunal's majority wrote, "After considerable discussion and analysis, the Panel concluded with a majority decision of 3-2 to recommend termination of Dr. Bruce Smith's employment with UTSA."

36. The panel's majority made clear that it was the totality of Dr. Smith's work history at UTSA that formed the basis for their decision. "The decision was made after thoughtful discussions of Dr. Smith's work and performance *as well as the path and processes that led to the hearing*. While the Panel's decision is not unanimous, there is agreement of Dr. Smith's continued lack of performance despite the implementation of two performance improvement plans (PIPs) in 2013-14 and 2019-20." In other words, the panel's decision was based on "the 2013-14 PIPs," and everything else encompassed by his "disciplinary," "work and performance" history going back to 2013, if not further.

37. On July 27, 2021, Dr. Eighmy adopted the recommendation of the panel's majority, and thus decided to "recommend the termination of [Dr. Smith's] tenure and appointment at UTSA to The University of Texas System Board of Regents." In that letter, Dr. Eighmy recounted some of the findings of the Panel including that Dr. Smith "demonstrated a continued lack of performance despite the implementation of two performance improvement plans (PIPs) in 2013-14 and 2019-20." In doing so, Dr. Eighmy noted that "the change in workload track (including allocations to teaching/research) did not generate a demonstrable improvement in your performance when either teaching or research was the primary responsibility." Then, Dr. Eighmy wrote:

> I have reviewed all of the evidence of record in the Tribunal proceedings, including Provost Espy's letter of July 21, 2020, and your response of December 4, 2020, and also reviewed the hearing transcript, and the Tribunal's findings and conclusions. After careful review and consideration, I believe that good cause exists for the termination of your tenure and appointment at UTSA.

38. Provost Espy's letter of July 21, 2020 set out several charges or grounds for termination, including Dr. Smith's alleged "failure to meet the Requirements of [a] Fall 2013 PIP," alleged "Performance Issues Outlined in [a] 2018 Recommendation for Termination," his alleged "[f]ailure to meet the Requirements of [the] Fall 2019 Modified PIP," and his alleged "[f]ailure to

meet the Requirements of [the] Spring 2020 PIP." Yet, when specifically asked for notice of the charges against him, UTSA failed to provide Plaintiff with notice that it would rely on "Provost Espy's letter of July 21, 2020" to supply the grounds for termination. This was particularly harmful to Plaintiff because President Eighmy did not have to accept all or any of Dr. Espy's charges.

39.     Under the University of Texas System ("UT System") Board of Regent Rule 31008, once Provost Espy recommended termination to President Eighmy, President Eighmy was tasked with determining whether "the allegations [were] supported by evidence that justifies the initiation of termination procedures." If President Eighmy decided a charge warranted referral to a hearing tribunal (comprised of faculty members), he was required to inform the accused faculty member of the charges in writing. The only charges UTSA ever provided to Plaintiff were in President Eighmy's January 22, 2021 letter, which specified that Plaintiff's failure to meet the requirements of the Fall 2019 and Spring 2020 PIP warranted his removal. The hearing tribunal panel was then tasked with determining whether on the basis of those charges, they believed that UTSA had met its burden of showing that good cause for the termination.

40.     In his July 27, 2021 letter recommending that the UT System Board of Regents ("Regents") terminate Plaintiff's tenured faculty appointment, President Eighmy specifically relied on a finding of the Panel that Plaintiff had failed to meet the PIP despite being allowed intermittent FMLA leave that reduced his workload. Plaintiff's FMLA should not have been a factor in the Tribunal or President Eighmy's recommendations.

41.     On August 5, 2021, Plaintiff wrote separately to the Regents. Therein, Plaintiff pointed out that UTSA had held his FMLA against him and that his due process rights have been violated. While President Eighmy's January 22, 2021 charging letter only charged Plaintiff with being unable or unwilling "to meet the requirements of your Fall 2019 and Spring 2020

Performance Improvement Plans (PIPs)," President Eighmy's letter to the Regents recommending that the Regent's terminate Plaintiff's tenured appointment cited Plaintiff's "continued lack of performance despite the implementation of two performance improvement plans (PIPs) in 2013-13 and 2019-20."

42.     On November 18, 2021, the UT System Board of Regents (the "Regents") convened a meeting of the board. At that meeting, the Regents voted to approve the recommendation for termination of Plaintiff's faculty appointment at UTSA.

## COUNT 1: VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION

43.     Plaintiff had a property interest, under the United State's Constitution, in his continued employment as he was a tenured public university professor.

44.     Plaintiff was deprived of his property interest in his tenured appointment as a UTSA professor without due process of law. A tenured professor at a public university "is entitled under the Fourteenth Amendment to the following minimum due process rights in connection with termination of his services: (1) to be advised of the cause of the termination [or of the charges to be heard] in sufficient detail to permit him to show any error that may exist; (2) to be advised of [if he does not himself hear] the names and nature of the testimony of the witnesses against him; (3) to be afforded a meaningful opportunity to be heard in his own defense within a reasonable time and (4) before a tribunal that possesses some expertise and an apparent impartiality toward the charges." *See Wells v. Dall. Indep. Sch. Dist.*, 793 F.2d 679, 682 (5th Cir. 1986).

45.     UTSA and the UT System terminated his tenured appointment on the basis of charges for which Plaintiff did receive adequate notice. Plaintiff specifically asked that Defendants provide him with notice of the charges so that he could prepare his defense. President Eighmy's

charging letter only mention the 2019-2020 PIP. Defendants pointed to President Eighmy's charging letter as being the sole source of the charges.

46.     Accordingly, Plaintiff did not prepare for a Tribunal hearing that would charge him with a long history of underperforming. Plaintiff obtained an expert witness. Plaintiff did not ask his expert witness to evaluate whether the totality of Plaintiff's performance going back to the alleged performance deficiencies prompting the 2013 PIP and continuing to the conclusion of the 2019-2020 PIP.

47.     Thus, Plaintiff was not given notice of the charges to be heard by the Tribunal, in sufficient detail to permit him to show any error that may exist. Moreover, he was denied a meaningful opportunity to respond to those charges since he was not apprised that those charges would be heard by the Tribunal.

48.     At hearing, Defendants advanced a charge that over a seven year plus period Plaintiff had failed to adequately perform and presented evidence, including Espy's July 21, 2020 memorandum and exhibits, purporting to show Plaintiff's performance deficiencies of that entire period. Lacking notice, Plaintiff was unable to meaningfully respond, including by expert testimony.

49.     The Tribunal's decision was 3-2 and specifically relied on this prior history to ensure a majority. Defendants introduced grounds for dismissal, for which Plaintiff received inadequate notice, and evidence related to those surprise grounds for dismissal at the Tribunal hearing. Then, President Eighmy relied on those same grounds.

50.     Further, UTSA and the UT System terminated his tenured appointment on the basis of  those charges, for which Plaintiff did receive adequate notice. Plaintiff specifically asked that Defendants provide him with notice of the charges so that he could prepare his defense. President

Eighmy's charging letter only mention the 2019-2020 PIP. Defendants pointed to President Eighmy's charging letter as being the sole source of the charges.

51.     By relying on these charges and presenting evidence that had no relevancy to the charges, for which Plaintiff did receive notice, but purported to establish other grounds for his removal, Defendants deprived Plaintiff of his Due Process rights to notice of the charges to be heard and meaningful opportunity to respond.

52.     Finally, the Tribunal's reliance on Google and evidence outside of the record meant that evidence was introduced by the Tribunal, for which Plaintiff received no notice. Defendants' policies were the moving force behind this violation because the Tribunal was not specifically instructed or prohibited by Defendants' policies from considering charges and evidence, of which Plaintiff received no or inadequate notice. By Googling evidence and relying on charges outside of those specified by the UTSA and the UT System and engaging in other improprieties, the policy or practice of Defendants was the moving force behind the deprivation of Plaintiff's constitutional rights and the direct cause of his termination.

## COUNT 2: VIOLATIONS OF THE DUE PROCESS CLAUSE OF THE TEXAS CONSTITUTION

53.     Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs, specifically those from Count 1, as if repeated verbatim herein.

54.     Plaintiff had a property interest, under the Texas Constitution, in his continued employment as he was a tenured public university professor.

55.     Plaintiff was deprived of his property interest without due process of law. Specifically, Plaintiff was provided with no or inadequate notice that the charges to be heard would include anonymous student complaints, police reports, alleged altercations, alleged performance deficiencies under a 2013 PIP, alleged evidence of a lack of student success (including student

DFW rates and student evaluations), and all the charges and evidence included in Dr. Espy's July 21, 2020 memorandum recommending Plaintiff's termination to President Eighmy, but not adopted by President Eighmy in his January 22, 2021 charging letter. Many of these inadequately noticed charges were not even supported by evidence, except the testimony of Dean Browning.

56.     At hearing, Defendants advanced a charge that over a seven year plus period Plaintiff had failed to adequately perform and presented evidence, including Dr. Espy's July 21, 2020 memorandum and exhibits, purporting to show Plaintiff's performance deficiencies of that entire period.

57.     Accordingly, Plaintiff did not prepare for a Tribunal hearing that would charge him with a long history of underperforming. Plaintiff obtained an expert witness. Plaintiff did not ask his expert witness to evaluate whether the totality of Plaintiff's performance going back to the alleged performance deficiencies prompting the 2013 PIP and continuing through May 2020.

58.     Thus, Plaintiff was not given notice of the charges to be heard by the Tribunal, in sufficient detail to permit him to show any error that may exist. Moreover, he was denied a meaningful opportunity to respond to those charges since he was not apprised that those charges would be heard by the Tribunal.

59.     At hearing, Defendants advanced a charge that over a seven year plus period Plaintiff had failed to adequately perform and presented evidence, including Espy's July 21, 2020 memorandum and exhibits, purporting to show Plaintiff's performance deficiencies of that entire period. Lacking notice, Plaintiff was unable to meaningfully respond, including by expert testimony.

60.     The Tribunal's decision was 3-2 and specifically relied on this prior history to ensure a majority. Defendants introduced grounds for dismissal, for which Plaintiff received

inadequate notice, and evidence related to those surprise grounds for dismissal at the Tribunal hearing. Then, President Eighmy relied on those same grounds.

61.     UTSA and the UT System terminated his tenured appointment on the basis of those charges, for which Plaintiff did receive adequate notice. Plaintiff specifically asked that Defendants provide him with notice of the charges so that he could prepare his defense. President Eighmy's charging letter only mention the 2019-2020 PIP. Defendants pointed to President Eighmy's charging letter as being the sole source of the charges.

62.     By relying on these charges and presenting evidence that had no relevancy to the charges, for which Plaintiff did receive notice, but purported to establish other grounds for his removal, Defendants deprived Plaintiff of his Due Process rights to notice of the charges to be heard and meaningful opportunity to respond.

63.     Finally, the Tribunal's reliance on Google and evidence outside of the record meant that evidence was introduced by the Tribunal, for which Plaintiff received no notice. Defendants' policies were the moving force behind this violation because the Tribunal was not specifically instructed or prohibited by Defendants' policies from considering charges and evidence, of which Plaintiff received no or inadequate notice. By Googling evidence and relying on charges outside of those specified by the UTSA and the UT System and engaging in other improprieties, the policy or practice of Defendants was the moving force behind the deprivation of Plaintiff's constitutional rights and the direct cause of his termination.

**COUNT 3: SUBSTANTIVE DUE PROCESS—42 U.S.C. § 1983**

64.     Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs, as if repeated verbatim herein.

65.     Plaintiff had a property interest, under the Texas Constitution, in his continued

employment as he was a tenured public university professor.

66.    Plaintiff was deprived of his property interest without due process of law because the UT System and the UTSA's termination of that interest was arbitrary and capricious. Defendants relied on the conclusion that Plaintiff did not meet the requirements of his performance improvement plan or produce documented progress towards meeting those same requirements. But, no reasonable person could have reached this conclusion. Plaintiff produced two PIP reports with 72 manuscript pages of documented progress towards meeting the PIP's requirements.

67.    Moreover, the Tribunal's misconduct, including conducting independent research using google during the hearing, violates our accepted notions of due process and fair play.

**COUNT 4: FIRST AMENDMENT VIOLATIONS—42 U.S.C. § 1983**

68.    Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs, as if repeated verbatim herein.

69.    At the time of Plaintiff's protected speech, Plaintiff was acting as a private citizen speaking on a matter of public concern. Plaintiff spoke as a citizen on a matter of public concern by publishing the aforementioned op-ed piece. The op-ed piece was not made pursuant to his official duties, and Plaintiff did not hold himself out as speaking in his official capacity or as speaking on behalf of his public employer.

70.    The op-ed piece was brought up at termination proceeding with President Eighmy, and thus appears to be an impermissible factor in Plaintiff's discharge. It was a substantial or motivating factor behind the adverse actions that Plaintiff suffered.

71.    Plaintiff's speech did not harm the interest of the UTSA or the UT System, as an employer, in promoting the efficiency of the public services it performs through its employees.

72.    The adverse employment actions taken against Plaintiff would deter a person of

ordinary firmness from continuing to engage in the protected speech.

73.     The adverse employment actions taken against Plaintiff thus violated his constitutional rights under the First Amendment to the United States Constitution.

74.     Plaintiff asserts that the Defendants are liable for Plaintiff's termination because the decision to terminate Plaintiff was (1) a decision (or official policy) made by the regents, i.e., the UT System's final policymaking authority and (2) the moving force behind the deprivation of Plaintiff's constitutional rights. The Regents were aware of Plaintiff's speech.

75.     Alternatively, Plaintiff assets that Defendants, President Eighmy and Dean Browning, are liable in their individual or personal capacity because they exhibited retaliatory animus and exerted influence over the decision of the final policymaking authority, the Regents, in making the decision to terminate Plaintiff's tenure appointment, or because they individually or personally took adverse employment actions against Plaintiff, including his placement on leave, his removal from access to his office and resources, and other actions,  which were the moving force behind the deprivation of Plaintiff's First Amendment constitutional rights.

76.     Plaintiff further asserts, in the alternative, that the UTSA or the UT System is liable because Defendants, President Eighmy and Dean Browning, were the *de facto* final policymaking authority that made the decision to take an adverse employment action against Plaintiff, or that they were authorized by the final policymaking authority to do the same, or that they conspired with one another and/or the final policymaking authority to do the same, and because said conduct, adverse employment actions, and the decision to take an adverse employment action were the moving force behind the deprivation of Plaintiff's constitutional rights.

## COUNT 5: VIOLATIONS OF ARTICLE 1, SECTION 8, OF THE TEXAS CONSTITUTION

77.     Plaintiff incorporates by reference the factual allegations contained in the preceding

paragraphs, especially at Count 4, as if repeated verbatim herein.

78.     At the time of Plaintiff's protected speech, Plaintiff was acting as a private citizen speaking on a matter of public concern. Plaintiff spoke as a citizen on a matter of public concern by publishing the aforementioned op-ed piece. The op-ed piece was not made pursuant to his official duties, and Plaintiff did not hold himself out as speaking in his official capacity or as speaking on behalf of his public employer.

79.     The op-ed piece was brought up at termination proceeding with President Eighmy, and thus appears to be an impermissible factor in Plaintiff's discharge. It was a substantial or motivating factor behind the adverse actions that Plaintiff suffered.

80.     Plaintiff's speech did not harm the interest of the UTSA or the UT System, as an employer, in promoting the efficiency of the public services it performs through its employees.

81.     The adverse employment actions taken against Plaintiff would deter a person of ordinary firmness from continuing to engage in the protected speech.

82.     The adverse employment actions taken against Plaintiff thus violated his constitutional rights under the First Amendment to the United States Constitution.

83.     Plaintiff asserts that the Defendants are liable for Plaintiff's termination because the decision to terminate Plaintiff was (1) a decision (or official policy) made by the regents, i.e., the UT System's final policymaking authority and (2) the moving force behind the deprivation of Plaintiff's constitutional rights. The Regents were aware of Plaintiff's speech.

84.     Alternatively, Plaintiff assets that Defendants, President Eighmy and Dean Browning, are liable in their individual or personal capacity because they exhibited retaliatory animus and exerted influence over the decision of the final policymaking authority, the Regents, in making the decision to terminate Plaintiff's tenure appointment, or because they individually or

personally took adverse employment actions against Plaintiff, including his placement on leave, his removal from access to his office and resources, and other actions,  which were the moving force behind the deprivation of Plaintiff's First Amendment constitutional rights.

85.     Plaintiff further asserts, in the alternative, that the UTSA or the UT System is liable because Defendants, President Eighmy and Dean Browning, were the *de facto* final policymaking authority that made the decision to take an adverse employment action against Plaintiff, or that they were authorized by the final policymaking authority to do the same, or that they conspired with one another and/or the final policymaking authority to do the same, and because said conduct, adverse employment actions, and the decision to take an adverse employment action were the moving force behind the deprivation of Plaintiff's constitutional rights.

86.     Plaintiff's n termination by Defendants thus violated his constitutional rights under Article 1, Section 8, of the Texas Constitution.

### COUNT 6: FAILURE TO ADEQUATELY TRAIN—42 U.S.C. § 1983

87.     Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs and counts, as if repeated verbatim herein.

88.     Defendants, the UT System and UTSA, are liable for failure to train or properly instruct the Tribunal.

89.     Defendants' training practices were inadequate, Defendant was deliberately indifferent to the rights of others in adopting them such that the failure to train reflects a conscious choice by Defendants, the UTSA and the UT System, and the alleged deficiency in the training procedures actually cause Plaintiff's injury.

90.     Defendant's inadequate training practices cause the constitutional tort and harm complained of herein.

91.     Defendants' actions directly resulted in the deprivation of Plaintiff's constitutional rights, including of notice of the charges to be made against him at hearing and the evidence to be used and a meaningful opportunity to respond. He was denied a fair tribunal. As a result of those acts, Plaintiff has suffered economic and psychological harm.

## COUNT 7: FMLA INTERFERENCE AND RETALIATION

92.     Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs and counts, as if repeated verbatim herein.

93.     It is unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the FMLA.

94.     Plaintiff claims that he was entitled to half day's off from work under the FMLA and that Defendants interfered with, restrained, or denied his entitlement to that time off by requiring that he complete work that could not be performed on a half-day, 50% workload.

95.     Plaintiff further claims that he was entitled to, but was not, restored to the position he held when the leave began, or to a position that had equivalent employment benefits, pay, and other terms and conditions.

96.     Plaintiff was entitled to FMLA leave, sought FMLA leave, and received FMLA leave on the basis of a "serious health condition" that made the employee intermittently unable to perform the functions of his position.

97.     Plaintiff complied with Defendants requirements for applying for and seeking FMLA leave. Defendants ostensibly granted that FMLA, but proceeded to assign Plaintiff a full day's work.

98.     Moreover, Defendants retaliated against Plaintiff for exercising the aforementioned FMLA rights. Defendants FMLA leave ended February of 2021. In May 2021, Plaintiff's

supervisor, Dean Browning, placed him on administrative leave and proposed his termination. That is, the adverse action occurred very close in time to Plaintiff's exercise of his FMLA rights.

99.    Defendant, President Eighmy, acting in his capacity as representative of the UTSA and the UT System, specifically mentioned Plaintiff's grant of half-day FMLA leave in concluding that despite this gratuity, Plaintiff still failed to meet the PIP's requirements. That is, Defendants held Plaintiff's exercise of his FMLA rights against him.

## INJUNCTION

100.    Plaintiff seeks that the court enjoin the Defendants from engaging in unlawful employment practices, continuing to suppress Plaintiff's speech, and denying Plaintiff due process of law. Plaintiff seeks that the court enjoin Defendants to rehire Plaintiff, reinstate Plaintiff to the position and pay grade which Plaintiff held but for the unlawful employment actions of Defendant, and afford him the process to which he was entitled to under our Constitution and laws.

## DAMAGES

101.    Plaintiff has sustained damages exceeding this Court's jurisdictional minimum, as a result of the actions and/or omissions of Defendants described hereinabove, including, but not limited to: Backpay and interest on backpay; Frontpay in an amount the Court deems equitable and just to make Plaintiff whole; Loss of benefits or privileges of employment; Expert fees as the Court deems appropriate; Court costs; Mental anguish in the past; Mental anguish in the future; Emotional pain; Prejudgment interest; and Postjudgment interest.

## ATTORNEY'S FEES

102.    Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b). Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court

of Appeals and the Supreme Court, as the Court deems equitable and just.

## JURY DEMAND

103.    Plaintiff demands a jury trial and tender the appropriate fee with this petition.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Bruce Smith, respectfully prays

that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause,

judgment be entered for the Plaintiff against Defendants for damages requested hereinabove in an

amount in excess of the minimum jurisdictional limits of the Court, together with prejudgment and

postjudgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and

such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled

or unpled.

Respectfully submitted,

THE GILBREATH LAW FIRM, PLLC

13000 Old Blanco Rd., Suite 304
San Antonio, Texas 78216
TEL NO.: (210) 479-3195
FAX NO.: (210) 479-8452

By:        */s/  Jeremy Gilbreath*
Jeremy Gilbreath
State Bar No. 24069783
jeremy@gilbreathfirm.com
Attorney for Plaintiff
Bruce Smith