THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRUCE SMITH, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | |
| THE UNIVERSITY OF TEXAS AT | § | |
| SAN ANTONIO, THE UNIVERSITY | § | NO. 5:23-cv-538-OLG |
| OF TEXAS SYSTEM, JOANN | § | |
| BROWNING, AND THOMAS | § | |
| TAYLOR EIGHMY, | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' RULE 12 MOTION TO DISMISS SECOND AMENDED COMPLAINT

The University of Texas at San Antonio ("UTSA"), The University of Texas System ("UT System"), Dr. JoAnn Browning, and Dr. Taylor Eighmy[1] move to dismiss Plaintiff Bruce Smith's Second Amended Complaint (Dkt. 11) pursuant to Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2]

## I.    INTRODUCTION & SUMMARY OF ARGUMENT

Smith was formerly a tenured professor in UTSA's Department of Electrical and Computer Engineering. He was terminated in November 2021 for persistently poor performance but now sues Defendants for alleged violations of the United States and Texas Constitutions, the Family & Medical Leave Act ("FMLA"), the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 (Title VII), and Chapter 21 of the Texas Labor Code ("Chapter 21" or "TCHRA"). But Smith's claims are entirely barred by a combination of sovereign and qualified immunity and his failure to state a plausible claim for relief on any theory. The Court should dismiss his suit in full.

---

[1] This Motion refers to UTSA and UT System as the "Institutional Defendants" and Dr. Browning and Dr. Eighmy as the "Individual Defendants."

[2] Defendants certify compliance with the Court's pre-motion conferral requirements. *See* Certificate of Conference, *infra.* Smith had until October 27 to amend his complaint a third time pursuant to the parties' conferral. *See* Dkt. 13. He did not, so this motion is procedurally proper.

## II.   S‌TANDARDS OF R‌EVIEW

### A.   *Rule 12(b)(1)*

Dismissal is appropriate under Rule 12(b)(1) for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted). The plaintiff bears the burden of proving subject-matter jurisdiction. *Ramming v. United State*s, 281 F.3d 158, 161 (5th Cir. 2001). A court may find lack of subject matter jurisdiction from "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Santos v. United States*, 565 F. Supp. 3d 871, 873 (W.D. Tex. 2021) (citation omitted).

### B.   *Rule 12(b)(6)*

12(b)(6) dismissal is appropriate when the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Jackson v. City of Hearne, Tex*., 959 F.3d 194, 200 (5th Cir. 2020) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, a court may consider documents "referred to in the complaint and . . . central to the plaintiff's claims" and may also take judicial notice of matters of public record. *Walker v. Beaumont Indep. Sch. Dist*., 938 F.3d 724, 735 (5th Cir. 2019); *Basic Cap. Mgmt v. Dynex Cap.*, 976 F.3d 585, 589 (5th Cir. 2020).

Additionally, the Individual Defendants plead qualified immunity. *See* Part V.G, *infra*. Thus, even if he states a claim in the abstract, Smith bears a heightened burden to plead specific facts showing: (1) the Individual Defendants violated his statutory or constitutional rights; and (2) their conduct was objectively unreasonable in light of clearly established law. *Jackson*, 959 F.3d at 201; *Sebastiani v. Bexar Cnty. Hosp. Dist.*, No. SA-20-CV-01093, 2021 WL 11710301, at *5 (W.D. Tex. Sept. 21, 2021) (Garcia, J.).

### III.   SUMMARY OF RELEVANT ALLEGATIONS

1.      Smith was a tenured engineering professor at UTSA from Fall 2001 until November 18, 2021. *See* Dkt. 11 ¶¶ 13, 46. He displayed poor performance as far back as 2013, when his superiors first placed him on a Performance Improvement Plan ("PIP"). *See id.* ¶¶ 35-37, 40-42.

2.      In November 2017, Dr. Browning, then-Dean of UTSA's College of Engineering[3], recommended Smith's termination for continued poor performance. *See id.* ¶ 15; Ex. A (Espy Memo[4]) at 2-3 (confirming November 2017 recommendation date).

3.      On July 18, 2018, Smith wrote an op-ed for the San Antonio Express News echoing opinions from a "report" he had provided to Dr. Browning the previous fall. *See* Dkt. 11 ¶ 14.

4.      In April 2019, Smith met with Dr. Eighmy, UTSA's president, to discuss his proposed termination. *Id.* ¶ 15. Dr. Eighmy decided "to end the termination proceedings" and instead to place Smith on another PIP to address the ongoing performance concerns. *Id.* at ¶ 16.

5.      In June 2019, Smith "received the PIP" from Dr. Browning. Dkt. 11 ¶ 17. He worried that prior injuries from a bicycle accident would prevent him from satisfying its teaching-specific metrics, so he obtained FMLA leave that "came with restrictions" on his ability to lecture. *Id.* ¶¶ 19-22. Dr. Browning accommodated those restrictions by "modif[ying] the PIP to focus on research, instead of teaching." *Id.* ¶ 21.

6.      At the end of the 2019-2020 academic year, Dr. Browning concluded that Smith had failed to satisfy the new PIP's metrics and recommended that UTSA's Provost, Kimberly Espy, pursue Smith's termination. *Id.* ¶ 28; Ex. A (Espy Memo) at 3-5.

---

[3] Dr. Browning is now the Interim Vice President for Research, Economic Development, and Knowledge Enterprise, Civil and Environmental Engineering, and Construction Management. *See* https://klesse.utsa.edu/faculty/profiles/browning-joann.html. Her new position is a matter of public record. *See* TEX. GOV'T CODE § 552.022(a)(2) (confirming that public employee job titles are public information). Thus, the Court can consider it here. *See Basic Cap.*, 976 F.3d at 589.

[4] Smith refers to and quotes from this memorandum, which was authored by UTSA's then-Provost Kimberly Espy, throughout his Second Amended Complaint. *E.g.*, Dkt 11 ¶¶ 29, 36-37, & 42. Thus, the Court properly considers it at the Rule 12 stage. *See Walker*, 938 F.3d at 735.

7.      Regents' Rule 31008 articulates the procedures for terminating tenured faculty at UT System campuses, including UTSA. *See* Dkt. 11 ¶ 96. Tenured faculty may only be terminated for "good cause," which includes, among other things, chronic underperformance. *See* Ex. B (Rule 31008) at Part 2 § 1(a)(2).[5] Once Rule 31008 is invoked, it prescribes several steps, including:

    a.   <u>Initial Review of Allegation</u>: The institution's provost reviews the allegations, solicits a response from the faculty member, and decides whether to recommend further termination proceedings to the institution's president. *See id.* Part 2 § 2.

    b.   <u>Presidential Review & Response</u>: The president gives the faculty member a chance to further respond and decides whether to continue termination proceedings. *See id.* Part 2 § 3. If the process continues, the president notifies the faculty member of the charges and convenes a faculty tribunal to hear them. *See id.* Part 2 § 5.

    c.   <u>Faculty Tribunal</u>: The faculty member—who may be represented by counsel—may testify and present evidence to the tribunal and also examine any other witnesses who testify. *See id.* After the hearing, the tribunal issues written findings and may recommend (or not) that the president continue termination proceedings. *See id.*

    d.   <u>Presidential Recommendation</u>: After receiving the tribunal report, the president may dismiss the proceedings, impose a sanction short of termination, or recommend termination to the UT System Board of Regents via a written report. *See id.* If the latter, the faculty member may submit a "written response" to the Regents. *Id.*

    e.   <u>Regents' Determination</u>: Finally, the Board of Regents reviews the president's recommendation, any response from the faculty member, and the faculty tribunal's findings, recommendations, and transcript of proceedings. *See id.* at Part 2 § 6. The Board then approves, rejects, or amends the findings and recommendation. *See id.*

8.      Pursuant to Rule 31008, Provost Espy met with Smith and considered his responses to Dr. Browning's recommendation. *See* Ex. A (Espy Memo) at 5-9. In July 2020, Dr. Espy wrote a memorandum to Dr. Eighmy recommending he continue the Rule 31008 process. *See generally id.*; *see also* Dkt. 11 ¶ 29. Notably, the memo (which included more than 300 pages of exhibits) recounted Smith's underperformance "over a seven-year period" from 2013 through the 2020 academic year—not just his failure to satisfy the 2019-2020 PIP. *See generally* Ex. A (Espy Memo) at 1-5; *see also* Dkt. 11 ¶¶ 36, 42 (summarizing Espy's memo).

---

[5] The Court may consider Rule 31008 at the Rule 12 stage as a matter of public record. *See Banik v. Tamez*, No. 7:16-CV-00462, 2017 WL 2505653, at *3 (S.D. Tex. June 9, 2017)

9.      In November 2020, President Eighmy met with Smith to discuss Dr. Espy's memorandum. Ex. C (Jan. 22, 2021 Eighmy Ltr.[6]) at 1. Smith also responded in writing in December 2020. *Id.* Ultimately, Dr. Eighmy decided to convene a faculty tribunal to hear the recommendation for Smith's termination on the grounds that the evidence:

> establish[es] your inability or unwillingness to meet the requirements of your Fall 2019 and Spring 2020 Performance Improvement Plans (PIPs) or otherwise demonstrate a commitment to improve your performance as a UTSA tenured faculty member. ***The facts supporting these charges are described in detail in the July 21, 2020, memorandum and exhibits submitted to me by Dr. Espy, of which you were provided a copy.***

Dkt. 11 ¶ 30 (emphasis added).

10.     In March 2021, Smith inquired about the charges against him. *See id.* ¶¶ 31-32. Counsel for UT System responded and quoted the paragraph in Dr. Eighmy's January 2021 letter describing Smith's failure to "otherwise" improve his performance, as "described in detail in the July 21, 2020 memorandum and exhibits submitted . . . by Dr. Espy." *Id.* ¶ 33.

11.     The faculty tribunal heard evidence and arguments in April 2021 and decided, on a 3-2 vote, to recommend Smith's termination. *Id.* ¶¶ 35-40. And, in July 2021, Dr. Eighmy reviewed the hearing transcript, the record and exhibits, and the tribunal's findings and recommendation and recommended Smith's termination to the Board of Regents. *Id.* ¶¶ 41-44.

12.     Smith wrote a letter of protest to the Regents, but the Board voted to terminate him on November 18, 2021. *Id.* ¶¶ 45-46.

## IV.   RULE 12(b)(1) MOTION TO DISMISS

### A.   The Institutional Defendants are state entities and immune from suit in federal court.

As arenas of limited jurisdiction, federal courts lack power to adjudicate claims unless a statute or the U.S. Constitution expressly confers it. *E.g.*, *Doe v. Univ. of Tex. at Austin*, No. 1:19-CV-398-LY, 2019 WL 9076003, at *3 (W.D. Tex. Nov. 8, 2019) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). One barrier to federal court jurisdiction is the Eleventh

---

[6] Smith quotes extensively from this letter, too. *E.g.,* Dkt 11 ¶ 30.

Amendment, which "bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002); *accord Moore v. La. Bd. of Elementary & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Any abrogation or waiver of Eleventh Amendment protection must be "unequivocal." *Perez*, 307 F.3d at 332.

The Institutional Defendants (UTSA and UT System) are arms of the state and, therefore, immune from suit in federal court. *See United States Oil Rec. Site v. R.R. Comm'n of Tex.*, 898 F.3d 497, 501 (5th Cir. 2018) (collecting cases); *Rosas v. Univ. of Tex. at San Antonio*, No. 5:18-CV-536, 2019 WL 13318687, at \*3 (W.D. Tex. May 9, 2019), *aff'd*, 793 F. App'x 267 (5th Cir. 2019) (same). Thus, this Court lacks jurisdiction over them absent "unequivocal" abrogation or waiver of their immunity. Smith shows no such abrogation or waiver for any of his claims.

1. *The Institutional Defendants are immune from all of Smith's state law claims.*

Smith claims the Institutional Defendants violated his due process and free speech rights under the Texas Constitution. *See* Dkt. 11 ¶¶ 49-58, 70-85, 95-99 (Counts 1, 3, 4, 6). The Court lacks jurisdiction over these claims since Texas has not "unequivocally" waived immunity to suit in federal court for state constitutional violations. *See Beleno v. Lakey*, 306 F. Supp. 3d 930, 940 (W.D. Tex. 2009); *Martinez v. McLane*, 792 F. App'x 282, 287 (5th Cir. 2019); *cf. Hernandez v. Tex. Dep't of Hum. Servs.*, 91 F. App'x 934, 935 (5th Cir. 2004) (per curiam) ("The Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court."). Thus, the Court should dismiss these claims under Rule 12(b)(1).

The same goes for Smith's TCHRA claims (Dkt. 11 ¶¶ 108-25 (Counts 8-10)), as the TCHRA "does not expressly waive sovereign immunity in federal court." *Perez*, 307 F.3d at 332; *accord Pequeno v. Univ. of Tex. at Brownsville* (5th Cir. 2018) 718 F. App'x 237, 241; *Issa v. Tex. Dept. of Crim. J.*, No. 1:22-CV-01107, 2023 WL 4923971, at \*4 (W.D. Tex. Aug. 1, 2023). Thus, the Court should dismiss those claims under Rule 12(b)(1), too.

2. _The Institutional Defendants are also immune from Smith's federal constitutional claims and FMLA, ADA, and ADEA claims._

Smith further alleges that the Institutional Defendants violated his federal constitutional due process and free speech rights and failed to adequately train the faculty tribunal. *See* Dkt. 11 ¶¶ 59-73 & 86-99 (Counts 2, 3, 5, 6). As he must, he brings each of these claims via 42 U.S.C. § 1983. *See Montemayor v. Miller*, No. SA-11-CV-24-XR, 2011 WL 3902764, at *2 n.15 (W.D. Tex. Sept. 6, 2011) (noting that Section 1983 is the only vehicle for an individual to bring federal constitutional claims). The Court lacks jurisdiction over all of these claims, however, because neither Congress nor Texas has waived immunity for Section 1983 actions. *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir. 2020) (citing *Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997)); *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015).[7]

Similarly, Congress has not abrogated—nor has Texas waived—immunity from FMLA, ADEA, or ADA claims (Counts 7-9). *See Coleman v. Ct. of App. of Md.*, 566 U.S. 30, 43 (2012) (noting that Congress has not abrogated immunity for claims under FMLA "self-care" provision[8]); *Alfred v. Harris Cnty. Hosp. Dist.*, 666 F. App'x 349, 353 (5th Cir. 2016) (applying *Coleman* to an FMLA "self-care" claim against a state hospital district); *Pequeno*, 718 F. App'x at 241 (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000)) (same for ADEA claims); *Shahrashoob v. Texas A&M Univ. Sys.*, No. CV H-22-699, 2022 WL 3702264, at *3 (S.D. Tex., Aug. 26, 2022) (citing *Perez*, 307 F.3d 318, 326 (5th Cir. 2002)) (same for ADA claims). Thus, Court should dismiss these federal constitutional and statutory claims, too.

Smith does not dispute this analysis. Instead, he tries to avoid the jurisdictional bar by invoking the *Ex Parte Young* doctrine, which provides a narrow avenue for a plaintiff to seek (1)

---

[7] Alternatively, these claims are barred because Section 1983 only permits suits against statutorily defined "persons," which neither UT System nor UTSA are. *Richardson v. Univ. of Tex. Sys.*, No. 5:19-CV-271-XR, 2019 WL 2329322, at *3 (W.D. Tex. May 31, 2019) (citation omitted).

[8] Smith alleges that he took FMLA to deal with personal health issues, which brings him within the FMLA's "self-care" provision rather than its "family-care" provision. *Compare* Dkt. 11 ¶¶ 19-21 & 98-107, *with Coleman*, 566 U.S. at 34 (describing FMLA protections).

prospective injunctive relief (*i.e.*, not monetary damages), (2) for ongoing violations of "federal, not state, law,"[9] (3) from "state officers who are acting in their official capacities." *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (citation omitted); *see* Dkt. 11 ¶¶ 59, 70, 86, 100, 108, & 116 (disclaiming monetary damages and seeking only "prospective relief within the bounds of *Ex Parte Young* . . . , such as reinstatement of Plaintiff to his former position").

But Smith's reliance on *Ex Parte Young* is misplaced because he does not sue any "state officers . . . in their official capacities." Instead, he only invokes *Ex Parte Young* as to "UT System and UTSA," which are institutional actors. *See* Dkt. 11 ¶¶ 59, 70, 86, 100, 108, & 116 ("However, as to Defendants, the UT System and UTSA . . . ."). As the Fifth Circuit has reasoned:

> The plaintiffs sought an injunction against the BESE and the Louisiana Department of Education. The state defendants argue that as to the two agencies, this suit is substantially a suit against the state itself. We agree. The <u>*Young* exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought."</u> . . . . Two of the state defendants, the BESE and the Department of Education, are not individual officers, but rather agencies of the state. We conclude the district court abused its discretion by exercising jurisdiction over the two state agency defendants . . . .

*Moore*, 743 F.3d at 964 (emphasis added). Defendants anticipate that Smith will belatedly point to Drs. Eighmy and Browning, but he has not sued them in their "official capacities." Instead, he explicitly sued them in their "personal" capacities as "an individual and a citizen." Dkt. 11 ¶¶ 5-6; *see id.* ¶¶ 83 & 93 (alleging claims against them in "their individual or personal capacity"). Thus, they are not proper *Ex Parte Young* defendants. *See Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 n.2 (5th Cir. 2016) ("Chhim did not sue individual state official defendants in their official capacities in this suit; therefore, the *Ex parte Young* exception does not apply to defeat Texas's sovereign immunity from suit."). In short, *Ex Parte Young* does not salvage Smith's claims.

Since the Institutional Defendants retain immunity from each of Smith's federal claims other than his Title VII claim, the Court should dismiss those claims accordingly.

---

[9] Smith does not invoke *Ex Parte Young* with respect to his state law claims because the exception is only applicable to federal claims. Thus, those claims are unequivocally barred.

## V.   RULE 12(b)(6) MOTION TO DISMISS

Alternatively, the Court should dismiss all of Smith's claims because he fails to plausibly

allege their essential elements and cannot defeat the Individual Defendants' qualified immunity.

### A. The Court should dismiss Smith's federal and state procedural due process claims (Counts 1 & 2) because he received all the process to which he was entitled.

To state a procedural due process claim, Smith must plausibly allege that he was (1) denied

a constitutionally protected property interest (2) without minimum procedural due process. *See*

*Banik*, 2017 WL 2505653, at *17 (citing *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1225

(5th Cir. 1985)). In the context of a tenured professorship, a plaintiff is entitled to:

(1) be advised of the cause for his termination in sufficient detail so as to enable him to show any error that may exist;

(2) be advised of the names and the nature of the testimony of the witnesses against him;

(3) a meaningful opportunity to be heard in his own defense within a reasonable time; and

(4) a hearing before a tribunal that possesses some academic expertise and an apparent impartiality toward the charges.

*Levitt*, 759 F.2d at 1228. Here, Smith contends that UTSA and the UT System deprived him of

procedural due process by (1) terminating him without informing him of all the charges against

him, and (2) failing to instruct the tribunal not to "rely on Google and evidence outside of the

record." *See* Dkt. 11 ¶¶ 49-69. Smith's theories are meritless.

### 1. *Smith had ample notice of the charges against him and several chances to respond*.

Smith first contends he was unaware the tribunal proceedings would concern his history of

poor performance as documented in Provost Espy's July 2020 memorandum, rather than just his

failure to satisfy the 2019-2020 PIP. *See* Dkt. 11 ¶¶ 51-55, 62-66. Smith's position is fruitless,

since President Eighmy's January 2021 letter (which he quotes extensively) specifically charges

him with "otherwise failing to improve [his] performance" and explicitly refers him to "the July

21, 2020, memorandum and exhibits submitted to me by Dr. Espy, of which you were provided a

copy." Dkt. 11 ¶ 30; *see also id.* ¶ 33 (acknowledging that a UT System attorney also referenced

Dr. Espy's memorandum in follow-up correspondence). In turn, the memorandum and its attachments detailed Smith's performance deficiencies back to 2007. *See* Ex. A (Espy Memo) at 2-3, 9. Thus, Smith cannot plausibly contend that the scope of the tribunal hearing exceeded his notice. Moreover, Smith cannot plausibly allege that he was unprepared to respond to the items listed in the memorandum, given that he had already (1) participated in the prior Rule 31008 process addressing his pre-2019 deficiencies and (2) responded to the memorandum orally and in writing during his pre-tribunal meetings with President Eighmy. *See* Dkt. 11 ¶¶ 15-16, 29-30; Ex. C (Jan. 22, 2021 Eighmy Ltr.) (detailing discussions with Smith).

Indeed, Smith does not allege that <u>he</u> was unable to respond to the memorandum's contents. He received the memorandum and its exhibits prior to the tribunal hearing and they were introduced during the hearing, where he was present and had an opportunity to testify on his own behalf. *See* Dkt. 11 ¶¶ 30-36. Instead, he complains only that he did not prepare his "expert witness" to testify as to the gamut of his deficient performance. *See* Dkt. 11 ¶¶ 53, 63. Smith's obligation, however, is to allege procedural deficiencies amounting to a <u>constitutional violation</u>, and his gripe that his expert was unprepared to address some portion of the evidence at the hearing does not qualify. *Cf. Banik*, 2017 WL 2505653, at *19 (finding no due process violation where the plaintiff was not given a copy of an accusatory statement prior to the tribunal hearing but was aware of its contents and cross-examined its author at the hearing). Instead, his allegations confirm that he received notice and the opportunity to respond, which is all he was entitled to.

   2.  *Smith's allegations about the tribunal "relying on Google" are insufficient.*

In one unadorned paragraph, Smith alleges that "some" tribunal members "offer[ed] their own testimony and information which they had obtained by googling topics during the hearing," which he characterizes as a due process violation. Dkt. 11 ¶¶ 38, 58, 69. He does not allege what they "testified" to or "googled," how it deprived him of an opportunity to be heard, or how it otherwise deprived him of constitutional minimum due process. *See id.* Absent such details, these

conclusory allegations are insufficient to state a claim. *Cf. Banik*, 2017 WL 2505653, at *18 (rejecting argument that a tribunal member made "biased" rulings because "Plaintiff fails to explain what [she] was ruling on," precluding the Court from finding a due process violation).

In short, the Court should dismiss this claim because Smith fails to plausibly allege procedural irregularities amounting to a deprivation of constitutional due process.

### B. The Court should dismiss Smith's substantive due process claim (Count 3) because he fails to plead "arbitrary and capricious" action that "shocks the conscience."

Smith next alleges that UT System and UTSA violated his substantive due process rights by terminating his employment in "arbitrary and capricious" fashion. *Compare* Dkt. 11 ¶¶ 70-73, *with Lewis v. Univ. of Tex. Med. Br. at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) ("Substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner . . . ."). To support this claim, Smith (1) reprises his allegation about tribunal members "using google" and (2) contends that "no reasonable person" could have concluded that he failed to satisfy his PIP because he "produced two PIP reports with 72 manuscript pages of documented progress towards meeting the PIP requirements." *See id.*

The "arbitrary and capricious" standard is "demanding." *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992). Indeed, it "may be even more demanding in the context of higher education personnel decisions because of repeated refusals by the Supreme Court, as well as [the Fifth Circuit] to use the Fourteenth Amendment as an excuse to regulate the internal affairs of public universities." *Jones v. La. Bd. of Sup'rs*, 809 F.3d 231, 240 (5th Cir. 2015) (citation and quotation marks omitted). It is met only where there is no "rational connection between the known facts and the decision" and the act involves an "abuse of power" that "shocks the conscience." *Gonzales v. City of San Antonio*, No. 517CV00998, 2018 WL 2976988, at *4 (W.D. Tex. June 12, 2018) (quoting *Lewis*, 665 F.3d at 630). The "decision to terminate a tenured faculty member is not arbitrary or capricious if reasonable minds could disagree on the propriety of the termination." *Banik*, 2017 WL 2505653, at *20.

Smith plainly fails to state a claim under this standard. His unadorned "google" allegation is insufficient to show an "abuse of power" that "shocks the conscience." His claim that "no reasonable person" could have concluded he failed to satisfy the PIP is similarly misguided, as he alleges that at least three administrators, three of five tribunal members, and the Board of Regents found exactly that. Rather than alleging a conscience-shocking "abuse of power," Smith simply disagrees with their professional judgment, which is not enough to state a substantive due process claim.[10] *See Spuler*, 958 F.2d at 107 (citation omitted) ("The judicial inquiry is properly only whether the decision was made, wisely or not, by a specific exercise of professional judgment and on the basis of factors clearly bearing on the appropriateness of conferring academic tenure."). The Court should reject his futile attempt to state substantive due process claim.

### C. Smith's "failure to train" claim fails for the same reasons as his other due process claims and because he fails to specifically allege facts satisfying its additional elements.

Smith's "failure to train" claim simply combines the allegations from his due process claims (*i.e.*, "googling" and "charges or evidence not cited in the charging letter") with the additional allegation that UTSA and UT System failed to train "the tribunal" and "representatives" not to engage in those actions. Dkt. 11 ¶¶ 95-99. But this claim fails at the outset because "a failure to train action requires an underlying constitutional violation." *Graham v. Hodge*, 619 F. App'x 394, 395 (5th Cir. 2015); *accord Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013). As detailed above, Smith has failed to allege a cognizable constitutional due process violation.[11] *See* Parts V.A-B. Thus, he cannot jump even this threshold hurdle.

---

[10] Even Smith's own allegations tend to show he failed to satisfy the PIP. He admits he was required not just to submit typed manuscript pages, but to have papers accepted for conferences and publication, attend workshops and professional activities, and more. *See* Dkt. 11 ¶ 23.

[11] Indeed, Smith implicitly admits as much by shifting the goalposts from alleged constitutional violations to alleged violations of the "Regents Rules." *See id.* ¶ 96. This is a red herring, because, even if Smith were correct, the minimum requirements of due process are set by the constitution, not by policy. *See Levitt*, 759 F.2d at 1230 ("There is not a violation of due process every time a university or other government entity violates its own rules."). The Court should disregard these "Regents Rules" allegations as irrelevant.

Additionally, even if he had identified a colorable due process violation, Smith fails to allege facts sufficient to establish the additional "failure to train" elements: (1) inadequate training procedures; (2) a causal connection between the inadequacy and the harm; and (3) the "deliberate indifference" of relevant policymakers. *See Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021); *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017). As the Fifth Circuit has noted, for instance, plaintiffs "typically satisfy the first element by alleging facts related to the locality's actual training program," and a conclusory allegation, like a claim that inadequate training "is apparent from the facts of the case," is insufficient. *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015) (collecting cases); *Quinn*, 863 F.3d at 365 ("Defects in a particular training program must be specifically alleged."). As to the third element, "a plaintiff normally must allege a pattern of similar constitutional violations by untrained employees." *Hutcheson*, 994 F.3d 477, 482.

Smith's allegations are quintessentially conclusory. He alleges no details about the relevant training protocols, simply declares a causal connection between them and his termination, and identifies no pattern of constitutional violations. Dkt. 11 ¶¶ 97-99. Instead, he makes a *res ipsa loquitur*-type allegation that, "had the Tribunal been adequately trained, there is no way they would have been googling information or entertaining . . . charges or evidence not cited in the charging letter." Dkt. 11 ¶ 97. These unadorned declarations are simply inadequate as a matter of law.

### D.  Smith fails to plausibly allege the "protected speech" and "causation" elements of his free speech retaliation claims (Counts 4-5).

To sustain his free speech retaliation claims, Smith must allege facts sufficient to show, among other things, that he (1) he spoke "as a citizen" on a matter of public concern and (2) his speech motivated his termination. *Anderson v. Valdez*, 913 F.3d 472, 476-77 (5th Cir. 2019). He pleads himself out of court on both elements.

First, Smith admits that his July 2018 op-ed piece simply reprised the contents of a "report" he gave to Dr. Browning the previous semester. Dkt. 11 ¶ 14. The Fifth Circuit has repeatedly held

that an employee cannot "transform" speech he initially utters in the course of his job "into protected speech simply by continuing to express [it] to certain external parties." *Foerster v. Bleess*, No. 20-20583, 2022 WL 38996, at *3 (5th Cir. Jan. 4, 2022) (citing *Corn*, 954 F.3d at 278; *Anderson*, 913 F.3d at 478). In other words, the fact that Smith eventually published the speech in the newspaper is irrelevant: the point is that it originated as speech within his job duties. Thus, he has not plausibly alleged that he spoke "as a public citizen" and cannot satisfy the first element.

Second, Smith does not plausibly allege that his opinion piece motivated his termination. For one, Dr. Browning initially recommended that UTSA pursue Smith's termination in November 2017, more than eight months before he wrote the op-ed. *Compare* Ex. A (Espy Memo) at 2, *with Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493–94 (5th Cir. 2011) (finding no causation where the "initial termination decision occurred before [plaintiff's] protected activity"). And while Smith alleges that Dr. Eighmy "brought up the op-ed piece" at their April 2019 meeting to discuss Dr. Browning's recommendation, he provides no details from which the Court can infer retaliatory animus. *Compare* Dkt. 11 ¶ 15, *with Wetherbe v. Smith*, 593 F. App'x 323, 328 (5th Cir. 2014) (affirming dismissal where plaintiff did not allege that the decisionmaker "was aware of this speech *or that it motivated his actions*" (emphasis added)). Absent these details, Smith can only conceivably rely on temporal proximity, but the nine-month gap between the 2018 op-ed and his 2019 meeting with Dr. Eighmy is too attenuated to plausibly allege causation. *See Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 206 (5th Cir. 2007) (finding six-month gap between activity and adverse action insufficient to show causation). But, more crucially, Smith acknowledges that President Eighmy "end[ed] the termination proceedings" after this meeting and instead placed him on an additional PIP. Dkt. 11 ¶ 16. In other words, the only plausible inference from Smith's allegations is that his op-ed led to more favorable treatment, not less.

Smith also claims that "[t]he Regents were aware of [his] speech" when they affirmed his termination in November 2021 after he failed to satisfy the 2019-2020 PIP. Dkt. 11 ¶¶ 82, 92. This

allegation is likewise deficient because Smith alleges no facts plausibly suggesting that the Regents actually knew about his op-ed, much less acted because of it. *See Wetherbe*, 593 F. App'x at 328. Again, absent such allegations he is left only with temporal proximity, but the "three-year lapse, at best," between his June 2018 op-ed and November 2021 termination "is too attenuated temporally to state a claim for relief." *Leal v. McHugh*, 731 F.3d 405, 417 (5th Cir. 2013).

Smith concludes his free speech claims with a handful of additional unadorned allegations. First, he contends, Drs. Eighmy and Browning "exhibited retaliatory animus and exerted influence over the decision of the final policymaking authority, the Regents . . . ." Dkt. 11 ¶¶ 83, 93. Alternatively, he claims, they "personally took adverse employment actions against [him]." *Id.* But Smith alleges no specifics substantiating these allegations or connecting them to his op-ed— a fatal flaw. *See Hey v. Irving*, No. 97-60816, 1998 WL 723819, *2 (5th Cir. Oct. 2, 1998) ("Absent specific factual allegations . . . , the conclusory allegation that Clark influenced the police is insufficient to establish state action."); *Brown v. Bd. of Trs Sealy Indep. Sch. Dist*., No. 11-CV-1755, 2012 WL 3069844, at *4 (S.D. Tex. July 27, 2012) (dismissing "conclusory allegations claiming that [bad actor] exerted influence over the Board."). Indeed, nowhere in his pleading does Smith allege that Dr. Browning was even aware of the op-ed. *See generally* Dkt. 11.

Finally, Smith asserts that Drs. Eighmy and Browning either had "policymaking authority" or "conspired with . . . the final policymaking authority" to terminate him. *Id.* ¶¶ 84, 94. Smith grasps at straws, as he simply recites municipal liability buzzwords without any substantive factual allegations. *See Armstrong v. Ashley*, 60 F.4th 262, 276–77 (5th Cir. 2023) (affirming dismissal in part because allegations that "persons with final policymaking authority . . . participated personally in the misconduct" were "barren of factual support and wholly conclusory"); *Hoyt v. City of El Paso, Tex*., 878 F. Supp. 2d 721, 743 (W.D. Tex. 2012) (refusing to accept as true "mere legal conclusions" that the city mayor was a "final policymaker").

In sum, the Court should also dismiss Smith's speech-related retaliation claims.

**E.  Smith fails to plausibly allege essential elements of his FMLA claims (Count 7).**

Smith contends that "Defendants" interfered with his FMLA rights by "requiring that he complete work that could not be performed on a half-day, 50% workload" and failing to reinstate him to his position after his FMLA leave. Dkt. 11 ¶¶ 100-105. He also contends that Dr. Browning retaliated against him by "proposing his termination" three months after his FMLA leave ended and Dr. Eighmy "held [Smith's] exercise of his FMLA rights against him" by "concluding that despite this gratuity, [Smith] still failed to meet the PIP's requirements." *Id.* ¶¶ 106-07. These allegations are insufficient to state a claim for FMLA interference or retaliation.

1.  *Smith's FMLA interference claim is barred by limitations and factually insufficient.*

The statute of limitations for FMLA claims is two years. 29 U.S.C. § 2617(c)(1). Smith's FMLA leave ended, at the latest, in March 2020. *See* Ex. A (Espy Memo) at 4 n. 5 ("Dr. Smith's FMLA leave ended on March 24, 2020").[12] However, he did not file this suit until April 26, 2023. *See* Dkt. 1 (Orig. Compl.). Thus, his interference claim is time-barred.

Alternatively, Smith's FMLA interference theory—that he was given more than a half-day's work—lacks factual specificity and is defeated by his other allegations. For one, he alleges earlier that the "physical limitations" for which he obtained FMLA involved only his ability to "stand and lecture." *See* Dkt. 11 ¶ 21. He also alleges that Dr. Browning "modified the PIP to focus on research" to account for these restrictions. *See id.* He does not allege specific facts from which the Court can infer that the modified PIP metrics required more work than his FMLA allowed; rather, according to Smith, the tribunal concluded that he failed to satisfy the PIP "despite being allowed intermittent FMLA," not because of it. *Id.* ¶ 44 (emphasis added). Moreover, as noted

---

[12] In his paragraph alleging FMLA retaliation, Smith states that his "FMLA leave ended [in] February 2021" and Dr. Browning proposed his termination in May 2021. Dkt. 11 ¶ 106. But Smith's reference to 2021 is clearly a typographical error, as his other allegations demonstrate that Dr. Browning proposed his termination in May 2020 (at the end of the 2019-2020 academic year) and he engaged in the Rule 31008 process through Fall 2020 and Spring 2021 before the Regents voted on his termination in November 2021. *See id.* ¶¶ 27-35, 119.

above, Smith's FMLA leave ended prior to the end of the 2019-2020 academic year and he returned to work "without restrictions" in March 2020. *See id.* ¶ 119. His theory does not account for his return to full-time work prior to the end of the PIP period. And, his admission that he returned to work two months before Dr. Browning proposed his termination refutes his alternative theory that he "was not[] restored to the position he held when the leave began." *Id.* ¶ 103. Since Smith fails to plausibly allege FMLA interference, the Court should dismiss this claim.

   2. *Smith fails to plausibly allege the causation element of his FMLA retaliation claim.*

   Smith's retaliation claim fails because he does not plausibly allege a causal link between his FMLA leave and his termination. He asks the Court to infer one from the three-month gap between the end of his leave and Dr. Browning's termination recommendation, but even "two and one-half months . . . is not within the 'very close' proximity that is necessary to establish causation." *Besser v. Tex. Gen. Land Office*, 834 F. App'x 876, 885 (5th Cir. 2020).

   Moreover, the Fifth Circuit has repeatedly rejected appeals to temporal proximity where the plaintiff's termination stemmed from performance deficiencies beginning prior to his FMLA leave. *See, e.g.*, *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex*., 446 F.3d 574, 583 (5th Cir. 2006) (finding no causation where the plaintiff "filed for FMLA leave after three weeks of his one-month probationary program"); *Ray v. United Parcel Serv*., 587 F. App'x 182, 196 (5th Cir. 2014) (finding no causation where UPS "initiated performance-improvement measures prior to Ray's FMLA leave"). Smith admits, as he must, that he had been charged with persistent performance deficiencies well before he sought FMLA; indeed, he cites the issuance of the original 2019 PIP and its teaching-specific metrics as the reason he sought FMLA in the first place. *See* Dkt. 11 ¶¶ 17-21 (explaining concern that he was physically unable to lecture).[13] Thus, any "temporal proximity" between his FMLA and Dr. Browning's recommendation is legally inconsequential.

---

   [13] As noted above, Smith also alleges that Dr. Browning modified his PIP to account for his physical limitations—further undermining his claims of retaliatory animus. *See* Dkt. 11 ¶ 21.

Smith's additional allegation about Dr. Eighmy—that he concluded Smith had failed to meet the PIP despite receiving FMLA leave—is irrelevant, as it is not facially retaliatory and Smith alleges no details from which the Court can infer unlawful animus. *See* Dkt. 11 ¶ 107. Moreover, Smith alleges no facts from which the Court can infer that any unlawful animus tainted any other aspect of the multi-level Rule 31008 process, including the Regents' final determination in November 2021. Absent these facts, Smith's FMLA retaliation claim fails, too.

### F. Smith fails to state a claim for ADA, ADEA, Title VII or TCHRA violations (Counts 8-10).

Lastly, Smith asserts discrimination and retaliation claims under the ADA, ADEA, Title VII, and TCHRA. Though legally he has no other choice, he specifies that these claims apply only to those Defendants who meet the statutes' definition of "employer." *See* Dkt. 11 ¶¶ 110, 117, 122.

#### 1.  *Only UTSA is conceivably Smith's "employer" for purposes of these claims.*

It is well-settled that none of these statutes allows individual liability, so these claims are not viable as to the Individual Defendants. *See Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996) (no individual liability under ADEA); *Williamson v. Am. Nat'l Ins. Co.*, 695 F. Supp. 2d 431, 440 n.7 (S.D. Tex. 2010) (collecting cases holding same as to Title VII and ADA); *Anderson v. Houston Cmty. Coll. Sys.*, 458 S.W.3d 633, 649 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (same as to TCHRA). They are also not viable as to UT System, which was not Smith's "employer" as a matter of law. Instead, he worked for—and his tenure attached—only to UTSA. *See, e.g.*, *Weeks v. Tex. A & M Univ. Sys. at Galveston*, 762 F. App'x 203, 204 (5th Cir. 2019) (finding, for Title VII claim, that tenure applicant had employment relationship only with component institution, not entire university system); *cf. Banik*, 2017 WL 2505653, at *15 (noting that faculty within the UT System are tenured only to a component institution).

#### 2.  *Smith fails to plausibly allege age discrimination.*

Smith does not allege any direct evidence of age discrimination. Instead, he complains that (1) the Department of Electrical Engineering hired three younger employees after his discharge,

and (2) he was compared for purposes of his PIP to three "Balanced Track Associate Professors" who were younger and "not meeting the [PIP] standards" but are still employed. *See* Dkt. 11 ¶¶ 114-15. Smith's "comparator" allegations are insufficient. He does not allege that anyone who participated in his termination process hired the younger employees of whom he complains. *See id.* Nor does he allege facts from which the Court can find that he was similarly situated to either these new hires or to the younger BTAP professors against whom his performance was evaluated: *e.g.*, that they had a similar history of chronic underperformance or the same performance expectations given their academic rank. *See Barnes v. Walters*, No. 3:21-CV-3099-X, 2022 WL 18776172, at *4 (N.D. Tex. Sept. 7, 2022) (subsequent history omitted) (explaining that a plaintiff must allege specific facts that, if proven, would demonstrate comparators similar in "all material respects"). Indeed, Smith admits that a BTAP is "not necessarily a tenured professor," and thus may have different expectations in terms of work quality and performance. In short, Smith fails to plead facts plausibly alleging age-related animus.

   3.   *Smith fails to plausibly allege disability discrimination.*

   Smith's disability discrimination claim is even more threadbare. All he alleges is that he had "permanent impairments," returned to work "without restrictions" on March 16, 2020, and was "proposed for termination" by Dr. Browning on May 22, 2020. Dkt. 11 ¶¶ 119-20. He alleges no specific facts evincing a discriminatory motive or causation (and does not mention Dr. Eighmy at all) and instead relies solely on temporal proximity. *See id.* As this claim is virtually identical to his FMLA retaliation claim, it fails for the same reasons. *See* Part V.E, *supra*.

   4.   *Smith fails to plausibly allege retaliation for complaints of race discrimination.*

   Smith's Title VII retaliation claim rests solely on his allegation that he "reported that . . . Dean Browning was a racist" in 2017 and again in Spring 2020 and suffered subsequent adverse employment actions, including his ultimate termination in November 2021. *See* Dkt. 11 ¶¶ 26, 121-25. But Smith fails to allege facts plausibly suggesting that any Defendant (or anyone else

who participated in the Rule 31008 process, like Provost Espy, the tribunal members, or the Regents) knew about his "report" or acted because of it. *See id.* Because these elements are essential to his retaliation claim (s*ee Wetherbe*, 593 F. App'x at 328), Smith fails to satisfy his basic pleadings obligations with respect to this claim, too.

### G. *Smith fails to overcome the Individual Defendants' entitlement to qualified immunity.*

Even if Smith had sufficiently pled any of his claims, he still must meet the "demanding standard" of showing that the Individual Defendants "violated 'clearly established' law." *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020); *see Mayfield v. Currie*, 976 F.3d 482, 486 (5th Cir. 2020) ("[T]he plaintiff has the burden to demonstrate the inapplicability of the defense"). The Court must not "define clearly established law at a high level of generality," but instead with specificity and granularity" because "the dispositive question is whether the violative nature of particular conduct is clearly established." *Cunningham*, 983 F.3d at 191; *Brown v. Tarrant Cnty.,Tex.*, 985 F.3d 489, 495 (5th Cir. 2021). Put simply, Smith must show that Drs. Eighmy and Browning acted "objectively unreasonably" in light of clearly established law. *See* Part III.B, *supra* (citing *Jackson*, 959 F.3d at 201; *Sebastiani*, 2021 WL 11710301 at *5).

This he cannot do, as he either fails to allege that the Individual Defendants participated in the conduct of which he complains or cannot show that the "violative nature" of their alleged conduct was "clearly established." His due process and failure-to-train claims, for instance, solely concern the tribunal hearing, and he does not (and cannot) allege that either Dr. Eighmy or Dr. Browning participated in the tribunal proceedings. *See* Dkt. 11 ¶¶ 49-69. Similarly, he does not allege that Dr. Browning was aware of his op-ed or that either she or Dr. Eighmy took adverse action against him because of it. *See* Dkt. 11 ¶¶ 74-94. More crucially, he cannot show that his op-ed was clearly "protected" speech, given the cases holding that an employee's internal speech is not constitutionally protected just because he subsequently repeats it externally. *See* Part V.D, *supra*. Similar issues plague his statutory discrimination and retaliation claims, as he either fails

to allege specific action by one or both Individual Defendants or cannot show objectively unreasonable conduct, given his well-documented (and admitted) history of chronic underperformance. *See* Parts V.E-F, *infra*. The Court should find that the Individual Defendants remain entitled to qualified immunity and dismiss Smith's claims for that reason, as well.

## VI.   CONCLUSION

Because the Court lacks subject-matter jurisdiction over the Institutional Defendants, the Individual Defendants enjoy qualified immunity, and, regardless, Smith fails to state a claim against any Defendant, the Court should dismiss his suit in full without leave to amend.

Respectfully submitted,

 */s/ Dylan A. Farmer*
Shannon B. Schmoyer
State Bar No. 17780250
sschmoyer@sr-llp.com
Dylan A. Farmer
State Bar No. 24093417
dfarmer@sr-llp.com
SCHMOYER REINHARD LLP
8000 IH 10 West, Suite 1600
San Antonio, Texas 78230
Phone: (210) 447-8033
Fax: (210) 447-8036

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF CONFERENCE & COMPLIANCE WITH COURT PROCEDURES**

Smith has twice amended his complaint: first to add statutory discrimination claims after he received an EEOC Notice of Right to Sue; second to add allegations and modify his claims in response to Defendants' pre-motion conferral letter under the Court's Rule 12 procedures. *See* Dkts. 5-6, 9-10. I sent Smith's Counsel, Jeremy Gilbreath, a second conferral letter on Friday, October 20, after which he indicated Smith would amend his complaint a third time. *See* Dkt. 12. Pursuant to the parties' stipulation and the Court's order (Dkt. 13), Smith had until October 27 to amend his complaint, but he did not do so. Nor has he asked the Court for leave to do so in the intervening two weeks. Thus, this Motion is procedurally proper.

/s/ *Dylan A. Farmer*
Dylan A. Farmer


**CERTIFICATE OF SERVICE**

I certify that I served a true and correct copy of the foregoing document on Plaintiff's counsel of record via the Court's CM/ECF system on November 10, 2023:

Jeremy Gilbreath
The Gilbreath Law Firm, PLLC
13000 Old Blanco Rd., Suite 304
San Antonio, Texas 78216
Telephone: (210) 479-3195
Fax: (210) 479-8452
jeremy@gilbreathfirm.com


/s/ *Dylan A. Farmer*
Dylan A. Farmer