THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRUCE SMITH, | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | |
| THE UNIVERSITY OF TEXAS AT SAN | § | NO. 5:23-cv-538-OLG |
| ANTONIO, THE UNIVERSITY OF TEXAS | § | |
| SYSTEM, JOANN BROWNING, THOMAS | § | |
| TAYLOR EIGHMY, AND THE UNIVERSITY | § | |
| OF TEXAS SYSTEM BOARD OF REGENTS | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS UTSA, UT SYSTEM, DR. JOANN BROWNING, AND DR. TAYLOR EIGHMY'S MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT

The University of Texas at San Antonio ("UTSA"), The University of Texas System ("UT System"), Dr. JoAnn Browning, and Dr. Taylor Eighmy[1] (collectively "Movants"[2]) seek dismissal of Plaintiff Bruce Smith's Fourth Amended Complaint (Dkt. 18) under Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### I.   INTRODUCTION & SUMMARY OF ARGUMENT

Dr. Smith was formerly a professor of engineering at UTSA. He was terminated in November 2021 for persistently poor performance but now sues Movants for alleged violations of the United States and Texas Constitutions, the FMLA, Rehabilitation Act, Titles VI & VII, and Chapter 21 of the Texas Labor Code ("TCHRA"). Despite having five chances to satisfy the pleadings standard, Smith's claims remain barred by sovereign and qualified immunity and his failure to state any plausible claims for relief. Because there is no more apple left for him to bite, the Court should dismiss his claims against Movants without further leave to amend.

---

[1] UTSA, UT System, and Drs. Eighmy & Browning in their <u>official</u> capacities are the "Institutional Defendants," Drs. Eighmy and Browning in their <u>personal</u> capacities are the "Individual Defendants."

[2] Smith added the Board of Regents of The University of Texas System as a new defendant in his Fourth Amended Complaint, but he has not yet served them, and they have not yet appeared.

## II.   STANDARDS OF REVIEW

Rule 12(b)(1) dismissal is appropriate "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quotation omitted). The plaintiff bears the burden of proving subject-matter jurisdiction. *Ramming v. United State*s, 281 F.3d 158, 161 (5th Cir. 2001). A court may find lack of subject matter jurisdiction from "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Santos v. United States*, 565 F. Supp. 3d 871, 873 (W.D. Tex. 2021) (citation omitted).

Rule 12(b)(6) dismissal is appropriate when the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 200 (5th Cir. 2020) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Additionally, the Individual Defendants plead qualified immunity (s*ee* Part V.G, *infra*), which Smith "bears the burden" to negate. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citation omitted). Thus, even if he states a claim in the abstract, Smith must identify specific facts showing: (1) the Individual Defendants violated his statutory or constitutional rights; and (2) their conduct was objectively unreasonable in light of clearly established law. *Jackson*, 959 F.3d at 201; *Sebastiani v. Bexar Cnty. Hosp. Dist.*, No. SA-20-CV-01093, 2021 WL 11710301, at *5 (W.D. Tex. Sept. 21, 2021) (Garcia, J.).

## III.   SUMMARY OF RELEVANT ALLEGATIONS

1.      Smith was a tenured engineering professor at UTSA from Fall 2001 until November 18, 2021. *See* Dkt. 18 ¶¶ 14, 56. He displayed poor performance as far back as 2013, when he was first placed on a Performance Improvement Plan ("PIP"). *See id.* ¶¶ 37, 44-46.

2.      In "Spring and Summer of 2017," Dr. Browning, who was then Dean of UTSA's College of Engineering, discussed with UTSA's former provost the possibility of terminating Smith for continued poor performance. *Id.* ¶ 22. She formally recommended Smith's termination in November 2017. *See id.* ¶¶ 16 & 24; Ex. A (Espy Memo[3]) at 2-3 (confirming date).

3.      Eight months later, in July 2018, Smith wrote a newspaper op-ed echoing opinions from a "report" he had previously provided to Dr. Browning. *See* Dkt. 18 ¶ 23.

4.      In April 2019, Smith met with Dr. Eighmy, UTSA's president, to discuss his proposed termination. *Id.* ¶ 24. Dr. Eighmy decided "to end the termination proceedings" and instead to place Smith on another PIP to improve his ongoing performance problems. *Id.* ¶ 25.

5.      In June 2019, Dr. Browning issued Smith the new PIP. Dkt. 18 ¶ 26. Smith worried that lingering injuries from a bicycle accident would prevent him from satisfying the PIP's teaching-specific components, so he obtained intermittent FMLA leave that "came with restrictions" on his ability to lecture. *Id.* ¶¶ 29-30. Dr. Browning accommodated those restrictions by "modif[ying] the PIP to focus on research, instead of teaching." *Id.* ¶ 30.

6.      At the end of the 2019-2020 academic year, Dr. Browning concluded that Smith had failed to satisfy the new PIP's metrics and recommended that UTSA's then-Provost, Kimberly Espy, pursue Smith's termination. *Id.* ¶¶ 37-38; Ex. A (Espy Memo) at 3-5.

7.      Regents' Rule 31008 governs the termination of tenured faculty at UT System component institutions, including UTSA. *See* Dkt. 18 ¶¶ 53 & 112; *see also* Ex. B (Rule 31008) at Part 2 § 1(a)(2).[4] Once Rule 31008 is invoked, it prescribes several steps, including:

   a. <u>Initial Review of Allegation</u>: The institution's provost reviews the allegations, solicits a response from the faculty member, and decides whether to recommend further termination proceedings to the institution's president. *See id.* Part 2 § 2.

---

[3] Smith repeatedly refers to this memorandum (*e.g.*, *id.* ¶¶ 45-46), so the Court may consider it here. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (considering under Rule 12(b)(6) documents "referred to in the complaint and . . . central to the plaintiff's claims").

[4] The Court may consider Rule 31008 at the Rule 12 stage as a matter of public record. *See Banik v. Tamez*, No. 7:16-CV-00462, 2017 WL 2505653, at *3 (S.D. Tex. June 9, 2017)

b. <u>Presidential Review & Response</u>: The president gives the faculty member a chance to further respond and decides whether to continue termination proceedings. *See id.* Part 2 § 3. If the process continues, the president notifies the faculty member of the charges and convenes a faculty tribunal to hear them. *See id.* Part 2 § 3-4.

c. <u>Faculty Tribunal</u>: The institution has the burden to prove "good cause" for termination. The faculty member—who may be represented by counsel—may testify and present evidence to the tribunal and also examine any other witnesses who testify. *See id.* After the hearing, the tribunal issues written findings and may recommend (or not) that the president continue termination proceedings. *See id.* Part 2 § 4.

d. <u>Presidential Recommendation</u>: After receiving the tribunal report, the president may dismiss the proceedings, impose a sanction short of termination, or recommend termination in writing to the UT System Board of Regents. *See id.* § 4.7. If the latter, the faculty member may submit a "written response" to the Regents. *Id.*

e. <u>Regents' Determination</u>: Finally, the Board of Regents reviews the president's recommendation; any response from the faculty member; and the faculty tribunal's findings, recommendations, and transcript of proceedings. *See id.* at Part 2 § 5. The Board then approves, rejects, or amends the findings and recommendation. *See id.*

8.      Pursuant to Rule 31008, Provost Espy met with Smith and considered his responses to Dr. Browning's recommendation. *See* Ex. A (Espy Memo) at 5-9. In July 2020, Dr. Espy wrote a memorandum to Dr. Eighmy (with a copy to Smith) recommending he continue the Rule 31008 process. *See id* at 1-9.; Dkt. 18 ¶ 38. Notably, the memo and its 300 pages of exhibits recounted Smith's underperformance "over a seven-year period" from 2013 through 2020—not just his failure to satisfy the 2019-2020 PIP. *See* Ex. A (Espy Memo) at 1-5; Dkt. 18 ¶¶ 45, 52.

9.      In November 2020, President Eighmy met with Smith to discuss Dr. Espy's memorandum. Ex. C (Jan. 22, 2021 Eighmy Ltr.) at 1. Smith also responded to the memorandum in writing in December 2020. *Id.* Ultimately, Dr. Eighmy decided to convene a faculty tribunal to hear the recommendation for Smith's termination on the grounds that the evidence:

establish[es] your inability or unwillingness to meet the requirements of your Fall 2019 and Spring 2020 Performance Improvement Plans (PIPs) or otherwise demonstrate a commitment to improve your performance as a UTSA tenured faculty member. ***The facts supporting these charges are described in detail in the July 21, 2020, memorandum and exhibits submitted to me by Dr. Espy, of which you were provided a copy.***

Dkt. 18 ¶ 39 (emphasis added).

10.     In March 2021, Smith inquired about the charges against him. *See id.* ¶¶ 40-41. Counsel for UT System responded and quoted the paragraph in Dr. Eighmy's January 2021 letter describing Smith's failure to "otherwise" improve his performance, as "described in detail in the July 21, 2020 memorandum and exhibits submitted . . . by Dr. Espy." *Id.* ¶ 42.

11.     The faculty tribunal heard evidence and arguments in April 2021 and decided, on a 3-2 vote, to recommend Smith's termination. *Id.* ¶¶ 44-48. And, in July 2021, Dr. Eighmy reviewed the hearing transcript, the record and exhibits, and the tribunal's findings and recommendation, and recommended Smith's termination to the Board of Regents. *Id.* ¶¶ 51-55.

12.     Smith wrote a letter of protest to the Regents, but they voted to terminate him on November 18, 2021. *Id.* ¶¶ 55-56.

## IV.   RULE 12(b)(1) MOTION TO DISMISS

### A. *The Institutional Defendants are state entities and immune from suit in federal court.*

As arenas of limited jurisdiction, federal courts lack the power to adjudicate a claim unless a statute or the federal Constitution expressly confers it. *E.g.*, *Doe v. Univ. of Tex. at Austin*, No. 1:19-CV-398-LY, 2019 WL 9076003, at *3 (W.D. Tex. Nov. 8, 2019) (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). One barrier to jurisdiction is the Eleventh Amendment, which "bars an individual from suing a state in federal court unless the state consents to suit or Congress has validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002); *accord*. Any state waiver or Congressional abrogation of sovereign immunity must be "unequivocal." *Id.* at 332.

UTSA and UT System are arms of the state and, therefore, immune from suit in federal court. *See United States Oil Rec. Site v. R.R. Comm'n of Tex.*, 898 F.3d 497, 501 (5th Cir. 2018) (collecting cases); *Rosas v. Univ. of Tex. at San Antonio*, No. 5:18-CV-536, 2019 WL 13318687, at *3 (W.D. Tex. May 9, 2019), *aff'd*, 793 F. App'x 267 (5th Cir. 2019) (same). Likewise, Drs. Eighmy and Browning in their official capacities are also considered arms of the state. *See*

5

*McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011) ("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself."). Thus, this Court lacks jurisdiction over the Institutional Defendants absent "unequivocal" state waiver or Congressional abrogation of their immunity. There is no such waiver or abrogation for Smith's state or federal constitutional claims, FMLA claim, or TCHRA claim.

 1. *The Institutional Defendants are immune from all of Smith's state law claims.*

Smith claims the Institutional Defendants violated his due process and free speech rights under the Texas Constitution. *See* Dkt. 18 ¶¶ 61-71, 84-100, 111-115. The Court lacks jurisdiction over these claims since Texas has not "unequivocally" waived immunity to suit in federal court for state constitutional violations. *See Beleno v. Lakey*, 306 F. Supp. 3d 930, 940 (W.D. Tex. 2009); *Martinez v. McLane*, 792 F. App'x 282, 287 (5th Cir. 2019); *cf. Hernandez v. Tex. Dep't of Hum. Servs.*, 91 F. App'x 934, 935 (5th Cir. 2004) (per curiam) ("The Eleventh Amendment bars the adjudication of pendent state law claims against nonconsenting state defendants in federal court.").

The same goes for Smith's TCHRA claim (Dkt. 18 ¶¶ 133-138), as the TCHRA likewise "does not expressly waive sovereign immunity in federal court." *Perez*, 307 F.3d at 332; *accord Pequeno v. Univ. of Tex. at Brownsville* 718 F. App'x 237, 241 (5th Cir. 2018); *Issa v. Tex. Dept. of Crim. J.*, No. 1:22-CV-01107, 2023 WL 4923971, at *4 (W.D. Tex. Aug. 1, 2023). Thus, the Court lacks jurisdiction over the Institutional Defendants for these claims.

 2. *The Institutional Defendants are also immune from Smith's federal constitutional claims and FMLA claim.*

Smith further alleges that the Institutional Defendants violated his federal constitutional due process and free speech rights and failed to adequately train the faculty tribunal. *See* Dkt. 18 ¶¶ 72-87 & 101-115. As he must, he brings each of these claims via 42 U.S.C. § 1983. *See Montemayor v. Miller*, No. SA-11-CV-24-XR, 2011 WL 3902764, at *2 n.15 (W.D. Tex. Sept. 6, 2011) (noting that Section 1983 is the only vehicle for an individual to bring federal constitutional claims). The Court lacks jurisdiction over these claims, too, because Congress has not abrogated

and Texas has not waived immunity for Section 1983 actions. *Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir. 2020); *NiGen Biotech. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). Moreover, Section 1983 only permits suits against statutorily defined "persons," and this Court has previously held that "UT System, UTSA, [and their officers in their] official capacity are not 'persons' amenable to . . . § 1983 claims." *Richardson v. Univ. of Tex. Sys.*, No. 5:19-CV-271-XR, 2019 WL 2329322, at *3 (W.D. Tex. May 31, 2019).

Similarly, Congress has not abrogated—nor has Texas waived—immunity from "self-care" FMLA claims like Smith's.[5] *Coleman*, 566 U.S. 30, 43 (2012) ; *Alfred v. Harris Cnty. Hosp. Dist.*, 666 F. App'x 349, 353 (5th Cir. 2016) (barring FMLA "self-care" claim against state hospital district). Thus, the Court lacks jurisdiction over the Institutional Defendants for these claims, too.

### 3. *The* Ex parte Young *doctrine does not salvage Smith's claims.*

With respect to his federal claims—and potentially his TCHRA claim—against Drs. Eighmy and Browning in their official capacities, Smith attempts to partially avoid the jurisdictional bar by invoking *Ex parte Young*, which allows a plaintiff to seek (1) prospective injunctive relief, (2) for ongoing violations of "federal, not state, law," (3) from "state officers who are acting in their official capacities."[6] *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (citation omitted); *see* Dkt. 18 ¶¶ 72, 84, 101, 116, & 133 (limiting damages sought to "prospective relief within the bounds of *Ex parte Young*"). Smith's efforts are futile.

---

[5] Smith alleges that he took FMLA to deal with personal health issues, which brings him within the FMLA's "self-care" provision rather than its "family-care" provision. *Compare* Dkt. 18 ¶¶ 28-30 & 120, *with Coleman v. Ct. of App. of Md.,* 566 U.S. 30, 34 (describing FMLA protections).

[6] Smith does not invoke Young as to UTSA or the UT System. *See* Dkt. 18 ¶¶ 72, 84, 101, 116, & 133. This restraint is appropriate, because those entities are not "state officers," but rather institutional actors to which the doctrine does not apply. *See Moore v. La. Bd. of Elem. & Secondary Educ.*, 743 F.3d 959, 964 (5th Cir. 2014) (citation omitted) (dismissing claims against the Louisiana Department of Education and because "[t]he *Young* exception has no application in suits against the States and their agencies, which are barred regardless of the relief sought"). Thus, they continue to enjoy full immunity for the reasons given above. Smith does invoke Young against the Board of Regents, but they are not part of this motion

First, the *Young* exception does not save Smith's TCHRA claim, because the doctrine only applies to <u>federal</u> causes of action. *See Corn*, 954 F.3d at 275 ("[S]tate officials cannot be sued for violations of state law in federal court, even under the *Ex Parte Young* exception."). Thus, Smith's TCHRA claim against the Institutional Defendants remains barred by immunity.

This leaves only Smith's federal constitutional claims and FMLA claim against Drs. Eighmy & Browning in their official capacities, for which he seeks reinstatement to his prior "position and pay grade" (*i.e.*, tenured professor). *E.g.*, Dkt. 18 ¶ 139. While a request for reinstatement implicates *Young* in the abstract, Smith's particular request does not because *Young* also requires the defendant be able to provide the relief the plaintiff seeks. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (noting that the *Young* exception demands proof of "redressability" akin to—if not identical to—that required by principles of Article III standing).

Fatally for Smith's claims, neither Dr. Eighmy nor Dr. Browning can reinstate him to his position because the legal authority to grant (or reinstate) tenure is exclusively committed to the UT System Board of Regents as a matter of state law. TEX. EDUC. CODE § 51.942(b) ("Only an institution of higher education's governing board . . . may grant tenure."). In fact, this Court previously dismissed *Young* claims against UTSA's prior president and other administrators for this very reason. *Ayers v. Romo*, No. SA-10-CA-612, 2012 WL 12872435, at *1 (W.D. Tex. Mar. 19, 2012) (noting that defendants "lack[ed] the authority to reinstate the Plaintiff" to his professorship); *accord Liu v. Tex. State Univ.*, No. 1:18-CV-938, 2019 WL 3804491, at *6 (W.D. Tex. Aug. 12, 2019), *R & R adopted*, 2019 WL 13253483 (W.D. Tex. Aug. 30, 2019) (dismissing *Young* claims against Texas State University administrators for same reason).

In short, the Court should dismiss Smith's constitutional, FMLA, and TCHRA claims against the Institutional Defendants because they enjoy sovereign immunity and Smith's appeal to *Ex parte Young* is misplaced.

## V.   RULE 12(b)(6) MOTION TO DISMISS

Alternatively, the Court should dismiss all of Smith's claims against Movants because he fails to plausibly allege their essential elements and, as to the Individual Defendants, he cannot overcome their entitlement to qualified immunity.

### A.   *The Court should dismiss Smith's federal and state procedural due process claims (Counts 1 & 2) because he received all the process to which he was entitled.*

To state a procedural due process claim, Smith must plausibly allege that he was terminated without receiving minimum Constitutional process. *See Banik*, 2017 WL 2505653 at *17 (citing *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1225 (5th Cir. 1985)). He fails to do so.

#### 1.   *The Court should disregard Smith's irrelevant assertions about the "CPE" process and alleged violations of the Regents Rules.*

Importantly, the minimum process due to Smith is set by the Constitution—not by state law or institutional policy. *See Gerhart v. Hayes*, 201 F.3d 646, 650 (5th Cir. 2000) (irrelevant subsequent history omitted) ("The fundamental issue in due process law is not whether state officials violated state law, but whether they provided the plaintiff with the constitutional minima."); *Brown v. Tex. A & M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986) (citing *Franceski v. Plaquemines Parish Sch, Br.*, 772 F.2d 197, 199-200 (5th Cir. 1985)) ("The failure of a state agency to comply with its internal regulations is insufficient as a matter of law to establish a violation of Due Process, because constitutional minima nevertheless may have been met.").

Smith ignores this precept by repeatedly accusing Movants of violating institutional policies and procedures he claims stem from the Texas Education Code—like the Comprehensive Periodic Evaluation ("CPE") process and the Regents' *Rules and Regulations*. *See* Dkt 18 ¶¶ 15-22, 71, 112. As numerous cases confirm, these allegations are irrelevant to Smith's <u>constitutional</u> due process claims. *See Gerhart*, 201 F.3d at 650; *Brown,* 804 F.2d at 335; *Levitt*, 759 F.2d at 1230; *Gonzales v. City of San Antonio*, No. 5:17-CV-998-OLG-RBF, 2019 WL 3557351, at *4 (W.D. Tex. Aug. 5, 2019), *R & R adopted* Aug. 27, 2019. Thus, the Court should ignore them.

2. *Smith's allegations show that he received far more process than the Constitution requires*.

For a tenured professor like Smith, Constitutional due process requires merely that he be:

(1) advised of the cause for his termination in sufficient detail so as to enable him to show any error that may exist;

(2) advised of the names and the nature of the testimony of the witnesses against him;

(3) given an opportunity to be heard in his own defense within a reasonable time; and

(4) given a hearing before a tribunal that possesses some academic expertise and an apparent impartiality toward the charges.

*Levitt*, 759 F.2d at 1228. Despite this formal recitation, the due process standard in the non-criminal context is not onerous; it "does not require a trial-type hearing" and boils down to "notice and an opportunity to be heard." *Robison v. Wichita Falls & N. Tex. Cmty. Action Corp.*, 507 F.2d 245, 252 (5th Cir. 1975); *Franceski*, 772 F.2d at 199 (citing *Bishop v. Wood*, 426 U.S. 341, 345 (1976)). Smith's own allegations show he received adequate process prior to his termination.

1. *Smith had ample notice of the charges against him and several chances to respond*.

Smith's primary complaint is that Dr. Eighmy's January 2021 letter convening the faculty tribunal failed to state that Smith's hearing would concern his lengthy history of chronic underperformance documented in Provost Espy's July 2020 memorandum, rather than just his failure to satisfy the 2019-2020 PIPs. *See* Dkt. 18 ¶¶ 63-69, 75-82.

Smith's position is nonsensical, since Dr. Eighmy's letter charges him with failing to satisfy the 2019-2020 PIPs <u>and</u> to "otherwise demonstrate a commitment to improve your performance as a UTSA tenured faculty member"—a charge clearly implicating both his past and present performance. *Id.* ¶ 39. Critically, Dr. Eighmy explicitly stated that "***[t]he facts supporting these charges are described in detail in the July 21, 2020, memorandum and exhibits submitted to me by Dr. Espy, of which you were provided a copy***[,]" belying Smith's theory that he was unaware the events described in the memorandum would be an issue at the tribunal hearing. *Id.*; *see also id.* ¶ 42 (acknowledging that a UT System attorney also referenced Dr. Espy's

memorandum in follow-up correspondence). In turn, Provost Espy's memorandum and attachments detailed Smith's performance deficiencies back to at least 2013. *See* Ex. A (Espy Memo) at 2-3, 9 (discussing Smith's 2013 PIP, poor student performance, hostility towards his former department chair, etc.). Whatever hair Smith is attempting to split, it is too small to see: He does not plausibly allege that the scope of the tribunal hearing exceeded his notice.

Moreover, Smith cannot plausibly allege that he was unprepared to respond to the issues in Dr. Espy's memo, given that he had already (1) participated in the prior Rule 31008 process concerning his pre-2019 performance deficiencies; (2) discussed the incidents in the memo with Dr. Espy as part of his final Rule 31008 process; and (3) responded to the memo orally and in writing prior to the tribunal hearing. *See* Dkt. 18 ¶¶ 24-25 (detailing April 2019 meeting with Dr. Eighmy); Ex. A (Espy Memo) at 5-9 (detailing Smith's responses to the items raised in the memo); Ex. C (Jan. 22, 2021 Eighmy Ltr.) (noting that Smith responded "in person" and in writing "to the allegations and supporting evidence presented in the July 21, 2020, memorandum and termination recommendation from [Dr. Espy]"). In short, Smith was aware of the issues highlighted in the memorandum well before the tribunal hearing and he had numerous pre-hearing opportunities to respond to them—to say nothing of his ability to respond in person at the hearing itself.[7]

Smith also had the opportunity to respond to the memorandum's contents <u>after</u> the tribunal hearing, as the tribunal was merely one intermediate step in the multi-stage Rule 31008 process. Instead, as Smith acknowledges, the tribunal sent its report to Dr. Eighmy, who reviewed it and then decided to recommend Smith's termination to the Board of Regents. *See* Dkt. 18 ¶¶ 53-54;

---

[7] Unable to plausibly allege that <u>he</u> was unable to respond to the memorandum's contents at the hearing, Smith complains only that he did not prepare his "expert witness" to testify as to the gamut of his deficient performance. See Dkt. 18 ¶¶ 65, 76. Smith's obligation, however, is to allege procedural deficiencies amounting to a constitutional violation; his gripe that his expert was unprepared to address a portion of the evidence at the hearing does not qualify. *Cf. Banik*, 2017 WL 2505653 at *19 (finding no due process violation where the plaintiff did not have a copy of an accusatory statement prior to the tribunal hearing but was aware of its contents and cross-examined its author at the hearing).

Ex. B (Rule 31008 §§ 5.6-5.7). Exercising his rights under the Rule 31008 process, Smith then wrote directly to the Regents, disputing the basis for the tribunal's findings and Dr. Eighmy's recommendation. *See* Dkt. 18 ¶ 55. In other words, he was afforded an additional, post-tribunal step to address the memo's contents—a step beyond minimum Constitutional requirements.

Put simply, Smith had (1) more-than-ample notice that the incidents relayed in Dr. Espy's memorandum would be addressed at the tribunal hearing and (2) several opportunities to respond to them. He has not plausibly alleged a procedural due process violation on these grounds.

> 2.   *Smith's allegations about the tribunal "relying on Google" are also insufficient.*

Smith's second procedural complaint is that "some" tribunal members "offer[ed] their own testimony and information which they had obtained by googling topics during the hearing." Dkt. 18 ¶¶ 47, 70, 83. He does not allege what the tribunal "testified" to or "googled" or how he was deprived of notice or an opportunity to be heard. *See id.* Absent such details, these conclusory allegations are insufficient to state a claim. *Cf. Banik*, 2017 WL 2505653, at *18 (rejecting argument that a tribunal member made "biased" rulings because "Plaintiff fails to explain what [she] was ruling on," precluding the Court from finding a due process violation). In short, Smith does not plausibly allege a procedural due process violation on these grounds, either.

Absent plausible allegations of a due process violation on any factual theory, the Court should dismiss Smith's procedural due process claims (Counts 1 & 2) in their entirety.

**B.   The Court should dismiss Smith's substantive due process claim (Count 3) because he fails to plead "arbitrary and capricious" action that "shocks the conscience."**

To state a substantive due process claim, Smith must plausibly allege that Movants terminated him in "arbitrary and capricious" fashion. *See Lewis v. Univ. of Tex. Med. Br. at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) ("Substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner . . . ."). To support his claim, Smith (1) reprises his allegation about the tribunal "using google" and (2) asserts

that "no reasonable person" could have concluded that he failed to satisfy his PIP because he "produced two PIP reports with 72 manuscript pages of documented progress . . . ." *See id.*

The "arbitrary and capricious" standard is "demanding." *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992). Indeed, it "may be even more demanding in the context of higher education personnel decisions because of repeated refusals by [courts] to use the Fourteenth Amendment as an excuse to regulate the internal affairs of public universities." *Jones v. La. Bd. of Sup'rs*, 809 F.3d 231, 240 (5th Cir. 2015) (cleaned up). It is met only where there is no "rational connection between the known facts and the decision" and the act involves an "abuse of power" that "shocks the conscience." *Gonzales v. City of San Antonio*, No. 5:17-CV-998, 2018 WL 2976988, at *4 (W.D. Tex. June 12, 2018) (quoting *Lewis*, 665 F.3d at 630). The "decision to terminate a tenured faculty member is not arbitrary or capricious if reasonable minds could disagree on the propriety of the termination." *Banik*, 2017 WL 2505653, at *20.

Smith plainly fails to state a claim under this standard. His unadorned "google" allegation is insufficient to show an "abuse of power" that "shocks the conscience." His claim that "no reasonable person" could have concluded he failed to satisfy the PIP is similarly misguided, as he alleges that at least three administrators, three of five tribunal members, and the Board of Regents found exactly that. Rather than alleging a conscience-shocking "abuse of power," Smith simply disagrees with their professional judgment, which is not enough to state a substantive due process claim.[8] *See Spuler*, 958 F.2d at 107 (citation omitted) ("The judicial inquiry is properly only whether the decision was made, wisely or not, by a specific exercise of professional judgment and on the basis of factors clearly bearing on the appropriateness of conferring academic tenure."). The Court should reject Smith's futile attempt to state substantive due process claim.

---

[8] Even Smith's own allegations tend to show he failed to satisfy the PIP. He admits he was required not just to submit "manuscript pages," but to have papers accepted for conferences and publication, attend workshops and professional activities, and more. *See* Dkt. 18 ¶ 32.

### C.   Smith fails to allege essential elements of his "failure to train" claim.

Smith's "failure to train" claim simply combines the allegations from his due process claims (*i.e.*, "googling" and "charges or evidence not cited in the charging letter") with the additional allegation that "UTSA and UT System" failed to train "the tribunal" and their "representatives" not to engage in those actions. *See* Dkt. 18 ¶¶ 111-115. But this claim fails at the threshold because "a failure to train action requires an underlying constitutional violation." *Graham v. Hodge*, 619 F. App'x 394, 395 (5th Cir. 2015); *accord Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013). As detailed above, Smith fails to allege a cognizable constitutional due process violation. *See* Parts V.A-B. Thus, he cannot jump even this initial hurdle.

But even if he had identified a colorable due process violation, Smith fails to allege facts sufficient to establish the additional "failure to train" elements: (1) inadequate training procedures; (2) a causal connection between the inadequacy and the harm; and (3) the "deliberate indifference" of relevant policymakers. *See Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021); *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017). As the Fifth Circuit has noted, for instance, plaintiffs "typically satisfy the first element by alleging facts related to the locality's actual training program," and a conclusory allegation, like a claim that inadequate training "is apparent from the facts of the case," is insufficient. *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015) (collecting cases); *Quinn*, 863 F.3d at 365 ("Defects in a particular training program must be specifically alleged."). As to the third element, "a plaintiff normally must allege a pattern of similar constitutional violations by untrained employees." *Hutcheson*, 994 F.3d 477, 482.

Smith's allegations are quintessentially conclusory. He alleges no details about the relevant training protocols (he simply declares that they caused his termination) and identifies no pattern of constitutional violations. *See* Dkt. 18 ¶¶ 113-15. Instead, he posits a *res ipsa loquitur*-type theory that, "had the Tribunal been adequately trained, there is no way they would have been googling information or entertaining . . . charges or evidence not cited in the charging letter." Dkt. 18 ¶ 113.

These unadorned declarations are simply inadequate as a matter of law, and the Court should dismiss this cause of action for failure to state a claim, too.

### D. Smith fails to plausibly allege the "protected speech" and "causation" elements of his free speech retaliation claims (Counts 4-5).

To sustain his free speech retaliation claims, Smith must allege facts sufficient to show, among other things, that he (1) he spoke "as a citizen" on a matter of public concern and (2) his speech motivated his termination. *Anderson v. Valdez*, 913 F.3d 472, 476-77 (5th Cir. 2019). He pleads himself out of court on both elements.

First, Smith admits that his July 2018 op-ed piece simply reprised the contents of a "report" he gave to Dr. Browning the previous semester. Dkt. 18 ¶ 23. The Fifth Circuit has repeatedly held that an employee cannot "transform" words initially uttered in the course of his job duties "into protected speech simply by continuing to express [it] to certain external parties." *Foerster v. Bleess*, No. 20-20583, 2022 WL 38996, at *3 (5th Cir. Jan. 4, 2022) (citing *Corn*, 954 F.3d at 278; *Anderson*, 913 F.3d at 478). In other words, the fact that Smith eventually published the speech in the newspaper is irrelevant: the point is that it originated as speech within his job duties. Thus, he has not plausibly alleged that he spoke "as a public citizen"—the first element.

Second, Smith does not plausibly allege that his opinion piece motivated his termination. For one, he admits that Dr. Browning discussed terminating him with UTSA's provost as far back as Spring 2017 and placed him on administrative leave for poor performance in November 2017— more than eight months before the op-ed. Dkt. 18 ¶ 15-16, 22; *see also* Ex. A (Espy Memo) at 2 (noting that Dr. Browning also formally recommended that UTSA pursue Smith's termination in November 2017). Since the machinery for terminating Smith's employment was already in motion at the time Smith wrote his op-ed, he cannot show the requisite causal connection. *See Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493–94 (5th Cir. 2011) (finding no causation where the "initial termination decision occurred before [plaintiff's] protected activity").

And, while Smith alleges that Dr. Eighmy "brought up the op-ed piece" at their April 2019 meeting—more than nine months later[9]—to discuss Dr. Browning's recommendation, he provides no details from which the Court can infer retaliatory animus. *Compare* Dkt. 18 ¶¶ 24, 92, 103, *with Wetherbe v. Smith*, 593 F. App'x 323, 328 (5th Cir. 2014) (affirming dismissal where plaintiff did not allege details indicating that the decisionmaker "was aware of this speech or that it motivated his actions"). But, more crucially, Smith acknowledges that President Eighmy "end[ed] the termination proceedings" after this meeting and instead placed him on an additional PIP. Dkt. 18 ¶ 25. In other words, the only plausible inference from Smith's allegations is that his op-ed led to more favorable treatment, not less.

Smith concludes his free speech claims with a handful of additional unadorned allegations. First, he contends, Drs. Eighmy and Browning "exhibited retaliatory animus and exerted influence over the decision of the final policymaking authority, the Regents . . . ." Dkt. 18 ¶¶ 97, 108. But Smith alleges no specifics substantiating these allegations or connecting them to his op-ed—a fatal flaw. *See Hey v. Irving*, No. 97-60816, 1998 WL 723819, *2 (5th Cir. Oct. 2, 1998) ("Absent specific factual allegations . . . , the conclusory allegation that Clark influenced the police is insufficient to establish state action."); *Brown v. Bd. of Trs Sealy Indep. Sch. Dist.*, No. 11-CV-1755, 2012 WL 3069844, at *4 (S.D. Tex. July 27, 2012) (dismissing "conclusory allegations claiming that [bad actor] exerted influence over the Board."). Indeed, nowhere in his pleading does Smith allege that Dr. Browning was even aware of the op-ed. *See generally* Dkt. 18.

Finally, Smith asserts that Drs. Eighmy and Browning either had "policymaking authority" or "conspired with . . . the final policymaking authority" to terminate him. *Id.* ¶¶ 98, 109. Smith grasps at straws, as he simply recites municipal liability buzzwords without any substantive factual allegations. *See Armstrong v. Ashley*, 60 F.4th 262, 276–77 (5th Cir. 2023) (affirming dismissal in

---

[9] *See Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 206 (5th Cir. 2007) (even six-month gap between activity and adverse action insufficient to infer causation)

part because allegations that "persons with final policymaking authority . . . participated personally in the misconduct" were "barren of factual support and wholly conclusory"); *Hoyt v. City of El Paso, Tex.*, 878 F. Supp. 2d 721, 743 (W.D. Tex. 2012) (refusing to accept as true "mere legal conclusions" that the city mayor was a "final policymaker").

In sum, Smith fails to sufficiently plead his free speech claims, too.

**E.  Smith's FMLA and Rehabilitation Act claims (Counts 7-8) are barred by limitations and are not supported by plausible factual allegations.**

Smith asserts parallel FMLA and Rehabilitation Act claims. First, he claims, Movants "interfered" with his FMLA entitlement and failed to accommodate his physical restrictions by assigning him a PIP requiring more than a "half-day, 50% workload." *See* Dkt. 18 ¶¶ 118-121, 131. Second, he contends, Dr. Browning retaliated against him by "proposing his termination" two months after his FMLA leave ended and he "return[ed] to work with no restrictions," and Dr. Eighmy "held [Smith's] exercise of his FMLA rights against him" by "concluding that despite this gratuity, [Smith] still failed to meet the PIP's requirements." *Id.* ¶¶ 122-23, 128. These allegations are insufficient to state a claim under either statute, on any theory.

*1.   These claims are barred by limitations.*

The statute of limitations for both FMLA and Rehabilitation Act claims is two years. 29 U.S.C. § 2617(c)(1) (FMLA); *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (Rehabilitation Act). Smith filed this lawsuit on April 26, 2023. *See* Dkt. 1 (Orig. Compl.).

Smith's complaint that his PIP failed to account for his FMLA leave and medical restrictions is plainly barred by limitations, as he received the PIP (and was aware of its contents) in June 2019—nearly four years before he filed suit. *Compare* Dkt. 18 ¶ 26, *with Standley v. Rogers*, 202 F. Supp. 3d 655, 663 (W.D. Tex. 2016) (characterizing the issuance of a PIP as a "discrete" event that initiates the limitations period). As for his retaliation theory, Smith's FMLA leave and medical restrictions ended, at the latest, in March 2020, and Dr. Browning proposed his

termination in May 2020. *See* Ex. A (Espy Memo) at 4 n. 5 ("Dr. Smith's FMLA leave ended on March 24, 2020"); Dkt. 18 ¶ 37.[10] However, he did not file suit until nearly three years later. *See* Dkt. 1 (Orig. Compl.). Thus, the Court should dismiss these claims on limitations grounds alone.

    2.   *Smith's FMLA interference and disability discrimination claims are factually insufficient.*

    Alternatively, Smith's FMLA interference and Rehabilitation Act theories—that he was given more than a half-day's work and not appropriately accommodated—lack factual specificity and are defeated by his other allegations. For one, he admits that his "physical limitations" involved only his ability to "stand and lecture"—not his ability to research. *See* Dkt. 18 ¶¶ 28, 30. Further, he specifically admits that Dr. Browning "modified the PIP to focus on research" to account for these restrictions. *See id.* ¶ 30. He does not allege specific facts from which the Court can infer that the modified PIP metrics required more work than his FMLA and physical restrictions allowed; rather, according to Smith, the tribunal concluded that he failed to satisfy the PIP "<u>despite</u> being allowed intermittent FMLA," not <u>because</u> of it. *Id.* ¶ 54. Moreover, as noted above, Smith's FMLA leave ended and he returned to work "without restrictions" in March 2020. *See id.* ¶ 128-29. His theory does not account for his return to full-time work prior to the end of the PIP period. And, his admission that he returned to work two months before Dr. Browning proposed his termination refutes his alternative theory that he "was not[] restored to the position he held when the leave began." *Id.* ¶ 119. Since Smith fails to plausibly allege FMLA interference, failure to accommodate, or disability discrimination, the Court should dismiss these claims.

    3.   *Smith fails to plausibly allege the causation element of his retaliation claims.*

    Smith's retaliation theories fail because he does not plausibly allege a causal link between his FMLA leave or medical restrictions and his termination. He asks the Court to infer one from the gap between the end of his leave and Dr. Browning's termination recommendation, but even

---

[10] Smith states that his "FMLA leave ended [in] February 2021" and Dr. Browning proposed his termination in May 2021. Dkt. 18 ¶ 122. Smith's "2021" reference is clearly a typographical error, as he alleges elsewhere that Dr. Browning's recommendation was in May 2020. *Id.* ¶ 37.

"two and one-half months . . . is not within the 'very close' proximity that is necessary to establish causation." *Besser v. Tex. Gen. Land Office*, 834 F. App'x 876, 885 (5th Cir. 2020).

Moreover, the Fifth Circuit has repeatedly rejected appeals to temporal proximity where the plaintiff's termination stemmed from performance deficiencies beginning prior to his FMLA leave/request for accommodations. *See, e.g.*, *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (finding no causation where the plaintiff "filed for FMLA leave after three weeks of his one-month probationary program"); *Ray v. United Parcel Serv.*, 587 F. App'x 182, 196 (5th Cir. 2014) (finding no causation where UPS "initiated performance-improvement measures prior to Ray's FMLA leave"). Smith admits, as he must, that he had been charged with persistent performance deficiencies well before he sought FMLA or medical accommodations; indeed, he cites the issuance of the original 2019 PIP as the reason he sought FMLA in the first place. *See* Dkt. 18 ¶ 30. Thus, any "temporal proximity" between his FMLA or medical restrictions and Dr. Browning's recommendation is legally inconsequential.[11]

Smith's additional allegation about Dr. Eighmy—that he concluded Smith had failed to meet the PIP despite receiving FMLA leave—is irrelevant, as it is not facially retaliatory, and Smith alleges no details from which the Court can infer unlawful animus. *See* Dkt. 11 ¶ 123. Moreover, Smith alleges no facts from which the Court can infer that any unlawful animus tainted any other aspect of the multi-level Rule 31008 process, including the Regents' final determination in November 2021. Absent these facts, Smith's FMLA retaliation claim fails, too.

### F.  *Smith fails to state a retaliation claim under Title VI, Title VII or the TCHRA (Count 9)*.

Smith's Title VI, Title VII, and TCHRA retaliation claims rest solely on his allegation that he "reported his belief that Dean Browning's [unspecified] decisions were impacted by race in the Spring 2020 semester and was terminated a very short time later in May of 2020." Dkt. 18 ¶ 137.

---

[11] As noted above, Smith also alleges that Dr. Browning modified his PIP to account for his physical limitations—further undermining his claims of retaliatory animus. *See* Dkt. 18 ¶ 30.

But Smith provides no details as to the basis of his "belief," what "decisions" Dr. Browning supposedly made, or how they were "impacted" by race. *See id.* Thus, his assertions are insufficient to show that he engaged in "protected activity". *See Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (affirming Rule 12(b)(6) dismissal where the plaintiff "did not allege any facts, direct or circumstantial, that would suggest [the defendant's actions were based on . . . race or national origin or that [the defendant] treated similarly situated employees of other races or national origin more favorably"). But, even assuming *arguendo* that he sufficiently alleged a protected activity, he fails to allege additional facts plausibly suggesting that Dr. Browning or any other Defendant (or anyone else who participated in the Rule 31008 process, like Provost Espy or the tribunal members) knew about his "report" or acted because of it. *See id.* His omission of these details is fatal. *See Wetherbe*, 593 F. App'x at 328 (allegations of both awareness and motivation required).

Moreover, Smith's appeal to temporal proximity is misplaced because Dr. Browning's termination recommendation was simply the continuation of years' worth of efforts to hold him accountable for his poor performance—and she had already recommended his termination in 2017 and issued him a PIP for the 2019-2020 school year well before whatever "report" he made in Spring 2020. Given this indisputable history, Smith's cannot plausibly allege retaliatory animus from timing alone. *See Davis*, 448 F. App'x at 493–94.

In short, the Court should dismiss Smith's Title VI, VII and TCHRA claims, too.

### G.   *Smith fails to overcome the Individual Defendants' entitlement to qualified immunity.*

Even if Smith had sufficiently pled any of his claims, he still must meet the "demanding standard" of showing that the Individual Defendants acted "objectively unreasonably" in a way that "violated 'clearly established' law." *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020); *Jackson*, 959 F.3d at 201; *Sebastiani*, 2021 WL 11710301 at *5. The Court must not "define clearly established law at a high level of generality," but instead with specificity and granularity" because "the dispositive question is whether the violative nature of particular conduct is clearly

established." *Cunningham*, 983 F.3d at 191; *Brown v. Tarrant Cnty.,Tex.*, 985 F.3d 489, 495 (5th Cir. 2021). This is Smith's burden to bear. *Mayfield v. Currie*, 976 F.3d 482, 486 (5th Cir. 2020) ("[T]he plaintiff has the burden to demonstrate the inapplicability of the defense"). He has not done so and will not be able to do so in his response to this Motion. Thus, the Court should dismiss Smith's claims against the Individual Defendants on the basis of qualified immunity, as well.

## VI.  CONCLUSION

Because the Court lacks jurisdiction over the Institutional Defendants, the Individual Defendants enjoy qualified immunity, and, regardless, Smith fails to state a claim against any Movant, the Court should dismiss his claims against Movants in full. And, since Smith has already had five chances to perfect his claims, the Court should deny him further leave to amend.

Respectfully submitted,

*/s/ Dylan A. Farmer*
Shannon B. Schmoyer
State Bar No. 17780250
sschmoyer@sr-llp.com
Dylan A. Farmer
State Bar No. 24093417
dfarmer@sr-llp.com
SCHMOYER REINHARD LLP
8000 IH 10 West, Suite 1600
San Antonio, Texas 78230
Phone: (210) 447-8033
Fax: (210) 447-8036

**ATTORNEYS FOR MOVANTS UT SYSTEM, UTSA, DR. TAYLOR EIGHMY, AND DR. JOANN BROWNING**

**CERTIFICATE OF CONFERENCE & COMPLIANCE WITH COURT PROCEDURES**

Smith filed his Fourth Amended Complaint (Dkt. 18) on December 15, 2023. On December 20, 2023, I informed Smith's counsel, Jeremy Gilbreath, of Movants' intent to file this Motion to Dismiss and the expected bases therefor. Pursuant to the Court's procedures, Mr. Gilbreath had until December 27, 2023 to respond to my notice. He did not do so, so this Motion is procedurally proper.

/s/ *Dylan A. Farmer*
Dylan A. Farmer

**CERTIFICATE OF SERVICE**

I certify that I served a true and correct copy of the foregoing document on Plaintiff's counsel of record via the Court's CM/ECF system on January 5, 2024:

Jeremy Gilbreath
The Gilbreath Law Firm, PLLC
13000 Old Blanco Rd., Suite 304
San Antonio, Texas 78216
Telephone: (210) 479-3195
Fax: (210) 479-8452
jeremy@gilbreathfirm.com

/s/ *Dylan A. Farmer*
Dylan A. Farmer