THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BRUCE SMITH, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | |
| THE UNIVERSITY OF TEXAS AT SAN § | NO. 5:23-cv-538-OLG |
| ANTONIO, THE UNIVERSITY OF TEXAS § | |
| SYSTEM, JOANN BROWNING, THOMAS § | |
| TAYLOR EIGHMY, AND THE UNIVERSITY § | |
| OF TEXAS SYSTEM BOARD OF REGENTS § | |
| § | |
| *Defendants*. § | |

## DEFENDANTS' UTSA, UT SYSTEM, DR. JOANN BROWNING, AND DR. TAYLOR EIGHMY'S REPLY IN SUPPORT OF MOTION TO DISMISS

Faced with Movants' Motion to Dismiss, Smith's abandons several claims, ignores several arguments, and renounces several of his own allegations. For the rest, he fails to demonstrate this Court's subject matter jurisdiction, fails to explain how his sparse allegations plausibly state any claim for relief, and fails to overcome the Dr. Eighmy and Dr. Browning's qualified immunity. The Court should dismiss all of his claims against every Movant without leave to amend.

**I.  RULE 12(b)(1) REPLY ARGUMENTS & AUTHORITIES**

**A. *Smith implicitly concedes that UTSA and UT System are immune from his federal constitutional claims, FMLA claim, and all of his state law claims.***

Movants' jurisdictional argument is three-pronged:

(1) By operation of the Eleventh Amendment, UTSA, UT System, and Drs. Eighmy and Browning in their official capacities are immune from suit in federal court absent explicit congressional abrogation or state waiver;

(2) There is no such abrogation or waiver for Smith's federal constitutional claims, FMLA claim, and state law claims; and

(3) Though *Ex parte Young* created a narrow exception to immunity for (a) federal claims (b) seeking prospective, non-monetary relief (c) against state officers in their official capacities, it does not apply here because Drs. Eighmy and Browning cannot provide the relief Smith seeks (*i.e.*, reinstatement to his tenured position).

*See* Dkt. 19 (MTD) at 5-8.

1

Smith does not contest the first two prongs. *See* Dkt. 25 (Resp.) at 4-9.[1] He also appears to agree with the well-settled law that the *Young* exception does not apply to state <u>institutions</u>—only individual state <u>officers</u>. *Compare id.* at 7 ("Proper *Ex parte Young* defendants are . . . **state officials**" (emphasis added)), *with Moore v. La. Bd. of Elem. & Secondary Edu*c., 743 F.3d 959, 964 (5th Cir. 2014) (citation omitted) ("The *Young* exception has no application in suits against the States and their agencies, which are barred regardless of the relief sought"). In any event, Smith cites no authority demonstrating this Court's jurisdiction over his state law claims, federal constitutional claims, and FMLA claim against UTSA and UT System. Thus, the Court should dismiss those claims against these defendants.

### B. Drs. Eighmy and Browning in their official capacities remain improper *Young* defendants because they have no power to reinstate Smith to his tenured professorship.

Smith does not dispute the general rule that a proper *Young* defendant must have the ability to grant the prospective relief the plaintiff seeks. *See* Dkt. 19 (MSJ) at 7-8 (collecting authorities). Nor does he dispute that Texas law endows only the Regents with the authority to grant (or revoke) tenure. *Compare id.* (quoting TEX. EDUC. CODE § 51.942(b)), *with* Dkt. 25 (Resp.) at 5. Nevertheless, he asserts that because Drs. Eighmy and Browning have "some connection with" (1) his termination and (2) the typical tenure award process, they are proper defendants for his federal constitutional and FMLA claims and concomitant request for reinstatement to his tenured professorship. *See* Dkt. 25 (Resp.) at 5, 8. His contention is legally and factually flawed.

1. <u>Smith's focus on Dr. Eighmy and Dr. Browning's past actions is misplaced.</u>

First, Smith argues, because Dr. Browning "proposed Plaintiff's termination" and Dr. Eighmy "brought the termination action to the Regents," they have "some connection with" his termination sufficient to drag them into *Young*'s orbit. *See id.* at 5, 8. But Smith's retrospective analysis misapplies the "some connection" language, which, like the *Young* exception as a whole, is meant to be a strictly prospective inquiry.

---

[1] Movants reference the ECF-stamped pagination, rather than Smith's original pagination.

*United States v. Abbott*, the one case Smith cites on this issue, highlights his error. The plaintiffs sued Texas Governor Greg Abbott under *Young*, seeking an injunction enjoining his executive order "prohibit[ing] private individuals from providing ground transportation to migrants who were previously detained or subject to expulsion." *Abbott*, 85 F.4th 328, 332 (5th Cir. 2023). Analyzing whether Abbott was the proper defendant, the Court explained:

> *Ex parte Young* only permits injunctions against state officials who "have some connection with the enforcement of the act," or are "specially charged with the duty to enforce" the law at issue. The officer must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."

*Id* (citations omitted). With this context in mind, the Court found that Abbott was not a proper defendant because the executive order gave enforcement power to the Texas Department of Public Safety—not to Abbott himself. *See id.* at 335. That Abbott penned the order was immaterial, the Court said, because "*Ex parte Young* cannot be used to attack the Governor's *past* actions." *Id.* at 336. In short, "[r]elief against the Governor's issuance of the order is purely retrospective, plainly falls outside the bounds of *Ex parte Young*, and hence is barred by the State's sovereign immunity." *Id.* (citations omitted).

So too here: Dr. Eighmy and Dr. Browning's "past actions" regarding Smith's termination provide no justification for the *Young* exception, and the Court should reject this argument.

   2. *Smith's strained reading of the Texas Education Code does not justify his* Young *claims against Drs. Eighmy and Browning, either.*

Next, Smith turns to the Texas Education Code, which states that the Regents may exercise their tenure-granting power "on the recommendation of the institution's chief executive officer and the university system's chancellor." *See* Dkt. 25 (Resp.) at 5. Therefore, he contends, Drs. Eighmy and Browning are proper *Young* defendants because they "are necessary to bind the injunctive relief" (*i.e.*, reinstatement of his tenure). *See id.* at 5, 8.

As an initial matter, the statutory language does not implicate Dr. Browning, who is neither UTSA's "chief executive officer" nor "the university system's chancellor." *See* Dkt. 18 (Fourth

3

Am. Compl.) ¶ 16 (identifying her as Dean of the College of Engineering). Smith lamely asserts that she "would be his direct supervisor" if he were reinstated, but he does not explain why this is relevant under his reading of the statute. Thus, Smith's appeal to the Education Code provides no basis for his *Young* claims against Dr. Browning.

As for Dr. Eighmy, Smith aggressively reads the statute as precluding the Regents from conferring tenure in <u>any</u> context absent "the recommendation of the institution's chief executive officer." *See* Dkt. 25 (Resp.) at 5. Smith cites no authority holding that the procedural niceties of an initial grant of tenure also apply to a court-ordered reinstatement of tenure, much less in the *Young* context. *See id.* None of the courts that have dismissed claims against university administrators in tenure-related cases have held this, either. Instead, they considered only whether the named defendants had <u>formal</u> authority to grant or revoke tenure. *See Liu v. Tex. State Univ.*, No. 1:18-CV-938, 2019 WL 3804491, at *6 (W.D. Tex. Aug. 12, 2019), *R & R adopted*, 2019 WL 13253483 (W.D. Tex. Aug. 30, 2019) (dismissing administrators without regard to specific tenure procedures because only the Board of Regents possessed formal tenure-granting authority); *Ayers v. Romo*, No. SA-10-CA-612, 2012 WL 12872435, at *1 (W.D. Tex. Mar. 19, 2012) (same). Since Smith's position is legally indefensible, the Court should reject this argument, too.

It is Smith's burden to conclusively prove this Court's subject matter jurisdiction. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012). As detailed above, he has not done so with respect to his federal constitutional and FMLA claims against Drs. Eighmy and Browning in their official capacities. Thus, the Court should dismiss these claims in full.

### C. Texas's "ultra vires" doctrine does not give the Court subject matter jurisdiction over Smith's state law claims.

Acknowledging that *Young* does not apply to his state law claims, Smith invokes the "*ultra vires*" doctrine: an analogous exception to sovereign immunity in Texas state court. *See* Dkt. 25 (Resp.) at 8-9. According to Smith, this doctrine allows suits against state government actors in their official capacities so long as the plaintiff seeks only non-monetary relief. *See id.* Since the

4

Court can exercise pendent jurisdiction over his state constitutional claim and TCHRA claim, he reasons, these claims survive Movants' jurisdictional challenge. *See id.*

Several courts have rejected this argument on the grounds that the *ultra vires* doctrine is exclusively a state court exception and does not apply in federal court. *See United Steel v. Anderson*, No. SA-17-CV-1242-XR, 2018 WL 3017366, at *9 n.7 (W.D. Tex. June 15, 2018) ("Even if Plaintiffs were asserting *ultra vires* official-capacity claims as permitted by Texas law, the fact that a State permits certain claims in its own courts does not establish a waiver of immunity to suit in federal court."); *Beleno v. Lakey*, 306 F. Supp. 3d 930, 942 (W.D. Tex. 2009) (same); *cf. Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) ("A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued."). Smith implicitly concedes as much by citing only state court cases in support of his argument. *See* Dkt. 25 (Resp.) at 8-9. Moreover, regardless of whether a federal court could exercise pendent jurisdiction over state law claims in the abstract, "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." *Pennhurst*, 465 U.S. at 99, 121.

Since Smith fails to demonstrate this Court's subject matter jurisdiction over his state law claims against Drs. Eighmy and Browning in their official capacities, the Court should dismiss those claims, as well.

## II. RULE 12(b)(6) REPLY ARGUMENTS & AUTHORITIES

### A. *Smith's convoluted arguments still fail to show a procedural due process violation.*

Smith's procedural due process argument boils down to one untenable proposition: Even though he (1) received a copy of Dr. Espy's July 2020 memorandum and its 300 pages of exhibits during the Rule 31008 termination process, (2) gave Dr. Eighmy both oral and written responses to the memorandum's accusations of poor performance, and (3) was explicitly informed by Dr. Eighmy that the memorandum and exhibits contained the facts supporting the charges warranting his termination, the Court should find that he did not have fair notice that the events described in

the memorandum would be an issue at the tribunal hearing.[2] *See* Dkt. 19 (MTD) at 10-12; Dkt. 25 (Resp.) at 9-13.[3]

In support of his meritless position, Smith cobbles together a handful of byzantine—and ultimately futile—arguments. First, he contends, Dr. Eighmy's charge that he failed to "otherwise demonstrate a commitment to improve [his] performance as a UTSA tenured faculty member" (*i.e.*, the charge that implicates his well-documented history of chronic underperformance) was "unconstitutionally vague" because it accused him of failing to improve "throughout an undefined period based on undefined misdeeds." Dkt. 25 (Resp.) at 11. Here, Smith willfully ignores Dr. Espy's memorandum, which painstakingly documented his repeated failure to satisfy basic professional requirements from 2013 through 2020. *See generally* Dkt. 19-1 (Espy Memo). As Dr. Eighmy specifically directed Smith to the memorandum and Smith received a copy, Smith cannot credibly claim that he was unaware of the relevant "period" and "misdeeds."

Alternatively, Smith contends it is "unreasonable" to interpret Dr. Eighmy's charging letter as implicating his past underperformance because it "is singularly focused on the 2019-2020 PIP." *See* Dkt. 25 (Resp.) at 11-13. This is also demonstrably incorrect. The letter not only incorporated Dr. Espy's memorandum (which, again, recited Smith's litany of performance failures by chapter and verse), but also discussed the "prior [2017-2019] Rule 31008 process," the historical performance problems that caused Dr. Eighmy to put Smith on the 2019-2020 PIP in the first place, and Dr. Eighmy's warning in their April 2019 meeting that Smith's failure to improve his pre-

---

[2] As Movants noted, the twin elements of a procedural due process claim are "notice and an opportunity to be heard." *See* Dkt. 19 (MTD) at 10. Smith acknowledges that his claim concerns only the "notice" prong. *See* Dkt. 25 (Resp.) at 9 ("Plaintiff's procedural due process claims [sic] centers around the lack of sufficient notice."); *see also id.* at 10 ("Plaintiff was entitled to receive and only received one pre-termination hearing 'before a tribunal that possesses some expertise.'")

[3] Smith alleged that certain tribunal members violated his due process rights by "googling" information during the tribunal hearing. *See* Dkt. 18 ¶¶ 47, 70, 83. Movants sought dismissal on the grounds that these allegations are too vague to state a claim. *See* Dkt. 19 (MTD) at 12. Smith did not respond to that argument, so the Court should consider it conceded. *Compare generally* Dkt. 25 (Resp.), *with Stratta v. Roe*, No. 6:18-CV-00114-ADA, 2021 WL 1199634, at *6 (W.D. Tex. Mar. 30, 2021) (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)) ("A party's failure to respond to arguments raised in a Rule 12 motion constitutes waiver or abandonment of those issues.").

2019 deficiencies "will lead to further disciplinary actions up to and including termination." Dkt. 19-3 at 2-3. In other words, Dr. Eighmy explicitly linked Smith's past performance problems to the ongoing termination proceedings, whatever ignorance Smith now feigns.

The relevant case law also demonstrates that Smith received more than sufficient process. He repeatedly cites to *Wells v. Dallas Independent School District*, a case in which the plaintiff learned of his termination from a news broadcast and only weeks later received an unadorned notice charging him with "negligence" and other nebulous wrongdoing, but Smith's circumstances have nothing in common with those. *See Wells*, 793 F.2d 679, 681-83 (5th Cir. 1986). The better comparison is *Jackson v. Pierre*, a case Smith cites but which supports Movants' position.

Jackson was a tenured law professor at the Southern University Law Center who was charged with "prejudicial conduct," "unethical and/or immoral behavior" and "fail[ing] to perform duties in a professional manner" in connection with a will she prepared for a client of the law school's clinic. *Jackson*, 810 F. App'x 276, 277-78 (5th Cir. 2020). Like Smith, Jackson received a "report" summarizing the law school's investigation into the factual basis of the complaint. *Id.* Like Smith, Jackson complained that she "requested more specific charges, but they were not provided." *Id.* Like Smith, Jackson complained that subject matter of her disciplinary hearing was "broader than the information contained in the [notice] letters she had received." *Id.* Nevertheless, the Fifth Circuit held that she failed to plausibly allege a procedural due process claim. *Id.* at 279. This Court should find that Smith failed to do so, too.

### B.  *Smith has waived his substantive due process claim.*

Movants seek dismissal of Smith's substantive due process claim on the grounds that he failed to allege facts amounting to "arbitrary and capricious" action. *See* Dkt. 19 (MTD) at 12-13. But Smith did not respond to this argument, much less show that his allegations meet the standard. *See generally* Dkt. 25 (Resp.) (omitting mention of his substantive due process claim). Thus, the Court should consider this claim waived. *See Stratta*, 2021 WL 1199634, at *6.

### C. Smith has waived his "failure to train" claim.

Likewise, Movants seek dismissal of Smith's "failure to train" claim on the grounds that he failed to allege (1) a deprivation of due process or (2) the claim's additional elements, like inadequate training procedures and the "deliberate indifference" of policymakers. *See* Dkt. 19 (MTD) at 14-15. Smith did not respond to this argument, either. *See generally* Dkt. 25 (Resp.). So, the Court should consider this claim waived, too. *See Stratta*, 2021 WL 1199634, at *6.

### D. Smith still fails to plausibly allege the causation element of his free speech claims.

Smith contends that he can rely on temporal proximity to save his speech retaliation claim, since Dr. Eighmy "brought up the [July 2018] op-ed piece randomly" during the April 2019 "meeting to discuss whether there were grounds for Plaintiff's termination." *See* Dkt. 25 (Resp.) at 30. But, as Smith acknowledges, Dr. Eighmy did not recommend Smith's termination at that time. *See* Dkt. 19 (MTD) at 15-16. Instead, he placed Smith on a PIP, which Smith himself asserts "was not a disciplinary action, but meant to assist Plaintiff in meeting the performance expectations of his position." *See* Dkt. 25 (Resp.) at 24. Since Smith fails to allege temporal proximity between the op-ed, Dr. Eighmy's alleged mention of it, and any adverse employment action[4], the Court should dismiss his speech retaliation claims for lack of causation. *See Alvarado v. Tex. Health & Human Services Comm'n*, No. SA-19-CV-0106-JKP, 2022 WL 707225, at *5 (W.D. Tex. Mar. 9, 2022) ("[F]or cases that accept temporal proximity, the required proximity is "between an employer's knowledge of protected activity and an adverse employment action.").

### E. Smith's arguments do not salvage his FMLA or Rehabilitation Act claims.

Movants seek dismissal of Smith's parallel FMLA and Rehabilitation Act claims on both statute of limitations grounds and *Iqbal/Twombly* grounds. See Dkt. 19 (MTD) at 17-19. In his Response, Smith renounces substantially all of his FMLA and Rehabilitation Act allegations

---

[4] In his Complaint, Smith alleged that his op-ed was an "impermissible factor in [his] discharge." Dkt. 18 ¶ 103. There is clearly no temporal proximity there, as his termination by the Regents in November 2021 was more than three years after he wrote the op-ed and 2.5 years after his meeting with Dr. Eighmy.

8

against Movants and effectively waives his claims against them. He also fails to address several of Movants' arguments for dismissal.

1. *Smith's curious limitations arguments provide alternative grounds for dismissal.*

Smith's Fourth Amended Complaint plainly theorizes that Movants[5] interfered with his intermittent FMLA leave and failed to accommodate him under the Rehabilitation Act by issuing and purportedly failing to modify his PIP prior to the 2019-2020 academic year[6]:

- The PIP required an amount of work comparable to a full day, 100% workload. ***Requiring Plaintiff to perform such work and refusing to permit him to file a grievance [in July 2019] concerning the PIP*** interfered with, restrained, and effectively denied his FMLA rights. Dkt. 18 ¶¶ 27, 118

- Plaintiff complied with Defendants' requirements for applying for and seeking FMLA leave. Defendants ostensibly granted that FMLA, but ***proceeded to assign Plaintiff a full day's work***. *Id.* ¶ 121.

- Plaintiff was discriminated against by reason of his disability by ***the adoption of*** a performance improvement plan ("PIP") that was discriminatory, ***failing or refusing to discuss modifying that PIP*** to accommodate his disabilities, and by terminating him for purportedly failing to meet that PIP's requirements. *Id.* ¶ 131.

He also plainly complains about Dr. Browning's May 2020 termination recommendation:

- Defendants' [sic] FMLA leave ended in February of 202[0]. ***In May 202[0], Plaintiff's supervisor, Dean Browning, placed him on administrative leave and proposed his termination***. That is, the adverse action occurred very close in time to Plaintiff's exercise of his FMLA rights. *Id.* ¶ 122.

- [O]n March 16, 2020, his doctor released him to return to work without restrictions. ***On May 22, 2020, Plaintiff was proposed for termination by the Dean of the College of Engineering, Dean Browning***. *Id.* ¶ 128.

Apparently recognizing that any claims based on these allegations are barred by limitations (*see* Dkt. 19 (MTD) at 17-18), Smith renounces these theories of liability in his Response.[7] Instead,

---

[5] He is vague on which Movants, but he mentions UTSA and Dr. Browning a few times and Dr. Eighmy once. *See* Dkt. 18 ¶¶ 116-132. He does not mention UT System. *See id.*

[6] *But see* Dkt. 18 ¶ 30 (agreeing that Dr. Browning accommodated his inability to "stand and lecture" by "modif[ying] the PIP to focus on research, instead of teaching").

[7] He also bizarrely criticizes Movants for taking his allegations at face value. *Compare, e.g.*, Dkt. 18 ¶ 122 (characterizing Dr. Browning's termination recommendation as an "adverse employment action"), *with* Dkt. 25 (Resp.) at 17 ("Thus, Defendants' reliance on the date that Plaintiff's *supervisor*, Browning, recommended termination is misplaced.").

9

he repeatedly and emphatically asserts that <u>only</u> his November 2021 termination by the Regents constituted an actionable wrong:

- "It was only when the PIP was used as grounds for termination did the failure to accommodate his disability resulted [sic] in actual harm." Dkt. 25 (Resp.) at 16

- "Plaintiff *did not have a legal injury*, for which he could seek redress in court, until he suffered an adverse employment action, motivated by a retaliatory intent. . . . *Plaintiff's termination is the relevant adverse action here*." *Id.* at 17.

- On April 26, 2021, UTSA brought those charges against him in a termination hearing. Then, on July 27, 2021, UTSA President recommended Plaintiff's termination to the Regents, on the unlawful basis that he had not satisfied the PIP's requirements, which collectively invaded Plaintiff's leave right. ***Still, his employer did not take an adverse action, until November 18, 2021, when the Regents adopted Eighmy's recommendation***. *Id.* at 20.

- ***In fact, the termination date is very probably the date of the first event, "constituting the alleged violation for which the action is brought***." *Id.* at 23.

- "The termination is the proper date, under the facts of this case, because ***Plaintiff's theory of recovery is that his termination was an act of interference***." *Id.* at 25.[8]

Because his termination is within the two-year statute of limitations, he concludes, his Rehabilitation Act and FMLA claims are timely. Smith's about-face is unavailing.

As an initial matter, the Court should disregard Smith's blatant attempt to re-write his Fourth Amended Complaint. *Def. Distributed & Second Am. Found., Inc. v. U.S. Dep't of State*, No. 1:18-CV-637-RP, 2023 WL 2544334, at *5 (W.D. Tex. Mar. 15, 2023) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504 (S.D. Tex. 2011)) ("It is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."). He has had five opportunities to perfect his allegations and cannot avoid their flaws by disavowing them now. *See* Dkt. 19 (MTD) at 17-19.

---

[8] Put simply, Smith's proposed interpretation of the case law is that an employer can refuse to honor an employee's accommodation and FMLA requests with impunity so long as it does not later punish the employee for failing to adequately perform non-accommodated work. Only in this latter scenario, he insists, has the employee suffered an actionable deprivation of rights. *E.g.*, Dkt. 25 (Resp.) at 19-20. Other than to note that this is an unusual argument for a plaintiff to make, Movants do not wade into this morass. The Court does not need to, either. As explained below, Movants are entitled to dismissal even under this theory.

Regardless, rather than saving Smith's Rehabilitation Act and FMLA claims, his new theory of liability gives the Court yet another reason to dismiss them: By repeatedly asserting that he suffered "no legal injury" until the Regents (a separate defendant) terminated his employment in November 2019, he implicitly admits that has no colorable Rehabilitation Act or FMLA claims against any Movant. *See* Dkt. 25 (Resp.) at 17 (citing cases for his proposition that only his termination caused him a legal injury). Indeed, he explicitly admits as much with respect to Dr. Browning, but the same logic applies to the rest of the Movants, too. *See id.* ("Defendants' reliance on the date that Plaintiff's supervisor, Browning, recommended termination is misplaced").[9]

A few times, Smith seems to realize the fatal implications of his new theory and backtracks, suggesting that "seeking to terminate" him, rather than actually terminating him, might constitute a legal wrong. *E.g.*, Dkt. 25 (Resp.) at 20 ("By ***seeking to terminate*** Plaintiff, Plaintiff's employer retroactively and constructively denied Plaintiff's leave") & 26 ("In ***charging*** Dr. Smith with termination for failing to fulfill all the PIP's requirements, his employer interfered with or restrained his FMLA rights, and his hypothetical legal injury became real."). He then asserts that some of the pre-termination steps in his Rule 31008 termination process, like the faculty tribunal or Dr. Eighmy's July 2021 termination recommendation, are within the limitations period and (presumably) actionable. *See id.* at 16 (Rehabilitation Act) & 26 (FMLA).

Smith cannot have it both ways. If the actionable event was his termination by the Regents, the Court should dismiss his claims against Movants for lack of legal harm. If the actionable event was "seeking to terminate" him, then the Court should dismiss his claims against Movants on limitations grounds because they accrued when Dr. Browning formally recommended his

---

[9] Smith also concedes that Dr. Browning is not an "employer" within the meaning of the FMLA—an independent basis for dismissing his FMLA claim against her. *See* Dkt. 25 (Resp.) at 26 (agreeing that Browning "did not have the authority to terminate Plaintiff" and arguing that only Dr. Eighmy's July 2021 letter was "employer action."). But Dr. Eighmy had no more authority over Smith's employment than Dr. Browning did, since only the Regents could revoke Smith's tenure. Thus, if Dr. Browning is not an FMLA "employer," Dr. Eighmy is not, either. The Court should dismiss Smith's FMLA claims against both of them on this ground.

termination in May 2020. Neither law nor logic permits Smith to thread the needle by arguing that his claims accrued at some arbitrary step in the Rule 31008 process. In short, the Court has multiple reasons to dismiss Smith's FMLA and Rehabilitation Act claims against Movants.

    2. *Smith does not respond to several other grounds for dismissal of his FMLA and Rehabilitation Act claims.*

Aside from the limitations argument, Movants raise several other bases for dismissal of Smith's FMLA and Rehabilitation Act claims. Regarding his accommodation and interference claims, for instance, Smith alleges in conclusory fashion that the PIP failed to respect his physical limitations and intermittent FMLA allotment, but he admits that Dr. Browning modified it to account for his restrictions and alleges no facts plausibly suggesting that it actually required more work than his FMLA allowed. *See* Dkt. 19 (MTD) at 18. In short, he does not sufficiently allege that Movants deprived him of any accommodations or FMLA leave. Relatedly, Smith asserts that Movants "failed to reinstate" him, but he agrees that he returned to work for several months after the conclusion of his FMLA leave and expiration of his need for accommodations. *See id.* Smith does not respond to either of these arguments and, therefore, concedes them. *Stratta*, 2021 WL 1199634, at *6.

As for his retaliation theories, Smith does not respond to Movants' argument that he cannot rely on temporal proximity because the process culminating in his termination commenced well before his FMLA leave and accommodation request. *See* Dkt. 19 (MTD) at 18. Nor does he respond to Movants' contention that he alleges no facts from which the Court may infer unlawful animus. *See id.* Smith implicitly concedes these arguments, too. *Stratta*, 2021 WL 1199634, at *6.

The Court may dismiss Smith's FMLA and Rehabilitation Act claims on these alternative grounds, regardless of whether Smith's claims are barred by limitations.

**F. Smith has waived his Title VI and TCHRA claims.**

Movants seek dismissal of Smith's Title VI and TCHRA claims along with his Title VII claim. *See* Dkt. 19 (MTD) at 19-20. Smith's Response, however, mentions only his Title VII claim.

*See* Dkt. 25 (Resp.) at 27-28. Thus, the Court should consider Smith's Title VI and TCHRA claims waived. *See Stratta*, 2021 WL 1199634, at *6.

### G. Smith's Title VII retaliation allegations remain insufficient to state a claim.[10]

Smith's Title VII retaliation claim rests solely on the threadbare allegation that he "reported his belief that Dean Browning's decisions were impacted by race in the Spring 2020 semester and was terminated a very short time later in May of 2020." Dkt. 19 (MTD) at 19-20. Smith does not contend that he alleged the key elements of his claim: The basis of his beliefs, what "decisions" Dr. Browning made, when he made the report, how Dr. Browning would have known about it, or what circumstances suggest that it motivated her recommendation for his termination. *Compare id.*, *with* Dkt. 25 (Resp.) at 27-28. Instead, he insists that the Court can simply fill in the blanks for every element, shabby pleading aside:

- "It is fair to infer the report concerned Dr. Browning's employment decisions."

- "Plausibly the report could have been made within days of Dr. Browing's [sic] recommendation of termination."

- "It is fair to infer Dr. Browning's awareness of the report and that she acted on it."[11]

Dkt. 25 (Resp.) at 27-28. But no case law allows the Court to do Smith's job for him, and none of the authorities Smith cites excuses his lackluster allegations.

In *Raj v. Louisiana State University*, for instance, the Fifth Circuit confirmed that a plaintiff must allege specific facts plausibly suggesting an improper motive. *Raj*, 714 F.3d 322, 331 (5th Cir. 2013). Shortly afterwards, the Fifth Circuit emphasized that retaliation claims require the

---

[10] Should the Court find that Smith has not waived his Title VI and TCHRA claims (*see* Part II.F, *supra*), the arguments in this section apply to those claims, too.

[11] In his Complaint, Smith insists that he only brings his Title VII and TCHRA claim against his "'employer,' as that term is used and defined under the [sic] Title VII and TCHRA." Dkt. 18 (Fourth Am. Compl.) ¶ 134. In the section of his Response addressing his Title VII claim, he identifies his "employer" as UTSA. Dkt. 25 (Resp.) at 25. But later, he contends that he "makes claims . . . against Browning for violations of Title VII." *Id* at 32. But such a claim is barred because "there is no individual liability for employees under Title VII." *Smith v. Amedisys Inc.*, 298 F.3d 434, 448 (5th Cir. 2002). Thus, to the extent Smith actually asserts a Title VII claim against Dr. Browning (or Dr. Eighmy), the Court should dismiss it regardless of the merits of Movants' other arguments for dismissal.

plaintiff to plead factual allegations plausibly suggesting that the alleged wrongdoer was aware of and motivated by the plaintiff's protected activity. *See Wetherbe v. Smith*, 593 F. App'x 323, 328 (5th Cir. 2014). Smith tries to wriggle away from these obligations by citing Federal Rule of Civil Procedure 9(b), which, he claims, allows him to allege knowledge "generally." Dkt. 25 (Resp.) at 28. This rule does not apply, since it concerns only claims of "fraud or mistake," but even if it did, Smith did not allege Dr. Browning's knowledge <u>at all</u>, generally or otherwise. This is a fatal flaw.[12]

In any event, Smith does not address the case law precluding reliance on temporal proximity where the process leading to termination began prior to the protected activity. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."); *Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493–94 (5th Cir. 2011) (finding no causation where the "initial termination decision occurred before [plaintiff's] protected activity"). The Court should dismiss his Title VII retaliation claim on these alternative grounds.

### H. Smith does not overcome Dr. Eighmy and Dr. Browning's entitlement to qualified immunity in their individual capacities.

It is well-settled that, when a government official, sued in her individual capacity, asserts qualified immunity, "the burden shifts to the plaintiff to demonstrate the inapplicability of [this] defense."[13] *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015). "To overcome qualified

---

[12] *See Smith v. Kendall,* No. 21-CV-1154, 2023 WL 4552763, at *8 (W.D. Tex. July 14, 2023) (subsequent history omitted) ("Without factual allegations that permit a reasonable inference that Defendant knew of [plaintiff's] protected activity, she has not made enough factual allegations concerning the causal link between her protected activity and her termination.")

[13] Smith impermissibly attempts to throw the burden back to Movants. *See* Dkt. 19 (Resp.) at 31. He also complains that Movants "have not filed an answer asserting the defense," but the Fifth Circuit has rejected this stale argument multiple times. *See Carswell v. Camp*, 54 F.4th 307, 313 (5th Cir. 2022) (holding the district court erred by deferring the qualified immunity determination until after defendants filed an answer); *Ristow v. Hansen*, 719 F. App'x 359, 363 n.12 (5th Cir. 2018) (rejecting the argument that defendants "should not be allowed to raise a qualified immunity defense in their motion to dismiss, but instead must wait to raise that defense until they file their answer," because "qualified immunity questions should be resolved 'at the earliest possible stage in litigation.'") (cleaned up).

immunity, a plaintiff must show two things: (1) that the allegations make out a constitutional [or statutory] violation, and (2) that the violation of rights was clearly established at the time of the defendant's conduct." *Johnson v. Halstead*, 916 F.3d 410, 416 (5th Cir. 2019) (quoting *Carroll*, 800 F.3d at 169). Smith plainly fails to satisfy his obligation; thus, Drs. Eighmy and Browning enjoy qualified immunity from all of Smith's claims.

First, as noted above and in Movants' Motion, Smith fails to state any claims for relief under the basic *Iqbal/Twombly* standard; thus, he cannot surpass even the first hurdle in the qualified immunity analysis. But even if he could, he utterly fails to identify any "clearly established" violation of rights by Dr. Eighmy or Dr. Browning.

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (cleaned up). In other words, the focus of the second prong is not whether some right (to medical leave, free speech, etc.) exists in general, but "whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). This analysis "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (cleaned up). As the Supreme Court has illustrated:

> The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established.

*Al-Kidd*, 563 U.S at 742.

Yet "general propositions" are all Smith offers. With respect to his due process claims, he contends that "[r]elying on unconstitutionally vague charges to support termination of a tenured employee has been clearly established law since 1986." Dkt. 25 (Resp.) at 31. He asserts that the right "to be free of First Amendment Retaliation . . . . has been clearly established since 1968." *Id.*

15

And so on with his FMLA, Rehabilitation Act, and Title VII claims. *See id.* These banal generalizations are plainly insufficient under *Al-Kidd*, *Mullenix*, and the other qualified immunity jurisprudence, which require a plaintiff to identify specific case law or other authority that would have put the defendant on notice that his or her particular conduct was unlawful given the facts and circumstances of the case.[14] *See, e.g.*, *Bryant*, 781 F.3d at 771 ("Bryant has not cited to a single judicial opinion holding that employees on FMLA leave have a right to be free from phone calls. Thus, Littleton is entitled to qualified immunity on Bryant's remaining interference claim."). As this is Smith's burden and he fails to carry it, the Court should recognize Dr. Eighmy and Dr. Browning's qualified immunity from all of Smith's claims without further analysis.

### III.  CONCLUSION & PRAYER

Because Smith fails to refute Movants' jurisdictional arguments, does not explain how his factual allegations state a claim against any defendant, and abdicates his obligation to overcome the Individual Defendants' entitlement to qualified immunity, the Court should dismiss his Fourth Amended Complaint in full. The Court should also decline his cursory request for leave to amend his complaint a fifth time, as he has not demonstrated that further amendments would be anything other than futile.[15]

---

[14] Moreover, were Smith's framing correct, no defendant would have successfully invoked qualified immunity from any of these claims in decades. This is plainly not the case. *E.g.*, *Johnson*, 916 F.3d at 423 (recognizing qualified immunity in First Amendment retaliation case); *Bryant v. Tex. Dep't of Aging & Disability Serv*s., 781 F.3d 764, 771 (5th Cir. 2015) (recognizing qualified immunity in FMLA case).

[15] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir.1986)) ("[I]f the protections afforded public officials are not to ring hollow, plaintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold.").

Respectfully submitted,

*/s/ Dylan A. Farmer*
Shannon B. Schmoyer
State Bar No. 17780250
sschmoyer@sr-llp.com
Dylan A. Farmer
State Bar No. 24093417
dfarmer@sr-llp.com
SCHMOYER REINHARD LLP
8000 IH 10 West, Suite 1600
San Antonio, Texas 78230
Phone: (210) 447-8033
Fax: (210) 447-8036

**ATTORNEYS FOR MOVANTS UT SYSTEM, UTSA, DR. TAYLOR EIGHMY, AND DR. JOANN BROWNING**

**CERTIFICATE OF SERVICE**

I certify that I served a true and correct copy of the foregoing document on Plaintiff's counsel of record via the Court's CM/ECF system on February 16, 2024:

Jeremy Gilbreath
The Gilbreath Law Firm, PLLC
13000 Old Blanco Rd., Suite 304
San Antonio, Texas 78216
Telephone: (210) 479-3195
Fax: (210) 479-8452
jeremy@gilbreathfirm.com

*/s/ Dylan A. Farmer*
Dylan A. Farmer

17