THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRUCE SMITH, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| THE UNIVERSITY OF TEXAS AT SAN | § | NO. 5:23-cv-538-OLG |
| ANTONIO, THE UNIVERSITY OF TEXAS | § | |
| SYSTEM, JOANN BROWNING, THOMAS | § | |
| TAYLOR EIGHMY, AND THE UNIVERSITY | § | |
| OF TEXAS SYSTEM BOARD OF REGENTS | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANT THE UNIVERSITY OF TEXAS SYSTEM BOARD OF REGENTS' MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT

The University of Texas System Board of Regents ("Board") moves to dismiss Plaintiff Bruce Smith's Fourth Amended Complaint under Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### I.   INTRODUCTION & SUMMARY OF ARGUMENT

Dr. Smith was formerly a professor of engineering at UTSA. On November 18, 2021, the Board terminated him for chronic and well-documented underperformance on the recommendation of his dean, UTSA's provost, a faculty tribunal of Smith's peers, and UTSA's president. Despite his receipt of robust pre-termination process and the irrefutably legitimate reasons for his termination, Smith filed this suit on April 26, 2023, asserting various constitutional and statutory claims against UTSA, UT System, former UTSA Dean of Engineering JoAnn Browning, and UTSA President Dr. Taylor Eighmy.[1] *See* Dkt. 1. Over the next eight months, Smith amended his Complaint four times to finesse his allegations and causes of action. But not until his Fourth Amended Complaint, filed on December 15, 2023, did Smith add the Board as a party—even though the factual allegations underpinning his claims against the Board have been in his pleadings

---

[1] These Defendants previously filed their own motion to dismiss Smith's claims against them. *See* Dkt. 19. With the Board's motion, all Defendants have moved to dismiss Smith's claims.

1

since this lawsuit's inception. *See* Dkt. 18. Because the Court lacks subject matter jurisdiction over Smith's claims against the Board as an entity, Smith failed to sue the Board until after the statute of limitations expired, and Smith fails to state a plausible claim for relief against the Board in any event, the Court should dismiss his claims against the Board in full.

## II.   STANDARDS OF REVIEW

Rule 12(b)(1) dismissal is appropriate "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). The plaintiff bears the burden of proving subject-matter jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court may find a lack of subject matter jurisdiction from "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Santos v. United States*, 565 F. Supp. 3d 871, 873 (W.D. Tex. 2021) (citation omitted).

Rule 12(b)(6) dismissal is appropriate when the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face." *Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 200 (5th Cir. 2020) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III.   SUMMARY OF SMITH'S ALLEGATIONS

1.      Smith was a tenured engineering professor at UTSA from Fall 2001 until November 18, 2021. *See* Dkt. 18 ¶¶ 14, 56. He displayed poor performance as far back as 2013, when he was first placed on a Performance Improvement Plan ("PIP"). *See id.* ¶¶ 37, 44-46.

2.      In "Spring and Summer of 2017," Dr. Browning, who was then Dean of UTSA's College of Engineering, discussed with UTSA's former provost the possibility of terminating Smith for continued poor performance. *Id.* ¶ 22. She formally recommended Smith's termination in November 2017. *See id.* ¶¶ 16 & 24; Dkt. 19-1 (Espy Memo) at ECF 3-4 (confirming date).

3.      Eight months later, in July 2018, Smith wrote a newspaper op-ed echoing opinions from a "report" he had previously provided to Dr. Browning. *See* Dkt. 18 ¶ 23.

4.      In April 2019, Smith met with Dr. Eighmy, UTSA's president, to discuss his proposed termination. *Id.* ¶ 24. Dr. Eighmy decided "to end the termination proceedings" and instead to place Smith on another PIP to improve his ongoing performance problems. *Id.* ¶ 25.

5.      In June 2019, Dr. Browning issued Smith the new PIP. Dkt. 18 ¶ 26. Smith worried that lingering injuries from a bicycle accident would prevent him from satisfying the PIP's teaching-specific components, so he obtained intermittent FMLA leave that "came with restrictions" on his ability to lecture. *Id.* ¶¶ 29-30. Dr. Browning accommodated those restrictions by "modif[ying] the PIP to focus on research, instead of teaching." *Id.* ¶ 30.

6.      At the end of the 2019-2020 academic year, Dr. Browning concluded that Smith had failed to satisfy the new PIP's metrics and recommended that UTSA's then-Provost, Kimberly Espy, pursue his termination. *Id.* ¶¶ 37-38; Dkt. 19-1 (Espy Memo) at ECF 4-6.

7.      Regents' Rule 31008 governs the termination of tenured faculty at UT System component institutions, like UTSA. *See* Dkt. 18 ¶¶ 53 & 112; *see also* Dkt. 19-2 (Rule 31008) at Part 2 § 1(a)(2). Once Rule 31008 is invoked, it prescribes several steps, including:

   a.   Initial Review of Allegation: The institution's provost reviews the allegations, solicits a response from the faculty member, and decides whether to recommend further termination proceedings to the institution's president. *See id.* Part 2 § 2.

   b.   Presidential Review & Response: The president gives the faculty member a chance to further respond and decides whether to continue termination proceedings. *See id.* Part 2 § 3. If the process continues, the president notifies the faculty member of the charges and convenes a faculty tribunal to hear them. *See id.* Part 2 § 3-4.

   c.   Faculty Tribunal: The institution has the burden to prove "good cause" for termination. The faculty member—who may be represented by counsel—may testify and present evidence to the tribunal and may also examine any other witnesses who testify. *See id.* After the hearing, the tribunal issues written findings and may recommend (or not) that the president continue termination proceedings. *See id.* Part 2 § 4.

   d.   Presidential Recommendation: The president may dismiss the proceedings, impose a sanction short of termination, or recommend termination to the Board. *See id.* § 4.7. If the latter, the faculty member may submit a "written response" to the Board. *Id.*

e. <u>Board of Regents Determination</u>: Finally, the Board of Regents reviews the president's recommendation; any response from the faculty member; and the faculty tribunal's findings, recommendations, and transcript of proceedings. *See id.* at Part 2 § 5. The Board then approves, rejects, or amends the findings and recommendation. *See id.*

8.      Pursuant to Rule 31008, Provost Espy met with Smith and considered his responses to Dr. Browning's recommendation. *See* Dkt. 19-1 (Espy Memo) at ECF 5-9. In July 2020, Dr. Espy wrote a memorandum to Dr. Eighmy (with a copy to Smith) recommending he continue the Rule 31008 process. *See id* at 1-9.; Dkt. 18 ¶ 38. Notably, the memo and its 300 pages of exhibits recounted Smith's underperformance "over a seven-year period" from 2013 through 2020—not just his failure to satisfy the latest PIP. *See* Dkt. 19-1 (Espy Memo) at ECF 2-6; Dkt. 18 ¶¶ 45, 52.

9.      In November 2020, President Eighmy met with Smith to discuss Dr. Espy's memorandum and Smith also responded to it in writing in December 2020. Dkt. 19-3 (Jan. 22, 2021 Eighmy Ltr.) at ECF 2. Ultimately, Dr. Eighmy decided to convene a faculty tribunal to hear the recommendation for Smith's termination on the grounds that the evidence:

> establish[es] your inability or unwillingness to meet the requirements of your Fall 2019 and Spring 2020 Performance Improvement Plans (PIPs) or otherwise demonstrate a commitment to improve your performance as a UTSA tenured faculty member. ***The facts supporting these charges are described in detail in the July 21, 2020, memorandum and exhibits submitted to me by Dr. Espy, of which you were provided a copy.***

Dkt. 18 ¶ 39 (emphasis added).

10.     In March 2021, Smith inquired about the charges against him. *See id.* ¶¶ 40-41. Counsel for UT System responded and quoted the paragraph in Dr. Eighmy's January 2021 letter describing Smith's failure to "otherwise" improve his performance, as "described in detail in the July 21, 2020 memorandum and exhibits submitted . . . by Dr. Espy." *Id.* ¶ 42.

11.     The faculty tribunal heard arguments in April 2021 and voted 3-2 to recommend Smith's termination. *Id.* ¶¶ 44-48. In July 2021, Dr. Eighmy reviewed the hearing transcript, exhibits, and tribunal's findings and recommended Smith's termination to the Board. *Id.* ¶¶ 51-55.

12.     Smith wrote a letter of protest to the Board, but the Board voted to terminate him on November 18, 2021. *Id.* ¶¶ 55-56.

## IV.   RULE 12(b)(1) PARTIAL MOTION TO DISMISS

The Board moves for partial dismissal of Smith's claims under Rule 12(b)(1) on two grounds. First, Smith's state law claims, federal constitutional claims, and FMLA claim against the Board as a corporate entity are completely barred by sovereign immunity.[2] Second, to the extent Smith lodges any of these claims against the individual Board members in their official capacities[3], sovereign immunity precludes his state law claims and limits him to prospective, non-monetary relief on his federal law claims.

### A.   *Smith's state law claims, federal constitutional claims, and FMLA claim against the Board as a corporate entity and the individual Regents in their official capacities are barred by the Eleventh Amendment.*

The Eleventh Amendment to the United States Constitution bars claims against states, state entities, and state officials in federal court absent "unequivocal" Congressional abrogation or state waiver of sovereign immunity. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). This bar applies to the Board, which is considered a "state agency" for purposes of Eleventh Amendment protection. *See Harrell*, 841 F. App'x at 668 n.4 (collecting cases supporting the proposition that "the Board is a state agency entitled to assert state sovereign immunity as an 'arm of the state.'"); *see also* Dkt. 19 at 6-7 (collecting cases confirming no waiver or abrogation for Smith's state constitutional claims, TCHRA claim, federal constitutional claims, or FMLA claim).

---

[2] The Board does not seek Rule 12(b)(1) dismissal on Smith's Rehabilitation Act or Title VII claims—but does seek dismissal of those claims under Rule 12(b)(6).

[3] This second argument is conditioned on the Court finding that Smith intended to sue—or actually did sue—any individual Board members, which the Board does not concede. Smith does not list any individual Board members as defendants. Instead, he names only "the Board of Regents of the University of Texas System," even though he acknowledges that the Board is composed of "individuals and citizens of the State of Texas." Dkt. 18 ¶ 7. The Fifth Circuit has previously held that a Plaintiff who only named the Board of Regents and not any of the Board's individual members failed to sue the members. *See Doe v. Harrell*, 841 F. App'x 663, 669 n.6 (5th Cir. 2021) ("Doe tries to avoid state agency immunity by asserting that his claims against the Board should be treated as claims against the Board's individual members . . . . Doe did not sue any individual Board members using either their official titles or their names; he merely sued the Board itself."). This Court should likewise find that Smith sues only the Board as a corporate entity and dismiss any putative claims against its individual members for failure to name them as defendants.

The bar also applies to Smith's putative claims against any individual Regents in their official capacities. *See McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011) ("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself.").

### B. The Young doctrine does not apply to the Board as a corporate entity and potentially permits only claims for prospective, non-monetary relief against individual Regents.

Absent waiver or abrogation, a plaintiff has only a single narrow path around the Eleventh Amendment: the *Ex parte Young* exception, which permits a claimant to bring (1) federal causes of action (2) against individual state officers in their official capacities (3) for prospective, non-monetary relief. *E.g.*, *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). As evident from its elements, the *Young* exception does not apply to state entities like the Board. *See Moore v. La. Bd. of Elem. & Secondary Educ.*, 743 F.3d 959, 964 (5th Cir. 2014) (citation omitted) ("The *Young* exception has no application in suits against the States and their agencies, which are barred regardless of the relief sought"). In other words, *Young* provides Smith no recourse against the Board as a corporate entity.

As for Smith's potential claims against the individual Regents in their official capacities, *Young* does not apply to Smith's state law causes of action. *See Corn v. Miss. Dep't of Pub. Safety*, 954 F.3d 268, 275 (5th Cir. 2020) ("[S]tate officials cannot be sued for violations of state law in federal court, even under the *Ex Parte Young* exception.").[4] For his federal claims, it allows him

---

[4] Smith does not cite *Young* in connection with his state law claims; rather, he contends that Defendants' alleged actions were "ultra vires"—the language used to invoke a *Young*-like exception to sovereign immunity in Texas state court. *See, e.g.*, Dkt. 18 ¶¶ 71, 100, 138. The "ultra vires" exception has no applicability in federal court and provides no basis for the Court to exercise jurisdiction over Smith's state law claims. *See United Steel v. Anderson*, No. SA-17-CV-1242-XR, 2018 WL 3017366, at *9 n.7 (W.D. Tex. June 15, 2018) ("Even if Plaintiffs were asserting ultra vires official-capacity claims as permitted by Texas law, the fact that a State permits certain claims in its own courts does not establish a waiver of immunity to suit in federal court."); *Beleno v. Lakey*, 306 F. Supp. 3d 930, 942 (W.D. Tex. 2009) (same); *cf. Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) ("A State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued.").

to pursue only prospective, non-monetary relief. *See Reeves*, 954 F.3d 729, 736. So, should the Court first find that Smith has sued any individual Regents in their official capacities, it should still confirm that it has no jurisdiction over any claims for retrospective or monetary relief.

*** 

For these reasons, the Court should find that (1) Smith's state law claims, federal constitutional claims, and FMLA claim against the Board as a corporate entity are barred by sovereign immunity; (2) Smith's putative state law claims against individual Regents in their official capacities are barred by sovereign immunity; and (3) Smith's putative federal constitutional and FMLA claims against the individual Regents in their official capacities are barred to the extent Smith seeks recourse other than prospective, non-monetary relief.

## V.    12(b)(6) MOTION TO DISMISS

Even if Smith's claims against the Board[5] survive the jurisdictional challenge, they fail because (1) he sued the Board after the statute of limitations expired, and (2) he fails to plausibly allege essential elements of each cause of action.

### A.  *All of Smith's claims against the Board are barred by the statute of limitations.*

Other than his Title VII claim, which is subject to a separate administrative exhaustion scheme (see below), all of Smith's claims are governed by a two-year statute of limitations. *See Jackson v. Houston Indep. Sch. Dist.*, 994 S.W.2d 396 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (Texas Constitution); *Ford v. Anderson Cnty., Tex.*, 90 F.4th 736, 762 (5th Cir. 2024) (United States Constitution[6]); 29 U.S.C. § 2617(c)(1) (FMLA); *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (Rehabilitation Act); TEX. LAB. CODE § 21.256 (TCHRA). The last action of

---

[5] For purposes of these Rule 12(b)(6) arguments, it is irrelevant whether Smith intended to sue the Board as a corporate entity or its individual members in their official capacities. Thus, "Board" as used in this section refers to both the entity and its constituent members (assuming the Court finds Smith has brought claims against the separate members).

[6] Technically, *Ford* addressed the limitations period for claims brought under 42 U.S.C. § 1983, but there is no other way to bring federal constitutional claims except via Section 1983. *See Montemayor v. Miller*, No. SA-11-CV-24-XR, 2011 WL 3902764, at *2 n.15.

which Smith complains in this suit is the Board's November 18, 2021 vote to terminate him, meaning the limitations period expired on Monday, November 20, 2023. *See* Dkt. 18 ¶ 56. But Smith did not add the Board as a defendant until December 15, 2023, when he filed his Fourth Amended Complaint. *Compare* Dkt. 16 (Third Am. Compl.), *with* Dkt. 18 (Fourth Am. Compl.). Thus, his claims against the Board are too late by nearly a month, and the Court should dismiss them on limitations grounds.

Smith's Title VII claim is also barred. Smith filed a charge of discrimination with the EEOC and Texas Workforce Commission and acknowledges that "the EEOC issued a right to sue letter digitally signed on August 21, 2023." Dkt. 18 ¶ 12. It is well-settled that "[a] plaintiff alleging employment discrimination must file a civil action no more than ninety days after she receives statutory notice of her right to sue from the EEOC." *Smith v. Alcorn State Univ.*, 451 F. App'x 464, 465 (5th Cir.2011) (per curiam) (quoting *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir.2009) (internal quotation marks omitted)). Thus, Smith was obliged to bring his Title VII claim against the Board no later than (coincidentally) November 20, 2023. Since "[t]he ninety-day window is strictly construed and is a precondition to filing suit in district court" (*id.*), and Smith did not sue the Board until December 15, 2023, this claim is barred by limitations, too.

*** 

The Board anticipates Smith will respond that his claims "relate back" to his Original Complaint, which he filed on April 26, 2023. *See* Dkt. 1. Smith will be wrong.

The Fifth Circuit has articulated the framework for the relation-back doctrine as it applies to newly added defendants:

> When a plaintiff adds a defendant after the limitations period has run, Rule 15(c) allows the plaintiff to relate the claims filed against the new defendant back to the date of the original filing. *See* Fed. R. Civ. P. 15(c). To do so, the plaintiff must show both that the added defendant received adequate notice of the original lawsuit and that the defendant knew that, but for a mistake concerning the identity of the defendant, the action would have originally been brought against the defendant. . . . Rule 15(c) is meant to "correct a *mistake* concerning the identity of the party."

*Winzer v. Kaufman Cnty*, 916 F.3d 464, 470 (5th Cir. 2019) (quoting *Jacobsen v. Osborne*, 133 F.3d 315, 319-22 (5th Cir. 1998)). The definition of "mistake" in this context is narrow and "usually involves a 'misnomer'" or accidental naming of a defendant in an official rather than individual capacity or vice versa. *See Halprin v. Fed. Deposit Ins. Corp.*, No. 5:13-CV-1042-RP, 2016 WL 4511109, at *4 (W.D. Tex. Aug. 26, 2016). Importantly, "a conscious choice to sue one party and not another does not constitute a mistake and is not a basis for relation back." *Id.* (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 379 (5th Cir. 2010)).

Here, there was no mistake in Smith's choice not to sue the Board until his Fourth Amended Complaint. He alleged the Board's responsibility for his termination in his Original Complaint and every amended complaint. *E.g.*, Dkt. 1 ¶ 42. In his Response to the Motion to Dismiss filed by the Board's co-defendants, he emphatically (if incorrectly) argued that the Board's vote to terminate him was the trigger for legal liability. *See* Dkt. 28 (MTD Reply) at 10. In short, given his own allegations and apparent theory of liability, he knew (or should have known) to add the Board as a party. He did not, and the statute of limitations precludes him from doing so now.

The Northern District of Texas reached the same conclusion in *Carmona v. City of Dallas*, a case in which the plaintiff initially sued the City of Dallas and then sought to add 14 individual police officers as defendants after the limitations period expired. *Carmona*, No. 3:19-CV-469-L, 2020 WL 2812859, at *1-2 (N.D. Tex. May 28, 2020). Notably, the plaintiff "specifically list[ed] each of the Fourteen Officers by the initial of their first names, their last names, and badge numbers" in his original petition, yet he did not name them as defendants. *Id.* at 3. Denying the plaintiff's motion to add them after the limitations period had expired, the court explained:

> Here, there is no mistake of identity or misnomer, as Plaintiff knew the identity of each of the Fourteen Officers he now seeks to add but failed to include them as parties to this action initially. Mr. Carmona elected not to sue any of the Fourteen Officers or any individual defendant when he filed Plaintiff's Original Petition on January 7, 2019, even though he knew each potential defendant's identity, for certain, almost two weeks before the Texas statute of limitations expired on January 20, 2019.

*Id.* This reasoning applies squarely to this case. Smith identified the Board's role in his termination in his Original Complaint and his (erroneous) theory of liability puts the Board front and center. Nevertheless, he made a conscious choice not to sue them until his Fourth Amended Complaint, well after the limitations period expired. The Court should refuse to entertain any "relation back" arguments he might make, given these circumstances.

### B. Smith fails to allege essential elements of all of his claims against the Board.

Besides the bar imposed by the statute of limitations, Smith also fails to state any claims for relief against the Board.[7] Put simply, his factual allegations are woefully insufficient.

#### 1. Smith fails to allege a deprivation of procedural due process (Counts 1 & 2).

To state a procedural due process claim, Smith must plausibly allege that the Board terminated him without providing him minimum Constitutional process.[8] *See Banik v. Tamez*, No. 7:16-CV-00462, 2017 WL 2505653, at *17 (S.D. Tex. June 9, 2017) (citing *Levitt v. Univ. of Tex. at El Paso*, 759 F.2d 1224, 1225 (5th Cir. 1985)). For a tenured professor like Smith, Constitutional process requires merely that he be:

(1) advised of the cause for his termination in sufficient detail so as to enable him to show any error that may exist;

(2) advised of the names and the nature of the testimony of the witnesses against him;

(3) given an opportunity to be heard in his own defense within a reasonable time; and

(4) given a hearing before a tribunal that possesses some academic expertise and an apparent impartiality toward the charges.

---

[7] Smith does not attribute any direct action to the Board other than terminating him in November 2021, and he does not allege any malfeasance in the Board's vote. *See generally* Dkt. 18. Instead, he implies that the Board is derivatively liable for improprieties that supposedly plagued the pre-Board portions of the Rule 31008 process. *See id.* But Smith fails to plausibly allege any improprieties, so there is nothing for which the Board could be derivatively liable.

[8] "Constitutional" is the key word: Due process does not require compliance with state law or institutional policy. *E.g.*, *Gerhart v. Hayes*, 201 F.3d 646, 650 (5th Cir. 2000)*; Brown v. Tex. A&M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986) (citing *Franceski v. Plaquemines Parish Sch, Br.*, 772 F.2d 197, 199-200 (5th Cir. 1985)). Thus, the Court should ignore Smith's gripes about alleged non-compliance with the "Comprehensive Periodic Evaluation" process set by the Texas Education Code and the Regents' *Rules and Regulations* (*see* Dkt 18 ¶¶ 15-22, 71, 112).

*Levitt*, 759 F.2d at 1228. Despite this formal recitation, the due process standard in the non-criminal context is not onerous; it "does not require a trial-type hearing" and boils down to "notice and an opportunity to be heard." *Robison v. Wichita Falls & N. Tex. Cmty. Action Corp.*, 507 F.2d 245, 252 (5th Cir. 1975); *Franceski*, 772 F.2d at 199 (citing *Bishop v. Wood*, 426 U.S. 341, 345 (1976)). Smith has judicially admitted that his procedural due process claim "centers around the lack of sufficient notice." Dkt. 25 (MTD Resp.). at ECF 9-10 (admitting, with respect to the "opportunity to be heard" element, that Smith "was entitled to receive and . . . received one pre-termination hearing 'before a tribunal that possesses some expertise.'").[9]

As explained at length in the other Defendants' Motion to Dismiss (Dkt. 19 at 9-12) and Reply (Dkt. 28 at 5-7), Smith undoubtedly received more than minimum Constitutional process. His primary complaint is that Dr. Eighmy's January 2021 letter convening the faculty tribunal failed to warn him that the tribunal hearing would concern his history of chronic underperformance documented in Provost Espy's July 2020 memorandum, rather than just his failure to satisfy the 2019-2020 PIPs. *See* Dkt. 18 ¶¶ 63-69, 75-82. But Eighmy's letter explicitly contextualizes the latest Rule 31008 process as a product of Smith's previous performance failures:

> The Fall 2019 and Spring 2020 PIPs were issued as a result of a prior Rule 31008 process initiated to terminate your tenured appointment. In April 2019, I decided not to recommend termination but instead directed that you be placed on a PIP. In my April 24, 2019, letter, I explained that it was my expectation that you would resolve the deficiencies in your performance through achieving the milestones laid out in a PIP Plan, which would be designed to provide you the opportunity and structure to successfully meet the performance expectations of your faculty responsibilities. I also explained that failure to improve your performance and cure the deficiencies will lead to further disciplinary action up to and including termination.

Dkt. 19-3 (Eighmy Ltr.) at ECF 2-3. Moreover, Dr. Eighmy charged Smith with failing to satisfy the 2019-2020 PIPs and to "otherwise demonstrate a commitment to improve your

---

[9] Smith also (1) discussed the factual basis for the recommendation for his termination with Provost Espy; (2) responded to Espy's memorandum recommending his termination to Dr. Eighmy both orally and in writing; (3) and, after examining and cross-examining witnesses at the faculty tribunal, responded again in writing directly to the Board. *See* Part III, *supra*. He certainly had ample opportunity to be heard.

performance as a UTSA tenured faculty member"—a charge plainly requiring a comparison of Smith's current performance with his past performance. *Id.* at 2. Dr. Eighmy then confirmed that "[t]he facts supporting these charges are described in detail in the July 21, 2020, memorandum and exhibits submitted to me by Dr. Espy, of which you were provided a copy." *Id.* And Provost Espy's memorandum painstakingly detailed Smith's performance deficiencies back to at least 2013. *See* Dkt. 19-1 (Espy Memo) at ECF 2-3, 9 (discussing Smith's 2013 PIP, poor student performance, hostility towards his former department chair, etc.).

Clearly, Smith had (1) more-than-ample notice that the incidents relayed in Dr. Espy's memorandum would be addressed at the tribunal hearing and (2) several opportunities to respond to them. Put simply, he has not plausibly alleged a procedural due process violation.[10]

> 2. *Smith fails to allege "arbitrary and capricious" action that "shocks the conscience" to the degree necessary to state a substantive due process claim (Count 3).*

To state a substantive due process claim, Smith must plausibly allege that the Board terminated him in "arbitrary and capricious" fashion. *See Lewis v. Univ. of Tex. Med. Br. at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) ("Substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner . . . .").

The "arbitrary and capricious" standard is "demanding." *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992). Indeed, it "may be even more demanding in the context of higher education personnel decisions because of repeated refusals by [courts] to use the Fourteenth Amendment as an excuse to regulate the internal affairs of public universities." *Jones v. La. Bd. of Sup'rs*, 809

---

[10] Smith also complains that "some" tribunal members "offer[ed] their own testimony and information which they had obtained by googling topics during the hearing." Dkt. 18 ¶¶ 47, 70, 83. He does not allege what the tribunal "testified" to or "googled" or how he was deprived of notice or an opportunity to be heard. *See id*. Absent such details, these conclusory allegations are insufficient to state a claim. *Cf. Banik*, 2017 WL 2505653, at *18 (rejecting argument that a tribunal member made "biased" rulings because "Plaintiff fails to explain what [she] was ruling on," precluding the Court from finding a due process violation). In short, Smith does not plausibly allege a procedural due process violation on these grounds, either. Additionally, Smith implicitly abandoned this theory of liability by failing to defend it in response to the other Defendants' Motion to Dismiss. *See* Dkt. 28 at 6 n.3.

F.3d 231, 240 (5th Cir. 2015) (cleaned up). It is met only where there is no "rational connection between the known facts and the decision" and the act involves an "abuse of power" that "shocks the conscience." *Gonzales v. City of San Antonio*, No. 5:17-CV-998, 2018 WL 2976988, at *4 (W.D. Tex. June 12, 2018) (quoting *Lewis*, 665 F.3d at 630). The "decision to terminate a tenured faculty member is not arbitrary or capricious if reasonable minds could disagree on the propriety of the termination." *Banik*, 2017 WL 2505653, at *20.

Smith plainly fails to state a claim under this standard. He banally asserts that "no reasonable person" could have concluded that he failed to satisfy his PIP because he "produced two PIP reports with 72 manuscript pages of documented progress . . . ." Dkt. 18 ¶ 86. But the Board's decision was the product of deliberate consideration after the multi-level 31008 process, during which Smith had numerous opportunities to defend his performance record (including an evidentiary hearing) and exercised his ability to address the Board directly. His claim that "no reasonable person" could have concluded he failed to satisfy his PIP is misguided, as he acknowledges that at least three administrators, three of five tribunal members, and the Board found exactly that. Rather than alleging a conscience-shocking "abuse of power," Smith simply disagrees with the Board's professional judgment, which is not enough to state a substantive due process claim. *See Spuler*, 958 F.2d at 107 (citation omitted) ("The judicial inquiry is properly only whether the decision was made, wisely or not, by a specific exercise of professional judgment and on the basis of factors clearly bearing on the appropriateness of conferring academic tenure.").[11] The Court should dismiss this claim out of hand.

   3.   *Smith fails to allege essential elements of his "failure to train" claim (Count 6).*

Smith cobbles together his due process allegations (*i.e.*, "googling" and "charges or evidence not cited in the charging letter") with the additional allegation that "UTSA and UT

---

[11] Smith also reprises his allegation about "some" tribunal members "conducting independent research using google during the hearing," which is far too vague to demonstrate "arbitrary and capricious" or "conscience-shocking" activity. *See* Dkt. 18 ¶ 87.

System" failed to train "the tribunal" and their "representatives" not to engage in those actions. *See* Dkt. 18 ¶¶ 111-15 (not mentioning the Board). But Smith's failure to allege a cognizable due process violation is fatal to this claim, because "a failure to train action requires an underlying constitutional violation." *Graham v. Hodge*, 619 F. App'x 394, 395 (5th Cir. 2015); *accord Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013). This alone dooms his claim.

Additionally, Smith fails to allege the additional "failure to train" elements: (1) inadequate training procedures; (2) a causal connection between the inadequacy and the harm; and (3) the "deliberate indifference" of relevant policymakers. *See Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021); *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017). Plaintiffs "typically satisfy the first element by alleging facts related to the locality's actual training program," and a conclusory allegation, like a claim that inadequate training "is apparent from the facts of the case," is insufficient. *Speck v. Wiginton*, 606 F. App'x 733, 736 (5th Cir. 2015) (collecting cases); *Quinn*, 863 F.3d at 365 ("Defects in a particular training program must be specifically alleged."). As to the third element, "a plaintiff normally must allege a pattern of similar constitutional violations by untrained employees." *Hutcheson*, 994 F.3d 477, 482.

Smith's allegations are quintessentially conclusory. He alleges no details about the relevant training protocols (he simply declares that they caused his termination) and identifies no pattern of constitutional violations. *See* Dkt. 18 ¶¶ 113-15. Instead, he posits a *res ipsa loquitur*-type theory that, "had the Tribunal been adequately trained, there is no way they would have been googling information or entertaining . . . charges or evidence not cited in the charging letter." Dkt. 18 ¶ 113. These unadorned declarations are simply inadequate as a matter of law, and the Court should dismiss this cause of action for failure to state a claim against the Board, too.

   4.   <u>Smith fails to plausibly allege that his July 2018 op-ed caused his November 2021 termination and cannot state a free speech retaliation claim.</u>

Smith fails to plausibly allege that the op-ed he wrote in July 2018 motivated his termination by the Board more than three years later. *See Anderson v. Valdez*, 913 F.3d 472, 476-

77 (5th Cir. 2019) (confirming that causation is an essential element of a free speech retaliation claim). He asserts that the op-ed piece "appears to be an impermissible factor in Plaintiff's discharge" because it "was brought up" at his April 2019 meeting with Dr. Eighmy. *See* Dkt. 18 ¶¶ 23-24, 92, 103. He then asserts that "[t]he Regents were aware of [his] speech." *Id.* ¶¶ 96, 107. These threadbare allegations are insufficient to state a claim.

For one, he admits that Dr. Browning contemplated recommending his termination as far back as Spring 2017 and placed him on administrative leave for poor performance in November 2017—more than eight months before he wrote the op-ed. Dkt. 18 ¶¶ 15-16, 22; *see also* Dkt. 19-1 (Espy Memo) at ECF 2. Since the machinery for terminating Smith's employment was already in motion at the time Smith wrote his op-ed, he cannot show the requisite causal connection. *See Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493–94 (5th Cir. 2011) (finding no causation where the "initial termination decision occurred before [plaintiff's] protected activity").

Second, while Smith alleges that Dr. Eighmy "brought up the op-ed piece" at their April 2019 meeting to discuss Dr. Browning's recommendation, he alleges no indicia of retaliatory animus. *Compare* Dkt. 18 ¶¶ 24, 92, 103, *with Wetherbe v. Smith*, 593 F. App'x 323, 328 (5th Cir. 2014) (affirming dismissal where plaintiff did not allege details showing that the decisionmaker "was aware of this speech ***or that it motivated his actions***"). Indeed, Smith acknowledges that Dr. Eighmy "end[ed] the termination proceedings" after this meeting and instead placed him on an additional PIP—an action Smith states was "not a disciplinary action" and was "meant to assist Plaintiff in meeting the performance expectations of his position." *See* Dkt. 18 ¶ 25; Dkt. 25 (Resp.) at ECF 24. In other words, the only plausible inference from Smith's allegations is that his op-ed led to <u>more</u> favorable treatment, not less.

Finally, Smith's unadorned assertion that the Board was "aware of [his] speech" is insufficient because he alleges no other details showing that his op-ed actually motivated the Board's termination decision. *See Wetherbe*, 593 F. App'x at 328 (allegations tending to show

both awareness and motivation required). Moreover, the three years between his op-ed and his termination is far too long to imply causation through temporal proximity. *See Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 742 (5th Cir. 2017), *as revised* (Mar. 13, 2017) (citation omitted) ("That three year period is not the 'very close in time' connection we require 'to establish causation by timing alone.'"); *see also Besser v. Tex. Gen. Land Office*, 834 F. App'x 876, 885 (5th Cir. 2020) ("[T]wo and one-half months between the protected activity and the adverse employment decision, standing alone, is not within the 'very close' proximity that is necessary to establish causation.").

In short, Smith has not plausibly alleged the causation element of his free speech retaliation claims under any factual theory.

5. *Smith fails to plausibly allege violations of the FMLA (Count 7) and Rehabilitation Act (Count 8).*

Smith asserts overlapping FMLA and Rehabilitation Act claims with two sub-theories. First, he contends, Defendants "interfered" with his FMLA entitlement and failed to accommodate his physical restrictions by (a) assigning him a PIP requiring more than a "half-day, 50% workload" and (b) failing to reinstate him to his position after his leave ended. *See* Dkt. 18 ¶¶ 118-121, 131. Second, he contends, Dr. Browning retaliated against him by "proposing his termination" two months after his FMLA leave ended and he "return[ed] to work with no restrictions," and Dr. Eighmy "held [Smith's] exercise of his FMLA rights against him" by "concluding that despite this gratuity, [Smith] still failed to meet the PIP's requirements." *Id.* ¶¶ 122-23, 128. These allegations are insufficient to state a claim under either statute, on either theory.

Smith's FMLA interference and parallel Rehabilitation Act theories—that he was given more than a half-day's work and not appropriately accommodated—lack factual specificity and are defeated by his other allegations. For one, Smith does not allege that the Board had anything to do with the assignment of his PIP, the FMLA process, or any request for accommodations he

might have made. *See generally* Dkt. 18 ¶¶ 116-132 (briefly mentioning the Board only in his prefatory disclaimer that he only seeks relief allowed by *Ex parte Young*). Thus, he alleges no basis for Board liability for these actions.

To the extent he seeks to hold the Board derivatively liable for other Defendants' supposed actions, he still fails to allege unlawful conduct. For one, he admits that his "physical limitations" involved only his ability to "stand and lecture"—not his ability to research—and further admits that Dr. Browning "modified the PIP to focus on research" to account for these restrictions. *See* Dkt. 18 ¶¶ 28, 30. He does not allege specific facts from which the Court can infer that the modified PIP metrics required more work than his FMLA and physical restrictions allowed; rather, according to Smith, the tribunal concluded that he failed to satisfy the PIP "<u>despite</u> being allowed intermittent FMLA," not <u>because</u> of it. *Id.* ¶ 54. Moreover, as noted above, Smith's FMLA leave ended and he returned to work "without restrictions" in March 2020. *See id.* ¶¶ 128-29. His theory that he was somehow physically unable to satisfy the PIP does not account for his return to full-time work prior to the end of the PIP period. And his admission that he returned to work two months before Dr. Browning proposed his termination refutes his alternative theory that he "was not[] restored to the position he held when the leave began." *Id.* ¶ 119. Since Smith fails to plausibly allege FMLA interference, failure to accommodate, or disability discrimination, the Court should dismiss these claims.

Similarly, the Court should reject Smith's retaliation theories because he does not plausibly allege a causal link between his FMLA leave or medical restrictions and the Board's decision to terminate him. Again, he does not allege that the Board acted with an improper motive; instead, he implies the Board is derivatively responsible for retaliation by Drs. Browning and Eighmy. *See generally id.* ¶¶ 116-132. This argument is meritless, too.

First, Smith's appeal to the three-month gap between the end of his leave and Dr. Browning's termination recommendation (*id.* ¶ 118) is futile, because even "[t]wo and one-half

months . . . is not within the 'very close' proximity that is necessary to establish causation." *Besser*, 834 F. App'x at 885. But even if these events were sufficiently proximate, the Fifth Circuit has rejected appeals to temporal proximity where the plaintiff's termination stemmed from performance deficiencies beginning prior to his FMLA leave/request for accommodations. *See, e.g.*, *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (finding no causation where the plaintiff "filed for FMLA leave after three weeks of his one-month probationary program"); *Ray v. United Parcel Serv.*, 587 F. App'x 182, 196 (5th Cir. 2014) (finding no causation where UPS "initiated performance-improvement measures prior to Ray's FMLA leave"). Smith admits, as he must, that he had been charged with persistent performance deficiencies well before he sought FMLA or medical accommodations; indeed, he cites the issuance of the original 2019 PIP as the reason he sought FMLA in the first place. *See* Dkt. 18 ¶ 30. Thus, any "temporal proximity" between his FMLA or medical restrictions and Dr. Browning's recommendation is legally inconsequential.[12]

Smith's additional allegation about Dr. Eighmy—that he concluded Smith had failed to meet the PIP despite receiving FMLA leave—is irrelevant, as it is not facially retaliatory, and Smith alleges no details from which the Court can infer that Eighmy acted with unlawful animus. *See* Dkt. 11 ¶ 123. Moreover, Smith alleges no facts demonstrating that retaliatory animus tainted any other aspect of the multi-level Rule 31008 process, including the Board's final determination in November 2021—which rested on the overwhelming evidence of Smith's performance deficiencies documented in Dr. Browning's recommendation, Provost Espy's exhaustive memorandum, the tribunal's record and written findings, and Dr. Eighmy's summation. Smith simply has not plausibly alleged that retaliatory animus played any role in his termination, so the Court should reject his retaliation theories, too.

---

[12] As noted above, Smith also alleges that Dr. Browning modified his PIP to account for his physical limitations—further undermining his claims of retaliatory animus. *See* Dkt. 18 ¶ 30.

6. <u>*Smith failed to exhaust his Title VII & TCHRA administrative remedies against the Board and also fails to plausibly allege a claim for relief.*</u>

Smith's Title VII and TCHRA retaliation claims[13] rest solely on his allegation that he "reported his belief that Dean Browning's [unspecified] decisions were impacted by race in the Spring 2020 semester and was terminated a very short time later in May of 2020." Dkt. 18 ¶ 137.

As an initial matter, the Board did not terminate Smith in May 2020; it terminated him in November 2021, more than 18 months (at minimum) after his "report." There is no legally sufficient temporal proximity between those events. *See Besser*, 834 F. App'x at 885. Moreover, Smith provides no details as to the basis of his "belief," what "decisions" Dr. Browning supposedly made, or how they were "impacted" by race. *See id.* Thus, his assertions are insufficient to show that he engaged in "protected activity". *See Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (affirming Rule 12(b)(6) dismissal where the plaintiff "did not allege any facts, direct or circumstantial, that would suggest [the defendant's] actions were based on . . . race or national origin or that [the defendant] treated similarly situated employees of other races or national origin more favorably"). Nor does he allege any facts plausibly suggesting that the Board was aware of his "report" or that it motivated the Board's decision—particularly given his other allegations suggesting that the Board's action was simply the product of years' worth of efforts to hold him accountable for his demonstrably poor performance. *See Wetherbe*, 593 F. App'x at 328 (allegations of both awareness and motivation required); *Davis*, 448 F. App'x at 493–94 (no causation where process leading to termination commenced prior to protected activity).

Thus, the Court should dismiss these claims for lack of supporting factual allegations.

---

[13] In his "Nature of Action" paragraph summarizing his claims, Smith cites "Titles VI and VII of the Civil Rights Act of 1964." Dkt. 18 ¶ 10. But he never mentions Title VI again, so the Court should treat it as a typographical error. *Compare id.*, *with Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.,* 40 F.3d 698, 705 (5th Cir. 1994) (treating two "passing" references to Title VI with no corresponding factual allegations as a non-claim). Alternatively, the Court could dismiss the claim because Smith fails to allege an essential element: That the Board (1) "received federal financial assistance the primary objective of which is to provide employment" and (2) "applied [it] to discriminatory programs or activities." *Id.* (citing 42 U.S.C. § 2000d–3).

## VI.   C<small>ONCLUSION</small>

Because the Court lacks jurisdiction over the Board as a corporate entity, Smith's claims against the Board (and its members) are barred by limitations, and Smith fails to allege sufficient facts to state any claims for relief, the Court should dismiss his claims against the Board in full. And, since Smith has already had five chances to perfect his claims, the Court should deny him further leave to amend.

Respectfully submitted,

*/s/ Dylan A. Farmer*

Shannon B. Schmoyer
State Bar No. 17780250
sschmoyer@sr-llp.com
Dylan A. Farmer
State Bar No. 24093417
dfarmer@sr-llp.com
SCHMOYER REINHARD LLP
8000 IH 10 West, Suite 1600
San Antonio, Texas 78230
Phone: (210) 447-8033
Fax: (210) 447-8036

**ATTORNEYS FOR DEFENDANT
UT SYSTEM BOARD OF REGENTS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that I served a true and correct copy of the foregoing document on Plaintiff's counsel of record via the Court's CM/ECF system on March 15, 2024:

Jeremy Gilbreath
The Gilbreath Law Firm, PLLC
13000 Old Blanco Rd., Suite 304
San Antonio, Texas 78216
Telephone: (210) 479-3195
Fax: (210) 479-8452
jeremy@gilbreathfirm.com


*/s/ Dylan A. Farmer*
Dylan A. Farmer