**IN THE U.S. DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **BRUCE SMITH,** | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CAUSE NO. 5:23-cv-538** |
| | § | |
| **THE UNIVERSITY OF TEXAS AT SAN** | § | |
| **ANTONIO, THE UNIVERSITY OF** | § | |
| **TEXAS SYSTEM, JOANN BROWNING,** | § | **JURY DEMANDED** |
| **THOMAS TAYLOR EIGHMY, AND** | § | |
| **THE UNIVERSITY OF TEXAS** | § | |
| **SYSTEM BOARD OF REGENTS** | § | |
| | § | |
| *Defendants*. | § | |

---

### PLAINTIFF'S RESPONSE TO DEFENDANT'S 12(B)(1) AND 12(B)(6) MOTION TO DISMISS

---

NOW COMES Plaintiff, Bruce Smith, by and through undersigned counsel, and files this Plaintiff's Response to Defendant the University of Texas System Board of Regents' Motion to Dismiss Plaintiff's Fourth Amended Complaint, and respectfully prays that Defendants' Motion be denied, or alternatively that Plaintiff be given leave to amend if the Court finds it necessary.

## I.    INTRODUCTION

On April 26, 2023, Plaintiff, Bruce Smith ("Plaintiff" or "Smith") filed suit against the University of Texas at San Antonio ("UTSA"), the University of Texas System ("UT System"), Joann Browning ("Browning"), and Thomas Taylor Eighmy ("Eighmy"). *See* (Dkt. 1). Plaintiff later amended to add the members of the Board of Regents of the UT System ("Regents"). *See* (Dkt. 18 at ¶ 7). The Regents move to dismiss all of Plaintiff's claims under Rules 12(b)(1)&(6).

## II.    STANDARD OF REVIEW

1

A Rule 12(b)(1) motion to dismiss permits dismissal of a claim, over which the court does not have jurisdiction; however, dismissal is not warranted if the court's jurisdiction is well-pled. *See Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001) ("a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."). A 12(b)(6) motion to dismiss should be denied when plaintiff pled "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U. S. 544, 555–56 (2007). Plaintiff's well-pled facts must be taken as true and viewed in the light most favorable to plaintiff. *See Walker v. Beaumont ISD*, 938 F.3d 724, 735 (5th Cir. 2019) ("All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor"). Further, a complaint may proceed even if "a recovery is very remote and unlikely." *See* (**Id**) (quoting *Twombly*, 550 U.S. at 556).

### III.   ARGUMENTS AND AUTHORITIES

A.   *Defendants' Rule 12(b)(1) Motion to Dismiss*

**1.   Plaintiff's federal claims against the Regents are not barred by sovereign immunity.**

The Regents assert that the state's sovereign immunity bars Plaintiff from suing them in federal court on his federal constitutional and FMLA claims. *See* (Dkt. 29 at 5–7.). A plaintiff may defeat a claim of sovereign immunity by showing that the challenged claims fall within the *Ex Parte Young* exception (the "*Young* Exception"). *See Moore v. La. Bd. of Elem. & Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Because Plaintiff's federal law claims fall within the *Young* Exception and because Plaintiff sued the proper *Young* defendants, in their official capacity, Defendants' motion seeking dismissal on this basis should be denied.

An *Ex parte Young* plaintiff must sue the proper individual state officials in their official capacity. *See Aguilar v. Tex. Dep't of Crim. Justice, Inst. Div.*, 160 F.3d 1052, 1054 (5th Cir. 1998). Since this is a facial challenge of jurisdiction, Plaintiff's complaint alone controls whether he sued

individual state officers in their official capacity. *See Walch v. Adjutant Gen. Dep't*, 533 F.3d 289, 293 (5th Cir. 2008). Whether those individuals are proper *Young* defendants is determined by a reference to relevant state law. *See Okpalobi v. Foster*, 244 F.3d 405, 416–17 (5th Cir. 2001). The proper *Young* defendants are those state officials, who "have some connection with the enforcement of the act" or who are "specially charged with the duty to enforce" the challenged policy. *See U.S. v. Abbott*, 85 F.4th 328, 334 (5th Cir. 2023). This is established if the state officer had "the particular duty to enforce the [state policy or law] in question and a demonstrated willingness to exercise that duty." *See Okpalobi*, 244 F.3d at 416–17. Equally, it may be shown by a "general duty imposed [on the state officer]" that "includes the right *and the power* to enforce the statutes of the State, including, of course, the *act* in question, if it were constitutional." *See Young*, 209 U.S. at 161, 158; *Okpalobi*, 244 F.3d at 416–17.

The Regents are the proper *Ex parte Young* defendants. They are "specially charged with the duty to enforce," i.e., have "the particular duty to enforce the [state laws] in question." *See Okpalobi*, 244 F.3d at 416–17. Under state law, only the Regents may grant tenure, and only the Regents may terminate a tenured professor in the UT System. *See* Tex. Educ. Code § 51.942(b) ("Only an institution of higher education's governing board . . . may grant tenure."); Tex. Educ. Code § 51.942(c-1)(2); The Univ. of Tex. System Rules and Regulations of the Bd. of Regents ("Regents Rules") Rule 31008. Moreover, the Regent's termination of Plaintiff is "a demonstrated willingness to exercise that duty." *See Abbott*, 85 F.4th at 336 ("identify[ing] such an action" shows a demonstrated willingness to exercise their statutory duty); *Ex parte Young*, 209 U.S. at 161. Therefore, the Regents are proper *Young* defendants.

Further, Plaintiff's complaint clearly sued individual state officers in their official capacity. Plaintiff's complaint identifies and describes "Defendants, the Board" as a party to the suit. *See* (Dkt. 18 at ¶ 7). The choice to refer to them ("Defendants") in the plural was intentional.

3

Accordingly, they, "Defendants, the Board," are described as "individuals [plural] and citizens [plural], who *are* [plural] appointed by the governor." *See* (Dkt. 18 at ¶ 7) (emphasis added). Still, to ensure absolute clarity, Plaintiff went beyond that. In each of the relevant counts, Plaintiff's complaint specifies exactly *who* the relief is sought against ("the individual members of the Board") and *in what capacity* ("sued in their official capacity"), and the exact relief sought against that party ("remedies that do not offend the Eleventh Amendment or the State's Sovereign Immunity, including prospective relief within the bounds of *Ex parte Young* . . ., such as reinstatement of Plaintiff to his former position"). *See* (Dkt. 18 at ¶¶ 72, 84, 101, 116, 125, 133).

For example, in introducing Plaintiff's first federal law claim, Plaintiff referred to the "Board" as "Defendants, the individual members of the Board of Regents of the University of Texas System," *and* expressly indicated that they were "sued in their official capacity," *and* explicitly limited his claim against those defendants "to remedies that do not offend the Eleventh Amendment . . . , including prospective relief within the bounds of *Ex parte Young* . . . , such as reinstatement of Plaintiff to his former position." *See* (Dkt. 18 at ¶ 72). Moreover, in each count brought under federal law, Plaintiff meticulously included language substantively identical to paragraph 72—language that makes clear that only prospective *Young* relief is sought against "Defendants [plural], the individual members [plural] of the Board of Regents of the University of Texas System," in "their [plural] official capacity." *See* (**Id.** at ¶¶ 72, 84, 101, 116, 125, 133). Over and over again, claim after claim, Plaintiff specifically and properly pled his claims against the individual persons, in their official capacity. *See* (**Id.**) ("Defendants [plural], the individual members [plural] of the Board of Regents . . . sued in their official capacity."). Plaintiff did not assert these claims against the Board as a state agency[1] or seek relief other than prospective, non-

---

[1] The Regents refer to a "claim against the Board as a corporate entity." *See* (Dkt. 29 at 7). Not knowing the intended meaning of "corporate entity," we use the term "state agency" and assume the Regents mean the same— the Board as single body that would qualify as an "agency" or "arm of the state" for § 1983 purposes.

4

monetary relief against the individual Regents in their official capacities.[2] *See* (**Id.**) Yet, the

Regents ask the Court to dismiss these supposed claims. *See* (Dkt. 29 at 7):

> For these reasons, the Court should find that (1) Smith's state law claims, federal
> constitutional claims, and FMLA claim against the Board as a corporate entity are
> barred by sovereign immunity; . . . and (3) Smith's putative federal constitutional and
> FMLA claims against the individual Regents in their official capacities are barred to
> the extent Smith seeks recourse other than prospective, non-monetary relief.

*See* (**Id**). The Court should *not* find that these claims are barred because Plaintiff did not make

these claims. A court simply cannot dismiss a claim(s) that has not been made; a facial attack, i.e.,

one asserting that the allegations in the complaint fail to establish subject matter jurisdiction, must

be decided by reference to Plaintiff's complaint alone. *See Walch*, 533 F.3d at 293 (5th Cir. 2008).[3]

Plaintiff's complaint did not make "claim[s] against the Board as a [state agency]," and Plaintiff

did not seek monetary relief (or any relief except "prospective, non-monetary relief") against the

Regents. *See* (Dkt. 18 at ¶¶ 72, 84, 101, 116, 125, 133); *but see* (Dkt. 29 at 7). Because a court

cannot dismiss claims that Plaintiff did not make—but must rely on Plaintiff's complaint alone—

the Court should deny the Regents' requested relief—items (1) & (3), above.

Next, the Regents argue that by failing to identify each individual member of the Board by

name, Plaintiff failed to sue them. *See* (Dkt. 29 at 5 & fn. 3). The liberal pleading standards of the

Federal Rules do not *require* each individual member of the Board to be identified by name. *See*

FED. R. CIV. P. 17(d) ("A public officer who . . . is sued in an official capacity may be designated

by official title *rather than by name*, but the court may order that the officer's name be added.").

By identifying them as "Defendants" the "individual members of the Board . . . , in their official

---

[2] It should also be noted that the relief sought by Plaintiff against the Regents—an injunctive reinstatement—is
proper *Young* relief. *See Nelson v. Univ. of Tex.*, 535 F.3d 318, 322 (5th Cir. 2008) ("Thus, we [have] clearly
held that a claim for reinstatement was cognizable under *Ex parte Young*.")..

[3] *See also Kerns v. U.S.*, 585 F.3d 187, 192 (4th Cir. 2009) (same); *Apex Digital, Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440, 443 (7th Cit. 2009) (same); *McElmurray*, 501 F.3d 1244, 1251 (11th Cit. 2007) (same)

capacity," and serving the Board's agent for service,[4] each individual Regent was given notice of the suit. Alternatively, Plaintiff requests leave to amend to name the individual officers.[5] *See* (**Id.**).

### 2. Plaintiff's State Law Claims

Defendants also challenge Plaintiff's "State Law Claims" as barred by the Eleventh Amendment. *See* (Dkt. 29 at 6, fn. 4). This was addressed by Plaintiff in his prior response, which is hereby incorporated as Plaintiff's response here. *See* (Dkt. 25 at 6–7).

### B. *Defendants' Rule 12(b)(6) Motion to Dismiss*

### 1. **Plaintiff's claims against the Regents are not barred by the statute of limitations.**

The Regents argue that "[o]ther than his Title VII claim, . . . all of Smith's claims are governed by a two year statute of limitations" and that the "last action of which Smith complains in this suit is the Board's November 18, 2021 vote to terminate him, meaning the limitations period expired on Monday, November 20, 2023." *See* (Dkt. 29 at 7). Because Plaintiff did not add the Regents "as a defendant until December 15, 2023, when he filed his Fourth Amended Complaint," the Regents argue Plaintiff's "claims against the Board are too late by nearly a month, and the Court should dismiss them on limitations grounds." *See* (**Id.**).

### a. *Plaintiff's claims against the Regents relate back to his timely filed complaint.*

Under the Federal Rules, a plaintiff is protected when he mistakenly names a party and then, after the statute of limitations has passed, discovers the identity of the proper party. *See* FED. R. CIV. P. 15(c)(1)(C); *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 549–50 (2010):

> . . . We disagree, however, with respondent's position that any time a plaintiff is aware of the existence of two parties and chooses to sue the wrong one, the proper

---

[4] *See Adams v. School Board*, 53 F.R.D. 267, 268–69 (M.D.PA. 1971).

[5] Moreover, the Regents' standard would be impractical. The specific individuals that comprise the Board are wont to change. *See* TEX. EDU. CODE § 65.12. It would make litigation more costly and time consuming by requiring redundant service of the suit and frequent amendments to lawsuits. *See* FED. R. CIV. P. 1 (the Rules "should be construed [and] administered . . . to secure the just, speedy, and inexpensive determination of every action"). When regents' staggered terms come up, *see* (**id**), lawsuits across the state would have to be amended.

defendant could reasonably believe that the plaintiff made no mistake. The reasonableness of the mistake is not itself at issue.

*See* (**Id**). The nature of Plaintiff's mistake is largely irrelevant. *See* (**Id**). Rather, Rule 15 requires Plaintiff to show that the claims arise from the "same conduct, transaction, or occurrence" as those brought in the original complaint, *see* FED. R. CIV. P. 15(c)(1)(B), and that the new party received such notice as to not be prejudiced, *see* (**Id.**) at (c)(1)(C). Those are the sole considerations. Plaintiff's knowledge and/or carelessness are no longer grounds for denying relation back. That is, the knowledge requirement does not depend on the plaintiff's knowledge, but rather the defendant's, *see Krupski*, 560 U.S. at 548, and a plaintiff's carelessness is not grounds to deny relation back, *see Joseph*, 638 F.3d at 560. Moreover, relation back is generally allowed in cases of mistakes of law and/or capacity. *See Kirk v. Cronvich*, 629 F.2d 404 (5th Cir. 1980) (limitations do not insulate from suit an individual who did not initially receive service or other notice in the correct capacity, so long as no prejudice resulted); *Sanders-Burns v. City of Plano*, 594 F.3d 366, 375–77 (5th. Cir. 2010) (reversing and holding that "the error of naming Cabezuela in his official capacity was an actual mistake" and reviewing cases regarding mistakes of capacity and law); *Ayers v. Bd. of Regents Univ. of Tex. Sys.*, 2011 U.S. Dist. LEXIS 159651, at *6-7 (W.D.Tex. Apr. 6, 2011) (allowing leave to amend to add individual members of Board of Regents and then-President of UTSA, Ricardo Romo, a UTSA Provost, and a UTSA dean after the end of the statute of limitations); *cf. Ayers v. Romo*, 2011 U.S. Dist. LEXIS 159647 at *7-8 (W.D.Tx. Oct. 18, 2011):

> For . . . relation back of claims, notice is inferred when there is an identity of interest between the original defendant and the current defendants. Parties have an identity of interest when they are so closely related in their operations that institution of suit against one serves to provide notice of litigation to the other. Notice may be imputed through shared counsel. Here, all of the Defendants, including the Board of Regents before they were dismissed from the suit, are represented by the Attorney General's office. . . . Plaintiff's remaining timely claims against the present Defendants relate back to the original complaint . . . .

*See* (**Id.**) (*citing Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998)).

***Same conduct, transaction, or occurrence.*** Here, Plaintiff's claims, now asserted against the Regents, arise from the "same conduct, transaction, or occurrence" set out in the operative pleadings. *See* FED. R. CIV. P. 15(c)(1)(B). Plaintiff's original pleading, filed on September 22, 2023, included substantially identical factual allegations as Plaintiff's live complaint. *Compare* (Dkt. 1) *with* (Dkt. 18). That original complaint also contained the same claims as Plaintiff's live complaint, except for claims then-pending before the EEOC. Plaintiff's original complaint, however, sued UTSA and the UT System, as opposed to the UT System's Regents. *See* (Dkt. 1 at ¶¶ 4, 74-75, 83-84) (indicating liability was sought against the UT System by virtue of the "decision . . made by the regents."). UTSA and the UT System waived service of summons, and their common counsel agreed to accept service. *See* (Dkt. 4). This all occurred within the time permitted by Rule 4(m) or within its "good cause" exception. The parties also agreed to extend time for Defendants to file their answer or first responsive motion, and Defendants filed an unopposed motion tracking the basic terms of the parties' agreement. *See* (**Id.**). Plaintiff's First Amended Complaint, filed on September 22, 2023, after the EEOC issued Plaintiff a right to sue letter, includes virtually identical factual allegations and claims as Plaintiff's live complaint and merely added the EEOC claims. *Compare* (Dkt. 7) *with* (Dkt. 18).

While the Regents focus on the "definition of 'mistake' in this context," *see* (Dkt. 29 at 9), the current Rule 15 does not concern itself with the nature of the mistake, but rather whether the addition of the party would prejudice that party's ability to defend on the merits. *See* FED. R. CIV. P. 15(c)(1)(C); *cf. Schiavone v. Fortune,* 477 U.S. 21, 38 (1986) (expressly abrogated by the 1991 amendments to Rule 15) (Stevens Dissenting)  ("The principal purpose of rule 15(c) is to enable a plaintiff to correct a pleading error after the statute of limitations has run if the correction will not prejudice his adversary in any way."). Regardless, as noted above, mistakes of law (and capacity) are commonly accepted as appropriate grounds for allowing relation back when the other party

received adequate notice and will not be prejudiced. *See supra* at 7–8 (listing cases).[6] Therefore, the only relevant issues are whether (1) the Regents received notice of the suit—such that they will not be prejudiced in defending on the merits (the "notice requirement"), and (2) knew or should have known the suit would have been brought against them but for a mistake in identifying the proper party (the "knowledge requirement"). *See* FED. R. CIV. P. 15(c)(1)(C)(i),(ii).

     ***Imputed notice and knowledge.*** The notice and knowledge requirements may, however, be imputed by an "identity of interest." *See Sanders-Burns,* 594 F.3d at 379. That was essentially the holding of several cases cited above. It is also the law of the Fifth Circuit. *See Jacobsen*, 133 F.3d at 320 ("our court will infer notice if there is an identity of interest between the original defendant and the defendant sought to be added or substituted."). In *Woods*, for example, the Seventh Circuit determined that "the legal blunder of [Plaintiffs'] counsel—his 'mistake'—that caused his continued (and fruitless) pursuit of state agencies rather than individual state actors as defendants" would not bar the addition of those parties because "the law ascribes to *everyone*, including the later-named individuals, the knowledge of the law that prescribes the potential Section 1983 liability of those individuals and not of the State itself." *See Woods*, 996 F.2d at 887 (rejecting reliance on the type of mistake, i.e., "the tautological existence of a presumptively known mistake of the type specified in [the since repealed] Rule 15(c)(3)(B)."). Indeed, on November 10, 2023, shortly before to the expiration of the limitations period, the Regents' attorneys, arguing on behalf of the UT System and UTSA, made just this point; that "the law prescribes the potential Section 1983 liability" against "those individual state actors . . . and not of the State itself." *See* (Dkt. 14 at 8); (Dkt. 1 at ¶74).[7] Here, like those cases cited above,

---

[6] *See also Woods v. Ind. Univ.-Purdue Univ.*, 996 F.2d 880, 887 (7th Cir. 1993).
[7] This was also apparent on the face of the original complaint. *See, e.g.,* (Dkt. 1 at ¶ 74) (alleging "Defendants are liable for Plaintiff's termination because the decision to terminate Plaintiff was (1) a decision (or official policy) made by the regents, i.e., the UT System's final policymaking authority and (2) the moving force behind the deprivations of Plaintiff's constitutional rights. The Regents were aware of Plaintiff's speech").

counsel's mistake was the "pursuit of state agencies rather than individual state actors as defendants." *See Woods*, 996 F.2d at 887. Since state agencies are immune from suit, there was no strategic advantage to sue the state agency (the UT System) as opposed to the state actors (the UT System's Regents). *See Sanders-Burns,* 594 F.3d at 379. Thus, cases ruling that no mistake could be shown because plaintiff made a strategic choice have no application here. *See* (Dkt. 29 at 9).

Moreover, notice can be inferred because the UT System and its Regents "are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *See Jacobsen*, 133 F.3d at 320. Further, "notice may be imputed to the new party through shared counsel." *See* (**Id**.). In *Jacobsen*, a city was sued, but not its officer. *See* (**Id.**). Here, the UT System was sued, but not its officers, the Regents. In *Jacobson*, the "original complaint was served on the City Attorney," who would later represent the "newly-named officers" too. *See* (**Id.**). Here, too, the suit was served on the attorneys for the UT System; the same attorneys that represent the Regents now. It is fair to infer that the UT System's attorneys would have represented its Regents had they not been mistakenly omitted from the original suit. *See Jacobsen*, 133 F.3d at 320. More importantly, Defendants' shared counsel "answered the complaint on behalf of [the UT System] and, to do so, presumably investigated the allegations, thus giving the newly named officers . . . *notice* of the action. Consequently, those officers '*knew or should have known*' that but for [Plaintiff's mistake] . . ., the action would have been brought against them." *See* (**Id.**) (italics ours) (finding both the notice and knowledge requirements of Rule 15(c)(3) had therefore been met).[8]

---

[8] Shared counsel allows for the addition of a party, after the expiration of limitations, even when that counsel is a city attorney or the state's attorney general's office, even though a city attorney and the attorney general's office frequently represent persons and entities within the city or state that have no commonality of interest. *See, e.g., Ayers*, 2011 U.S. Dist. LEXIS 159647 at *8 (the UT System Board of Regents, as a state agency, and the individual Regents sought to be added shared common counsel, the Attorney General's office); *Jacobsen*, 133 F.3d at 320 (finding "identity of interest" between City and its officers because both were represented by city attorney). Here, because private counsel was employed, for *this specific matter*, the inference is even stronger

In fact, their common counsel evidenced "notice" and "knowledge" by statements made in their motion to dismiss, filed on November 10, 2023, prior the expiration of the statute of limitations. *See* (Dkt. 14 at 8) ("Smith's reliance on *Ex Parte Young* is misplaced because he does not sue any 'state officers . . . in their official capacities.' Instead, he only invokes *Ex Parte Young* as to 'UT System and UTSA,' which are institutional actors."). Thus, UTSA and the UT System knew that the suit must be brought against state officers, in their official capacities, but had mistakenly been brought against the UT System and UTSA. *See* (**Id.**). UTSA and the UT System also argued that many of the claims could only be brought against Plaintiff's "employer," and that "[o]nly UTSA is conceivably Smith's 'employer' for purposes of these claims." *See* (**Id.**). While the nature of Plaintiff's mistake is not determinative, the overlapping identity of employer highlights the identity of interest between UTSA, the UT System, and the UT System's Regents.

Regardless, because counsel for UTSA and the UT System accepted service of the original suit against them, within the Rule 4(m) period and the same lawyers now represent the Regents, the Regents had notice of the suit and knew or should have known that but for that mistake they would have been sued. *See Sanders-Burns,* 594 F.3d at 379. Previously, Rule 15(c) was construed to require plaintiff to show that the added defendant received notice and knew or should have known of the mistake, *during the limitations period. See Schiavone,* 477 U.S. at 38. The Rule was amended in 1991 because the *Schiavone* Court's construction was widely criticized as overly technical and contrary to the Rules' liberal pleading standards. *See Woods*, 996 F.2d at 885. As shown above, the Regents received notice and knew of the mistake prior to the expiration of the limitations period, meeting even that standard. *See Sanders-Burns,* 594 F.3d at 379.

---

that there is a commonality of interest, notice, and knowledge (between the UT System and its Regents) and thus that relation back is required under Rule 15(c)(3).

In that vein, it should be noted that Rule 15 has evolved over time to do away with gamesmanship. *See Woods*, 996 F.2d at 882 ("In a sharp departure from the old 'sporting theory' of litigation, 'the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and affect the principle that the purpose of pleading is to facilitate a proper decision on the merits'"). The Fifth Circuit acknowledges the same aim of Rule 15(c). *See Sanders-Burns*, 594 F.3d at 379–80 ("We take a 'sensible approach to reading a complaint so that suits may be maintained regardless of technical pleading errors' as is required by Rule 15(c). Again, the purpose of Rule 15(c) is to '"help, not hinder, persons who have a legal right to bring their problems before the courts."'"). Therefore, dismissal would be inappropriate as defeating the principal aims of Rule 15: allowing amendment when doing so would not prejudice the opposing party. *See* (**Id.** at 378). This action has just begun.[9] *See* (**Id.**). It has not prevented the Regents from asserting a defense or filing a Rule 12(b) motion. *See* (**Id.**). And, the Regents cannot and do not assert prejudice or claim *they* lacked notice or knowledge.[10]

  b.  *Plaintiff's Title VII claims are not barred by limitations.*

The Regents also argue that Plaintiff's Title VII claim is barred too, based on the 90-day limitations period applicable to Title VII claims. *See* (Dkt. 29 at 8). This statute of limitations allows for relation back under Rule 15(c), following the same principles as discussed above. Plaintiff incorporates the above here by reference, *supra* 7–12. In fact, those arguments have even more force, here, as the right to sue letter was not issued until August 21, 2023. *See* (Dkt. 7 at ¶11). By that time, UTSA and the UT System was already represented by the Regents' current counsel,

---

[9] Several of the cases cited above that allowed relation back even though the plaintiff sought to add the proper party after discovery and even on the doorstep of trial.

[10] Plaintiff could say much more but does not because the Regents did not challenge the "notice" and "knowledge" requirements and because of restraints on the length of this response. Regardless, whether the Regents received notice and should have known of the mistake are fact issues not suitable to Rule 12(b)(1) motion. *See Walch*, 533 F.3d at 293 (5th Cir. 2008).

who had appeared before this Court to request an extension of time to respond to Plaintiff's complaint. *See* (Dkt. 4). The parties had agreed to that, in part, because Plaintiff had communicated his intent to request a right to sue letter and amend his complaint. Therefore, requiring Defendants to respond to Plaintiff's original complaint, shortly to be amended, would serve no useful purpose. Plaintiff amended on September 22, 2023 to add the EEOC claims, and UTSA and the UT System were served with amended complaint. *See* (Dkt. 7). UTSA, the UT System, and their shared counsel surely had such notice of the suit to avoid prejudice and knew or should have known that the principal/employer (the UT System) had been mistakenly named in place of their agent (the Regents). This is the holding of several Fifth Circuit decisions finding relation back in cases like ours. *See Barkins v. Int'l Inns, Inc.*, 825 F.2d 905, 907 (5th Cir. 1987) ("Since International Inns received notice through counsel *before* the ninety day limitations period expired, *Schiavone* does not apply. Because the prerequisites of Rule 15(c) were satisfied, the district court did not err in permitting Barkins and Kellup to amend their complaint [name the correct corporate defendant]."); *Caldwell v. Martin Marietta Corp.*, 632 F.2d 1184, 1189 (5th Cir. 1980) (holding that plaintiff's "amended Title VII complaint relates back to the date of his original § 1981 complaint."); *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1067-68 (5th Cir. 1981) (holding plaintiff's later-added Title VII claims were timely because they related back to his original complaint); *Marks v. Prattco, Inc.*, 607 F.2d 1153 (5th Cir. 1979).

    c.  <u>Plaintiff's FMLA claims are plausibly subject to a 3-year statute of limitations.</u>

One final note should be made regarding the statute of limitations. Plaintiff has pled facts sufficient to justify the 3-year statute of limitations with respect to his FMLA claims, *see* 29 U.S.C. § 2617(c)(2), under the theory that the PIP as modified by Browning was "a ruse to terminate [Plaintiff's] employment" *See Bass*, 522 F.3d at 1107. Denying FMLA leave as "a ruse to terminate" an employee would require a degree of intentionality that would amount to a "willful

violation" of the Act. Such an allegation, if proven true, would show willfulness, i.e., that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *See Bass*, 522 F.3d at 1103; *Mozingo,* 661 F. App'x at, 830. This is exactly what Plaintiff alleges; that Dr. Browning faced a choice: she could adopt goals that would not invade Plaintiff's FMLA leave rights, but doing so would risk foiling her ultimate objective of terminating Plaintiff, or she could adopt goals that Smith could never meet, serving her ultimate objective, but willfully violating Smith's FMLA rights. Given this choice, Defendants elected to interfere with Plaintiff's FMLA rights. *See* (Dkt. 18 at ¶¶ 26–27, 30–32). That is, Plaintiff has plausibly asserted facts, which if proven, would establish that "his employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *See Bass*, 522 F.3d at 1103. Therefore, dismissal would be improper applying the longer limitations period.

**2. Plaintiff's has properly pled all essential elements of his claims against the Regents.**

The Regents challenge Plaintiff's claims against the Regents on the basis that he has failed to allege a plausible basis for relief. *See Twombly*, 550 U.S. at 555. Before addressing those elements challenged by the Regents, we should note that the Regents are derivative parties.[11] The allegations are almost all against other actors, albeit parties that might not be proper *Ex parte Young* defendants. The Regents are included as a necessary *Young* party for the award of meaningful relief—i.e., an injunctive reinstatement that only the Regents can realize or be compelled to accomplish. A suit against them is tantamount to a suit against the state. *See Culbertson v. Lykos*, 790 F.3d 608, 623 (5th Cir. 2015). Their "liability," which is derivative of the state's, can arise by the "Rubber Stamp" or "Cat's Paw" theories or a "failure to train," among other theories. *See Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 604 & fn.14 (5th Cir. 2001):

---

[11] The Regents' liability is derivative of the state's in an official-capacity suit. *Graham*, 473 U.S. at 165-66.

> [Normally, absent] a showing that the board had actual knowledge of the alleged improper basis of Jones's and Acton's recommendation, the board cannot be liable for the alleged retaliation. . . . [However,] There is an exception to this rule where the final policymaker's decision is merely a 'rubber stamp.' If an employee can demonstrate that the subordinate's evaluation was tainted by an illegal intent and that it had sufficient influence or leverage over the ultimate decisionmaker, the motives of the subordinate become relevant.

*See* (**Id.**); *Rios v. Rossotti*, 252 F.3d 375, 381 (5th Cir. 2001) ("We recognize the potential for abuse inherent in this situation both as to retaliation and discrimination claims. Under such circumstances, this Court has employed a 'rubber stamp' analysis to prevent employers from insulating themselves from the acts of subordinates."); *cf. Sims v. City of Madisonville*, 894 F.3d 632, 639-41 (5th Cir. 2018) (noting a "cat's paw" theory makes *employers* liable for the acts of employees, i.e., supervisors, that influenced or caused the termination).

Under these theories of vicarious liability, the relevant inquiry is whether Plaintiff's supervisor had sufficient leverage or influence of the Board, not whether the Regents knowingly or intentionally violated the rights of Plaintiff. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226-27 (5th Cir. 2000) ("If the [plaintiff] can demonstrate that others had influence or leverage over the official decisionmaker, . . . it is proper to impute their discriminatory [or retaliatory] attitudes to the formal decisionmaker."). In fact, such theories often depend on the Regents (the final decisionmaker/policymaker) *not* knowing. Very often "leverage" or "influence" is shown by an imbalance of information, i.e., that the Board was reliant on information provided by subordinates and did not conduct an independent investigation or fact-finding hearings. *See Laxton v. Gap Inc.*, 333 F.3d 572, 584 (5th Cir. 2003) (considering whether plaintiff's cat's paw theory was defeated by alleged "independent investigations" of the ultimate decisionmaker); *See Mato v. Baldauf*, 267 F.3d 444, 450 (5th Cir. 2001) (same in suit involving Texas A&M).

Simply, a plausible basis for relief is asserted by allegations that the Regents relied on the recommendations of Defendants, Eighmy and Browning, even if they did not know those

recommendations were "tainted by an illegal intent," or have knowledge of any protected activities, or possess an unlawful intent or animus. In such cases, the relevant inquiry is whether Eighmy and Browing "possessed leverage, or exerted influence, over the titular" final policymaker, the Regents. *See Johnson v. Louisiana*, 369 F.3d 826, 832 (5th Cir. 2004). The Supreme Court has set out the cat's paw theory as follows: "if a supervisor performs an act motivated by [an unlawful] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employe is liable." *See Staub v. Proctor Hospital,* 562 U.S. 411, 421 (2011). In doing so, the Court held that a decisionmaker's exercise of judgment is not always a superseding cause of an adverse employment action, using general tort principals of causation in its analysis. *See* (**Id.** at 420); *see also Okon v. Harris Cnty. Hosp. Dist.*, 426 F. App'x 312, 318-19 (5th Cir. 2011) ("Prior to *Staub,* our court had [already] recognized this 'rubber stamp' or 'cat's paw' exception, which allows for imputation of the tainted motives of a subordinate to the policymaker if the policymaker accepted the subordinate's recommendations without evaluation.") (*citing Rios,* 252 F.3d at 381-82; *Beattie,* 254 F.3d at 604 n.14); *Russell v. Univ. of Tex.*, 234 F. App'x 195, 203 (5th Cir. 2007) (recognizing, in a Title VII claim brought through Section 1983, that:

> We have, however, held that "if the employee can demonstrate that [those with discriminatory intent] had influence or leverage over the official decisionmaker . . . it is proper to impute their discriminatory attitudes to the formal decisionmaker." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000). In addition to cases of influence or leverage, the *Russell* court recognized that the ultimate decisionmaker could inherit the taint of discriminatory intent if he "merely acted as a rubber stamp, or the 'cat's paw,' for a subordinate employee's prejudice, even if the manager lacked discriminatory intent." *Id.* at 227.

*See* (**Id.**). The Fifth Circuit too instructs us to turn to "traditional tort principals of whether a particular act was a 'causal link' in the termination" to make this determination. *See Sims*, 894 F.3d at 641. Thus, the Regents retain defenses, on the merits, that may cut off causation. *See Mato*

*v. Baldauf*, 267 F.3d 444, 450 (5th Cir. 2001). But, these are issues of fact to be fleshed out as we go. *See* (**Id.**) ("Of course, the degree to which the executive's decision was based on his or her own independent evaluation is a question of fact."). Presently, the Regents' lack of an unlawful intent or knowledge of Plaintiff's protected activities is irrelevant (as is their actions) because Plaintiff's theory is one of vicarious liability or responsibility for the acts of Plaintiff's supervisors. *See* (**Id.**).

### a.  *Plaintiff has properly pled a deprivation of procedural due process (Counts 1 & 2).*

The Regents argue that Plaintiff had more than enough notice and several opportunities to respond, and thus "he has not plausibly alleged a procedural due process violation." *See* (Dkt. 29 at 11–12). This was challenged by the other Defendants in their motion to dismiss. *See* (Dkt. 19 at 10–12). Since Plaintiff alleges a theory of vicarious liability and as the Regents do not make any new arguments or assert any grounds that would independently shield them from liability, Plaintiff incorporates by reference, here, his prior response addressing these issues. *See* (Dkt. 25 at 7-11). Further, because the Board has a statutory duty to create the process for termination of a tenured professor in the UT System and has exercised that duty, in promulgating Regent's Rule 31008, they are a proper *Young* defendant on a due process claim, if vicariously and derivatively.

### b.  *Plaintiff has alleged elements of substantive due process (Count 3).*

The Regents argue that Plaintiff's pleadings do not plausibly "allege 'arbitrary and capricious' action that 'shocks the conscience' to the degree necessary to state a substantive due process claim." The actions of the tribunal in googling, information and reporting their findings, instead of relying on the testimony and facts of the record "shocks the conscience" and resulted in an "arbitrary and capricious" action. *See* (Dkt. 18 at ¶ 112). Specifically, they determined that Plaintiff had not produced any (or sufficient) materials under the PIP, because they googled how many pages could be expected of a professor. *See* (**Id.** at ¶¶ 86-87). Further, both (a plurality of) the tribunal and Eighmy recommended termination to the Regents based on a charge not in the

charging document. *See* (**Id.** at ¶¶ 75-79). The Regents, however, attempt to focus our attention to the Board's action(s). As noted above, the Regents are a derivative party of the state, which can be held vicariously liable for the "arbitrary and capricious" actions of its officials, for instance, for a failure to train, *see infra at c.* Further, the Regents attempt to rewrite the complaint by claiming the Regents made findings, made a "decision [that] was the product of deliberate consideration," and exercised "professional judgment." *See* (Dkt. 29 at 13) ("the Board *found* exactly that"; "the Board's decision was the product of deliberate consideration"; and "Smith simply disagrees with the Board's professional judgment"). Those allegations are the Regents', found only in their motion to dismiss. *See* (**Id.**). They are not allegations found in Plaintiff's pleadings or its proper attachments. *See Walch*, 533 F.3d at 293 ("Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments"). Plaintiff contests them, but now is not the time for resolution of disputed facts. *See* (**Id.**). The Regents also ignore the cat's paw and rubberstamp theories, by suggesting that each of these elements must be met against their "decision." Their decision may insulate the state (and the individual defendants) from liability if it was truly independent. *See Mato*, 267 F.3d at 450. But these are (disputed) fact issues. *See* (**Id.**).

      *c.*   <ins>*Plaintiff has alleged the elements of a failure to train claim (Count 6).*</ins>

The Regents argue that Plaintiff's pleadings do not plausibly allege a failure to train claim. While often a "pattern of similar conduct" is required to meet the elements of this claim, in some cases, the need for training is so obvious, in light of well-established law, and that a "single incident" is sufficient. *See Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) ("failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights."). A *Loudermill* hearing is well-established law. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). The tribunal and Dr. Eighmy reached issues that were outside of the charging document. *See* (Dkt. 18 at ¶¶ 75-79).

Further, the tribunal went beyond the facts and evidence in the record of the tribunal hearing, preferring to google the answers. It is fair to infer from the facts pled that the tribunal received no training. *See* (**Id.** at ¶¶ 86-87, 112). Further, the specific injury suffered—that a tenured public employee would be terminated based on a charge outside of the charging document and based on information gathered by the tribunal that was outside of the facts and evidence adduced at hearing—is a "highly predictable consequence of a failure to train" and "the moving force behind the constitutional violation." *See Sanders-Burns*, 594 F.3d at 381. A plurality of the tribunal and Eighmy recommended termination to the Regents based on charges outside the charging document. *See* (Dkt. 18 at ¶¶ 75-79). The tribunal resolved the key issue before them by reference to information gathered by google search, instead of the facts and evidence at hearing. *See* (**Id.** at ¶¶ 86-87, 112). Discovery may reveal a "pattern of conduct." However, at this stage, dismissal must be denied "if any set of facts would entitle plaintiff to relief," "even if it appears that a recovery is very remote and unlikely." *See Walker*, 938 F.3d at 735. "Single instance," conscious indifference, may be very remote and unlikely, but it is a theory of recovery that is plausible on its face, in light of the Regents' specially charged duty to ensure due process in this regard. This is the other relevant basis for vicarious liability asserted by Plaintiff's complaint. The Regents, however, suggest this claim is not brought against them. If the Court concludes the same, Plaintiff requests leave to add them. The Regents are authorized by statute to create rules for the termination process for tenured professors in the UT System, and they have exercised that authority. Therefore, they are necessary *Young* defendants and responsible for any failure to train.

> d. *Plaintiff has plausibly alleged a free speech retaliation claim.*

The Regents argue that "Smith fails to plausibly allege that the op-ed he wrote in July 2018 motivated his termination by the Board more than three years later." *See* (Dkt. 29 at 14–15). Because substantively identical claims were made in the other Defendants motion to dismiss,

Plaintiff hereby incorporates his response to that motion. *See* (Dkt. 25 at 26–28). Still, the Regent's motion focuses on an alleged "no showing of causation." To make this argument, they appear to claim that the Regents had no knowledge of his speech and that his "threadbare allegations," including that "[t]he Regents were aware of [his] speech" are "insufficient to state a claim." *See* (Dkt. 29 at 15). Again, this places the focus on the Regents, ignoring the cat's paw or rubber stamp theories, whereby the Regents may "inherit the retaliatory animus" of Plaintiff's supervisors. The Regents further content that Plaintiff failed to plausibly plead causation because the allegation that Dr. Eighmy "brought up the op-ed piece" at their April 2019 meeting, is insufficient and therefore Plaintiff "alleges no indicia of retaliatory animus." *See* (**Id.**). Yet, several cases, many cited *supra* at 15, have found a retaliatory animus from the mentioning of impermissible factors, by a de facto final decisionmaker, in the context of considering an adverse action. *See, e.g., Laxton*, 333 F.3d at 583 (5th Cir. 2003); *Patel*, 298 F.3d at 343 (5th Cir. 2002).

### e. *Plaintiff has plausibly alleged violations of the FMLA (Count 7) and Rehabilitation Act (Count 8).*

The Regents further assert that Plaintiff has failed "to plausibly allege violations of the FMLA (Count 7) and Rehabilitation Act (Count 8)." Because identical or nearly identical claims were made in the other Defendants' motion to dismiss, Plaintiff hereby incorporates his response to that motion. *See* (Dkt. 25 at 11–12, 15-18). The only new challenges are that "Smith does not allege that the Board had anything to do with the assignment of his PIP, the FMLA process, or any request for accommodations he might have made" or that they had an improper motive. Again, these arguments ignore theories of vicarious liability discussed above, such as the "cat's paw" theory, the "rubberstamp" theory, and the "failure to train" claim. Plaintiff need not allege that the Board had anything to do with the actions identified by the Regents or had an improper motive.

f.   _Plaintiff has plausibly alleged violations of Title VII & the TCHRA._

The Regents next contend that Smith has failed to plausibly assert Title VII and TCHRA retaliation claims.[12] Their argument is premised on the idea that there was no temporal proximity between the Board's termination of Plaintiff, in November 2021, and Plaintiff's protected activity (opposing unlawful workplace racial discrimination) alleged by Plaintiff to have occurred "in the Spring 2020 semester" impacting his termination "a very short time later in May of 2020." *See* (**Id.**). This again misconstrues Plaintiff's theory of recovery. Under a cat's paw theory, the "employer," i.e., the state, as represented by the Regents in their official capacity, is made liable for the acts of Plaintiff's supervisors. *See Sims*, 894 F.3d at 639-41. The relevant retaliatory animus is that of the supervisor, not the employer. *See* (**Id.**). Therefore, for temporal proximity purposes, the focus should be on Browning as Plaintiff's supervisor, who recommended termination "a very short time later in May of 2020."[13] Similarly, the argument that Plaintiff did not "allege any facts plausibly suggesting that the Board was aware of his 'report' or that it motivated the Board's decision," *see* (Dkt. 29 at 19), fails to account for Plaintiff's properly pled theories of vicarious liability. Therefore, the Regents are not entitled to dismissal on this basis either.

Respectful submitted,

THE GILBREATH LAW FIRM, PLLC

By:    _/s/ Jeremy Gilbreath_____
Jeremy Gilbreath
State Bar No. 24069783

---

[12] While the Regent's heading to this section of their motion asserts that "Smith filed to exhaust his Title VII & TCHRA administrative remedies," the Regents elaborate no further. Without any arguments explaining the basis for this contention, Plaintiff is deprived of basic Due Process, and thus dismissal on this basis would be improper. The Regents also suggest in a footnote that Smith's inclusion of a Title VI claim is a typographical error, or alternatively, dismissed for failing to allege essential elements. This point too is too thinly briefed to permit notice and meaningful opportunity to respond and thus dismissal on this basis should be denied.

[13] Plaintiff pled that he reported Browning's racial animus during the Spring 2020 semester. All inferences must be made favorably to Plaintiff. As a matter of public record, the Spring 2020 semester ended on May 10, 2020. Therefore, it must be inferred that the protected activity plausibly occurred the same month that Browning recommended termination. This is very close temporal proximity.

13300 Old Blanco Rd., Suite 304
San Antonio, Texas 78216
TEL NO.: (210) 479-3195
FAX NO.: (210) 479-8452
jeremy@gilbreathfirm.com
Attorney for Plaintiff,
Bruce Smith

## **CERTIFICATE OF SERVICE**

I certify that on April 5, 2024 at 11:45 p.m. (CST) a true and correct copy of Plaintiffs'
Response to Defendant the University of Texas System Board of Regents' 12(b)(1) and 12(b)(6)
Motion for Dismiss Plaintiffs' Fourth Amended Complaint was filed and served via the Court's
CM/EFC system and via email on Defendants' attorney of record, Dylan A. Farmer, at
dfarmer@sr-llp.com, and the electronic transmission was reported as complete.

Dylan A. Farmer
State Bar No. 24093417
dfarmer@sr-llp.com
Shannon B. Schmoyer
State Bar No. 17780250
sschmoyer@sr-llp.com
SCHMOYER REINHARD LLP
8000 IH 10 West, Suite 1600
San Antonio, Texas 78230
Phone: (210) 447-8033
Fax: (210) 447-8036

_____/s/ *Jeremy Gilbreath*_____
Jeremy Gilbreath
E-mail: jeremy@gilbreathfirm.com