IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRUCE SMITH, | § | |
| | § | |
| *Plaintiff,* | § | SA-23-CV-00538-OLG |
| | § | |
| vs. | § | |
| | § | |
| UNIVERSITY OF TEXAS AT SAN | § | |
| ANTONIO,  UNIVERSITY OF TEXAS | § | |
| SYSTEM, JOANN BROWNING, | § | |
| THOMAS TAYLOR EIGHMY,  THE | § | |
| UNIVERSITY OF TEXAS SYSTEM | § | |
| BOARD OF REGENTS, | § | |
| | § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendants UTSA, UT System, Dr. Joann Browning, and Dr. Taylor Eighmy's Motion to Dismiss Plaintiff's Fourth Amended Complaint [#19] and Defendant the University of Texas System Board of Regents' Motion to Dismiss Plaintiff's Fourth Amended Complaint [#29].  All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C.  The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, it is recommended that the motions be granted in part and denied in part as set forth below.

## I.  Background

Plaintiff Bruce Smith, a former tenured engineering professor at the University of Texas San Antonio ("UTSA"), brings this action against UTSA, the University of Texas System ("the

UT System"), JoAnn Browning (Dean of the College of Engineering), Thomas Taylor Eighmy (President of UTSA), and the Board Regents of the University of Texas System ("the Regents") regarding his termination and various events leading up to the termination.  According to Smith's live pleading, which is his Fourth Amended Complaint, Smith began his employment with UTSA in 2001 and was terminated in 2021 for the stated reason of poor performance and the failure to meet the requirements of several performance improvement plans ("PIPs").  Smith contends that Defendants violated federal and Texas law in terminating his tenured employment and seeks reinstatement and damages in the form of backpay, front-pay, lost benefits, and compensation for reputational harm and mental anguish.  (Fourth Am. Compl. [#18], at ¶ 140.)

Smith asserts nine causes of action in his Fourth Amended Complaint: (Counts 1, 2, and 3) violations of his right to procedural and substantive due process under the Texas and U.S. Constitutions pursuant to 42 U.S.C. § 1983; (Counts 4 and 5) free-speech retaliation in violation of Article I, Section 8 of the Texas Constitution and First Amendment pursuant to Section 1983; (Count 6) failure to train the special hearing tribunal recommending Smith's dismissal in due process requirements and the governing rules set by the UT System for conducting hearings pursuant to Section 1983; (Count 7) Family Medical Leave Act ("FMLA") interference and retaliation; (Count 8) disability discrimination in violation of Section 504 of the Rehabilitation Act; and (Count 9) retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code.

All five named Defendants have filed motions to dismiss for lack of subject matter jurisdiction and failure to state a claim under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff has filed a response to both motions [#25, #34], to which Defendants have filed their replies [#28, #36].  The motions are ripe for the Court's review.

## II.  Legal Standards

Defendants' motions to dismiss seek dismissal for lack of subject matter jurisdiction, under Rule 12(b)(1) of the Rules of Civil Procedure, and for failure to state a claim upon which relief may be granted, under Rule 12(b)(6) of the Rules of Civil Procedure.

### A.    Dismissal for Lack of Subject Matter Jurisdiction

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case.  Fed. R. Civ. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1998).  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist.  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court may consider any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293 (5th Cir. 2008).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, a court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.  *Ramming*, 281 F.3d at 161.  This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice.  *Id.*  The court's dismissal of a plaintiff's case because the plaintiff lacks subject-matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction. *Id.*

**B.     Dismissal for Failure to State a Claim**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Generally, in deciding a motion to dismiss, a court may not look beyond the four corners of the Plaintiff's pleadings without converting the motion to a motion for summary judgment. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999); Fed. R. Civ. P. 12(d). The Court may, however, consider documents attached to the complaint and those that are central to the claims at issue and incorporated into the complaint by reference.  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted).  However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim.  *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).  In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a

plausible set of facts that support the claim and would justify relief.  *See Twombly*, 550 U.S. at 570.

### III.  Allegations in the Fourth Amended Complaint

The following facts are accepted as true for purposes of ruling on Smith's motion to dismiss.  These facts are found in Smith's Fourth Amended Complaint, as well as the three documents Defendant UTSA, UT System, Dean Browning, and President Eighmy attached to their motion.  (*See* Espy Mem. [#19-1], Regents' Rule 31008 [#19-2], and Eighmy Ltr. [#19-3].)  All three of these documents are central to Smith's claims and referenced repeatedly throughout his pleading.  Additionally, one of the documents—Board of Regents' Rule 31008—is a matter of public record, of which the Court may take judicial notice.  *See Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, at *1 (5th Cir. 2000) (per curiam); *see also Banik v. Tamez*, No. 7:16-CV-00462, 2017 WL 2505653, at *3 (S.D. Tex. June 9, 2017) (considering Board of Regent's Rule 31007 and 31008 as matters of public record readily available online in deciding a motion to dismiss).  Smith has not objected to the Court's consideration of these three documents.  Therefore, they may be considered in evaluating Defendants' motions to dismiss.

Smith accepted an appointment to serve as a tenured professor in UTSA's Electrical and Computer Engineering Department in the Fall of 2001.  (Fourth Am. Compl. [#18], at ¶ 14.)  On August 11, 2017, he was summarily removed from his normal teaching duties and assigned other responsibilities.  (*Id.* at ¶ 15.)  On November 2, 2017, Dean Browning placed Smith on administrative leave based on allegedly higher than normal DFW (drop, fail, or withdrawal) rates and poor student evaluations for the Spring 2017 semester.  (*Id.* at ¶ 16.)  At some unspecified time in 2017, Smith had complained that Dean Browning "held a racial animus."  (*Id.* at ¶ 35.)

During the summer of the following year, Smith authored an op-ed, which was published in the San Antonio News Express on July 18, 2018, and made certain criticisms of the curricular requirements of UTSA's electrical engineering program. (*Id.* at ¶ 23.)  Smith had previously provided Dean Browning with a report containing similar opinions. (*Id.*)  In the op-ed, Smith opined that UTSA's 126 credit-hour curriculum could be reduced to 120 credit-hours and still satisfy all requirements imposed by the State of Texas and other governing bodies. (*Id.*)  Smith reported that other electrical engineering degrees from Texas public universities only require 120 hours and urged the Texas Legislature to mandate the reduction to 120 credit-hours for all electrical engineering programs in the State due to the large cost to Texas taxpayers in requiring the excess credit-hours at Texas public universities. (*Id.*)

Almost one year later, on April 5, 2019, President Eighmy met with Smith to consider whether to act on the termination recommendation by Dean Browning. (*Id.* at ¶ 24.)  In that meeting, President Eighmy brought up the op-ed piece in the context of the potential removal of Smith from his tenured professorship. (*Id.*)  However, shortly thereafter on April 24, 2019, President Eighmy decided to end the termination proceedings and instead place Smith on a PIP to be developed by Provost Zapata and Dean Browning to allow Smith to address the alleged ongoing performance issues. (*Id.* at ¶ 25.)  A letter by President Eighmy from that same date explained to Smith that there was an expectation that he would improve identified deficiencies in performance and warned that a failure to improve performance could lead to further disciplinary action, including termination. (*Id.* at ¶ 39.)

Smith met with Dean Browning on June 1, 2019, and received the PIP. (*Id.* at ¶ 26.)  Smith alleges that the PIP established impossible standards containing excessive and unreasonable expectations. (*Id.*)  Smith also alleges he was concerned that lingering injuries

from a serious bicycle accident might prevent him from satisfying the PIP's teaching component. (*Id.* at ¶ 28.)  Smith's injuries affected his mobility and his ability to stand and lecture for extended periods of time, caused chest tightness and pain, and affected his breathing.  (*Id.* at ¶ 29.)  Smith filed a grievance on July 15, 2019, to address these concerns.  (*Id.* at ¶ 27.)  In the grievance, Smith complained that the PIP's research requirements could not be accomplished in the time provided but was told the complaint was not "grievable."  (*Id.*)

Smith sought and was granted FMLA leave in August 2019 due to his injuries, the month after receiving the PIP, and was restricted to not standing and lecturing for more than one hour a day and to working with only a 50 percent workload.  (*Id.* at ¶¶ 30, 32.)  As a result of these limitations, Dean Browning modified the PIP to focus on research instead of teaching.  (*Id.*)  Smith received the modified PIP on September 1, 2019.  (*Id.*)

Prior to the PIP, Smith had been assigned only teaching responsibilities and had not conducted research in his field as part of his work in approximately five years.  (*Id.* at ¶ 31.)  Nonetheless, the modified PIP required Plaintiff to (1) have three conference papers accepted for regional or national conferences to be presented in Spring 2020; (2) attend four research workshops as determined by the Department Chair prior to Fall 2019; (3) write and submit two research proposals; (4) write and submit two peer reviewed journal papers in Fall 2019; (5) have one peer-reviewed journal paper be accepted by the end of Fall 2019; (6) have two peer-reviewed journal papers be accepted by the end of Spring 2020; and (7) attend workshops and professional development activities through UTSA Teaching & Learning Services.  (*Id.* at ¶ 32.)  UTSA allegedly did not provide any resources, such as graduate assistants, to help Smith successfully complete the PIP.  (*Id.* at ¶ 31.)  Smith again attempted to grieve the excessiveness of the PIP but was again told his complaint was not "grievable."  (*Id.* at ¶ 32.)

At the end of the Fall 2019 semester, Smith submitted a report summarizing his efforts under the PIP, which included a report of 42 manuscript pages of draft or accepted research papers. (*Id.* at ¶ 33.) The papers included a conference paper that had been accepted, a patent disclosure on a research project he was pursuing, and a demonstration on an algorithm for North Star Imaging, Inc. (*Id.*) It was nevertheless determined that Smith had not met the PIP requirements for Fall 2019. (*Id.*)

The Spring 2020 PIP imposed identical requirements to the Fall 2019 PIP. (*Id.* at ¶ 34.) In attempt to meet the PIP requirements, Smith continued to progress on two significant research projects that he had begun in the fall semester, but completing his goals were made even more difficult by the global pandemic. (*Id.*) Smith produced 30 more manuscript pages and outlined efforts to obtain funding, secure a patent, establish partnership with private firms, build relationship with the Air Force, and other steps toward achieving the ultimate research goals established by the PIP. (*Id.*)

Smith's FMLA leave ended in February or March of 2020. (*Id.* at ¶ 122; Espy Mem. [#19-1], at 4 n.5.)[1] On May 1, 2020, Smith submitted a report of his work under the Spring 2020 PIP, which included a draft paper to be submitted for possible publication in a journal. (Fourth Am. Compl. [#18], at ¶ 36.) Additionally, at some unidentified time during the Spring 2020 semester, Smith made a second report to UTSA that Dean Browning was a racist. (*Id.* at ¶ 35.) On May 22, 2020, Dr. Browning recommended Smith's termination for failure to complete PIP requirements. (*Id.* at ¶ 37.)

---

[1] Smith's pleading states that his FMLA leave ended February 2021. (Fourth Am. Compl. [#18], at ¶ 122.) This is likely a typographical error, as this paragraph also misstates the year of Dean Browning recommendation that Smith be terminated as May 2021.

Board of Regents' Rule 31008 governs the termination of tenured faculty at UT System component institutions, including UTSA. (Rule 31008 [#19-2], at Part 2 § 1(a)(2)).  Once Rule 31008 is invoked, it prescribes several steps, including:

a.  <u>Initial Review of Allegation</u>: The institution's provost reviews the allegations, solicits a response from the faculty member, and decides whether to recommend further termination proceedings to the institution's president.  (*Id.* Part 2 § 2.)

b.  <u>Presidential Review & Response</u>: The president gives the faculty member a chance to further respond and decides whether to continue termination proceedings. (*See id.* Part 2 § 3.)  If the process continues, the president notifies the faculty member of the charges and convenes a faculty tribunal to hear them.  (*Id.* Part 2 §§ 3–4.)

c.  <u>Faculty Tribunal</u>: The institution has the burden to prove "good cause" for termination. The faculty member—who may be represented by counsel—may testify and present evidence to the tribunal and also examine any other witnesses who testify. (*Id.*)  After the hearing, the tribunal issues written findings and may recommend (or not) that the president continue termination proceedings.  (*Id.* Part 2 § 4.)

d.  <u>Presidential Recommendation</u>: After receiving the tribunal report, the president may dismiss the proceedings, impose a sanction short of termination, or recommend termination in writing to the Board of Regents.  (*Id.* Part 2 § 4.7.)  If the latter, the faculty member may submit a "written response" to the Regents.  (*Id.*)

e.  <u>Regents' Determination</u>: Finally, the Board of Regents reviews the president's recommendation; any response from the faculty member; and the faculty tribunal's findings, recommendations, and transcript of proceedings.  (*Id.* Part 2 § 5.)  The Board then approves, rejects, or amends the findings and recommendation.  (*See id.*)

As part of the Rule 31008 process, the matter was referred to Provost Kimberly Andrews Espy, who adopted Dean Browning's recommendation for termination and forwarded the matter to President Eighmy.  (Fourth Am. Compl. [#18], at ¶ 38.)  On July 21, 2020, Provost Espy wrote a memorandum to Dr. Eighmy, copying Smith, recommending he continue the Rule 31008 process and discharge Smith from UTSA employment.  (Espy Memo [#19-1], at 1–11.)  The memo concluded that "Smith's failure to improve performance or comply with the requirements of the [PIP] over a seven-year period" justified the initiation of termination proceedings.  (*Id.*)

On November 20, 2020, President Eighmy met with Smith to discuss Dr. Espy's memorandum. (Eighmy Ltr. [#19-3], at 1.) Smith responded to the memorandum in writing in December 2020. (*Id.*) On January 22, 2021, President Eighmy made the decision to refer the termination recommendation to a special hearing tribunal and communicated the decision to Smith via a letter. (Fourth Am. Compl. [#18], at ¶ 39.) Eighmy's letter stated that the charges and evidence established Smith's "inability or unwillingness" to meet the requirements of the Fall 2019 and Spring 2020 PIPs "or otherwise demonstrate a commitment to improve . . . performance as a UTSA tenured faculty member." (*Id.*) The letter also stated that "[t]he facts supporting these charges are described in detail in the July 21, 2020, memorandum and exhibits submitted to me by Dr. Espy, of which you were provided a copy." (*Id.*) Finally, the letter stated that "the evidence in Dr. Espy's memorandum and exhibits combined with your responses support the charges that you did not fulfill the requirements of the PIPs or adequately attempt to achieve them." (Eighmy Ltr. [#19-3], at 1.)

On February 8, 2021, President Eighmy sent Smith a letter via email identifying the faculty members selected for the tribunal and giving him the opportunity to object on fairness or objectivity grounds. (*Id.* at ¶ 40.) President Eighmy's Chief of Staff, Carlos Martinez, was designated as the staff member responsible for handling the hearing. (*Id.* at ¶ 41.) Smith sent Mr. Martinez a letter on March 23, 2021, asking for notice and clarification of the charges or allegations that would be relied upon at the hearing. (*Id.*) Counsel for the UT System responded that they would present UTSA's case based on the charges and allegations referenced in Dr. Eighmy's January 22, 2021 letter and quoted the letter, specifically referencing its citation to Dr. Espy's July 21, 2020 memorandum and exhibits. (*Id.* at ¶ 42.)

The special hearing tribunal heard the matter on April 26 and 27, 2021.  (*Id.* at ¶ 44.)
Smith alleges that other charges were introduced at the hearing for which he did not receive
adequate notice.  (*Id.*)  These additional charges included the 2013 PIP, anonymous student
complaints, DFW rates and student ratings, and other matters allegedly unrelated to the 2019-
2020 PIP from his overall 10-year performance record.  (*Id.*)  UTSA entered Dr. Espy's entire
memorandum as well as all its exhibits, comprising 331 pages, into evidence at the hearing.  (*Id.*)
Smith alleges he was not given notice that UTSA would rely on the Espy memorandum in
presenting the case for his termination.  (*Id.* at ¶ 52.)  In addition to concerns about the charges
presented at the hearing, Smith alleges that some panel members engaged in misconduct during
the hearing by offering their own testimony and information obtained by googling topics during
the hearing.  (*Id.* at ¶ 47.)  Finally, Smith also alleges he was not given the opportunity to
confront the Department Chair regarding his supposed allegations of Smith's misconduct at the
hearing because the Chair was not called as a witness.  (*Id.* at ¶ 49.)

The special hearing tribunal issued its recommendation that Smith be terminated on July
7, 2021, by a 3 to 2 vote based on the totality of his work history and referenced both the 2013-
14 PIP and the 2019-2020 PIPs.  (*Id.* at ¶¶ 48–49.)  On July 27, 2021, President Eighmy adopted
the recommendation of the tribunal's majority and recommended Smith's termination to the
Regents.  (*Id.* at ¶ 51.)  In his letter to the Board, Dr. Eighmy allegedly stated that Smith
"demonstrated a continued lack of performance despite the implementation of two performance
improvement plans (PIPs) in 2013-14 and 2019-20" and had failed to meet the PIP despite being
allowed intermittent FMLA leave that reduced his workload.  (*Id.* at ¶¶ 51, 54.)  According to the
Fourth Amended Complaint, the letter further stated that, based on the tribunal proceedings, the

Espy memorandum, and Smith's December 4, 2020 response, there was good cause for termination. (*Id.* at ¶ 51.)

On August 5, 2021, Smith wrote to the Regents, complaining that UTSA had held his exercise of FMLA rights against him and that his due process rights had been violated during the tribunal hearing. (*Id.* at ¶ 55.) On November 18, 2021, the Regents convened a meeting, at which the Regents voted to approve the termination recommendation. (*Id.* at ¶ 56.)

### IV.  Motions to Dismiss for Lack of Subject Matter Jurisdiction

Prior to addressing the plausibility of Smith's various claims, the Court must consider Defendants' jurisdictional challenge. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). UTSA, the UT System, and the Regents all invoke the Eleventh Amendment as a jurisdictional bar to the majority of Smith's claims and argue that their Eleventh Amendment immunity extends to Dean Browning and President Eighmy in their official capacities.

The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The Supreme Court has interpreted the Amendment as barring suits against a state in federal court without that state's consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). This jurisdictional bar prohibits all suits against a state regardless of the relief sought, whether it be compensatory damages, punitive damages, or monetary awards in the nature of equitable restitution, or other equitable relief, absent unequivocal Congressional abrogation or state waiver of immunity. *Id.* at 100–01; *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). The Eleventh Amendment's reach also extends to suits against a state agency or state official in his or her official capacity,

i.e., when the award is to be paid from the state treasury. *Clay v. Tex. Women's Univ.*, 728 F.2d 714, 715 (5th Cir. 1984); *see also McKinley v. Abbott*, 643 F.3d 403, 406 (5th Cir. 2011).

There are two claims **not** at issue in Defendants' jurisdictional motion—Smith's claim of disability discrimination under the Rehabilitation Act and his claim of retaliatory discharge under Title VII. The Fifth Circuit has repeatedly recognized that Congress clearly abrogated the States' Eleventh Amendment Immunity in enacting Title VII. *Ussery v. State of La. on Behalf of La. Dep't of Health & Hosps.*, 150 F.3d 431, 434 (5th Cir. 1998). Additionally, the Fifth Circuit has repeatedly held that a state entity waives its Eleventh Amendment immunity under Section 504 of the Rehabilitation Act by accepting federal financial assistance. *Block v. Tex. Bd. of L. Examiners*, 952 F.3d 613, 619 (5th Cir. 2020). Smith alleges in his Fourth Amended Complaint that UTSA or the UT System employed him in a "program or activity receiving Federal financial assistance." (Fourth Am. Compl. [#18], at ¶ 126.) There is therefore no jurisdictional bar to Smith pursuing monetary or injunctive relief against any named Defendant for violations of the Rehabilitation Act or Title VII, and the undersigned's recommendations as to dismissal under Rule 12(b)(1) do not apply to these claims. The undersigned will consider each group of Defendants separately for purposes of analyzing Defendants' Eleventh Amendment immunity from suit as to Smith's other claims—his claims under Section 1983, the Texas Constitution, the FMLA,[2] and the Texas Labor Code.

---

[2] Although Congress purported to abrogate Eleventh Amendment immunity in enacting the FMLA, the Supreme Court has held that Congress only acted constitutionally in making States amenable to suit with respect to the FMLA's family-care provision, not the FMLA's self-care provision. *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 41–43 (2012); *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 724–25 (2003). Because Smith's FMLA claims are based on the Act's self-care provision, the Court must evaluate Defendants' asserted Eleventh Amendment immunity as to Smith's FMLA claims.

**A.    UTSA and the UT System are immune from suit as to Smith's claims arising under Section 1983, the Texas Constitution, the FMLA, and the Texas Labor Code.**

Public universities may qualify for immunity as agencies of the state, depending upon "their status under state law and their relationship to state government." *Lewis v. Midwestern State Univ.*, 837 F.2d 197, 198 (5th Cir. 1988).  Under Texas law, state universities are considered agencies of the State of Texas and enjoy Eleventh Amendment immunity.  *U.S. Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n of Tex.*, 898 F.3d 497, 501–02 (5th Cir. 2018) (collecting cases finding that Texas universities are arms of state for immunity purposes); *see also* Tex. Gov't Code § 572.002(10)(B) (defining "state agency" to include "a university system or an institution of higher education as defined by [the Texas] Education Code"); Tex. Educ. Code § 65.02(a)(6) (defining UTSA as a part of the University of Texas System).  Under these authorities, UTSA and the UT System are immune from suit in federal court as to Smith's claims arising under Section 1983, the Texas Constitution, the FMLA, and the Texas Labor Code, regardless of the remedies sought.  The District Court should therefore dismiss all claims against UTSA and the UT System on immunity grounds except for Smith's Rehabilitation Act and Title VII claims.

**B.    Dean Browning and President Eighmy are also immune from suit as to Smith's Section 1983, Texas constitutional, FMLA, and Texas Labor Code claims asserted against them in their official capacities.**

Dean Browning and President Eighmy both argue they are immune from suit as to those claims asserted against them in their official capacities.  Smith references Browning and Eighmy in their official capacities in his Section 1983 claims (due process, free-speech retaliation, and failure to train), his FMLA claims, and his Texas Labor Code claim.  (Fourth Am. Compl. [#18], at ¶¶ 72, 84, 101, 116, 133.)  Smith's pleading appears to recognize that he may not seek damages against Browning and Eighmy in their official capacities, as he repeatedly states

throughout his pleading that he is limiting his requested remedies to those "that do not offend the Eleventh Amendment" and requests prospective injunctive relief. (*See, e.g.*, *id.* at ¶ 133.) The Eleventh Amendment's jurisdictional bar "remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). This is because, "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Brandon v. Holt*, 469 U.S. 464, 471 (1985). In the event Smith is attempting to seek damages against Dean Browning and President Eighmy in their official capacities as relief for violations of the FMLA, Section 1983, or state law, this relief is barred by the Eleventh Amendment to the same extent it is prohibited when sought from UTSA and the UT System.

The parties disagree, however, as to whether Smith may pursue injunctive relief against Browning and Eighmy in their official capacities. There is a long-recognized exception to Eleventh Amendment immunity, which permits suits against individual state officials sued in their official capacity for prospective injunctive relief to enjoin violations of federal law. *Ex Parte Young*, 209 U.S. 123, 155–55 (1908); *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). (Smith's ability to seek injunctive relief as to alleged state-law violations is addressed below.) Smith requests reinstatement to his tenured position as a remedy for his Section 1983, FMLA, and state law violations. (Fourth Am. Compl. [#18], at ¶¶ 72, 84, 101, 116, 133.) While acknowledging *Ex Parte Young*, Defendants argue Smith cannot sue Dean Browning and President Eighmy for injunctive relief because these individuals do not have legal authority to award reinstatement, as only the Regents may grant or reinstate tenure.

The Fifth Circuit has recognized that "*Ex Parte Young* only permits injunctions against state officials who 'have some connection with the enforcement of the act' or are 'specially

charged with the duty to enforce' the law at issue." *United States v. Abbott*, 85 F.4th 328, 334 (5th Cir. 2023) (quoting *Ex Parte Young*, 209 U.S. at 157–58).  To be a proper defendant under *Ex Parte Young*, the officer must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."  *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (internal quotation and citation omitted).  This requirement may also be met by showing that there is a "general duty imposed" on the state officer that "includes the right and the power to enforce the statutes of the State, including, of course, the act in question, if it were constitutional."  *Ex Parte Young*, 209 U.S. at 161, 158; *see also Okpalobi v. Foster*, 244 F.3d 405, 416–17 (5th Cir. 2001).  This determination is made by reference to state law.  *Okpalobi*, 244 F.3d at 417.

Smith contends that Dean Browning and President Eighmy are proper *Ex Parte Young* defendants because Dean Browning proposed Smith's termination, and President Eighmy presented the termination action to the Regents, even though the Regents are those who made the ultimate termination decision.  Smith asks the Court to find that Browning and Eighmy therefore have "some connection" with the prospective relief requested and that he may pursue his Section 1983 and FMLA claims against them in their official capacities.  *See Ex Parte Young*, 209 U.S. at 157.  Defendants respond that Smith erroneously applies a retrospective, rather than prospective, analysis in evaluating Browning's and Eighmy's ability to reinstate Smith to his tenured position.  The undersigned agrees with Defendants.

Neither party has presented the Court with any specific statute governing the reinstatement of tenure.  Both parties, however, reference Section 51.942 of the Texas Education Code.  This provision provides that "[o]nly an institution of higher education's governing board, on the recommendation of the institution's chief executive officer and the university system's

chancellor, if applicable, may grant tenure." Tex. Educ. Code § 51.942(b). This statute does not establish either Browning's or Eighmy's authority to provide Smith with the injunctive relief he is requesting. Even if this were a suit about granting tenure (which it is not), Dean Browning is neither UTSA's "chief executive officer" nor "the university system's chancellor" for purposes of Section 51.942 and the grant of tenure. Smith's argument that Browning has the duty to provide reinstatement because she initiated the termination process by recommending his termination to the provost is not supported by statute or case law.

The Fifth Circuit has recognized that engaging in a past act connected to a challenged action does not necessarily give rise to the authority to provide a prospective remedy if that act is found unlawful. *See Abbott*, 85 F.4th at 333–34. In *Abbott*, the Fifth Circuit held that the Governor was not a proper defendant under *Ex Parte Young* in a suit challenging the constitutionality of an executive order prohibiting private individuals from providing ground transportation to certain migrants. *Id.* The Governor's past action signing the executive order may have connected him to the underlying issue before the court, but this past act could not be a basis for including him as a defendant in a suit seeking to enjoin the enforcement of the order, as only the Texas Department of Public Safety had prospective enforcement power related to the order. *Id.* at 336. Similarly, Dean Browning's past recommendation of termination does not give rise to an authority to reinstate Smith and restore his tenure.

The same can be said for President Eighmy. The Texas Education Code vests the power to "employ and discharge" with the Regents, not the president of a university. *See Liu v. Tex. State Univ.*, No. 1:18-CV-938, 2019 WL 3804491, at *6 (W.D. Tex. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 13253483 (W.D. Tex. Aug. 30, 2019) (citing Tex. Educ. Code § 95.21(a)). The Texas Education Code illustrates that ultimate decisions regarding

employment and the grant of tenure belong to the Regents, even if the decision-making process involves a review of the recommendation of certain high-level administrative officers, like the chancellor and president. District courts have therefore dismissed official-capacity claims against individual administrators under *Ex Parte Young* where the plaintiff failed to show that those administrators had the actual power to reinstate the plaintiff to a previous position. *Id.* at *6; *Ayers v. Romo*, No. SA-10-CA-612, 2012 WL 12872435, at *1 (W.D. Tex. Mar. 19, 2012).

Smith bears the burden of proving subject matter jurisdiction. *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012). He has not provided the Court with any basis to conclude that Dean Browning and President Eighmy have the authority to reinstate his tenure. Dean Browning and President Eighmy are therefore not proper Defendants in their official capacity as to Smith's federal constitutional and FMLA claims. Smith's Section 1983 and FMLA claims for prospective injunctive relief against Dean Browning and President Eighmy in their official capacity are barred by the Eleventh Amendment and must be dismissed.

Smith argues that a similar exception to Eleventh Amendment immunity permits him to seek prospective injunctive relief based on the alleged violations of the Texas Constitution and the Chapter 21 of the Texas Labor Code. In making this argument, Smith cites to various opinions of the Texas Supreme Court discussing an "ultra virus" exception to the State of Texas's governmental immunity from suit, which permits suits for equitable remedies against government actors in their official capacities who "allegedly act without legal or statutory authority," such that the acts should not be considered acts of the state at all. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 369–70 (Tex. 2009) (internal quotation and citation omitted).

Smith has not established that this doctrine, which is recognized as an exception to governmental immunity as to state-law claims in state court, overcomes the Eleventh

Amendment's jurisdictional bar as to state-law claims in federal court. First, the Texas Supreme Court cases cited by Smith regarding the *ultra vires* exception do not address Texas's waiver of sovereign immunity to suit in federal court, only the waiver of immunity in its own courts. *Beleno v. Lakey*, 306 F. Supp. 3d 930, 942 (W.D. Tex. 2009) (citing *Pennhurst*, 465 U.S. at 100 n.9 ("a State's waiver of sovereign immunity in its own courts is not a waiver of Eleventh Amendment immunity in federal courts."); *see also United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Anderson*, No. SA-17-CV-1242-XR, 2018 WL 3017366, at *9 n.7 (W.D. Tex. June 15, 2018) ("Even if Plaintiffs were asserting *ultra vires* official-capacity claims as permitted by Texas law, the fact that a State permits certain claims in its own courts does not establish a waiver of immunity to suit in federal court.").

Moreover, the Supreme Court has questioned "the continued vitality of the *ultra vires* doctrine in the Eleventh Amendment context" and has stated that, insofar as it is consistent with the Amendment, it might only persist as a "very narrow exception," which applies only when an official acts "without any authority whatever."  *Pennhurst*, 465 U.S. at 102 n.11, 114 n.25. Smith claims that he has pleaded *ultra vires* acts committed by Dean Browning and President Eighmy that would trigger the possible application of this doctrine.  The undersigned disagrees. Throughout his pleading, Smith repeatedly alleges that Browning and Eighmy "acted ultra vires in . . . proposing [his] termination." (Fourth Am. Compl. [#18], at ¶¶ 71, 100, 110, 124, 132, 137.)  Although Smith asserts that the termination recommendation had unconstitutional and retaliatory motivations, he has not alleged that Browning and Eighmy acted without any authority such that their acts would not be considered acts of UTSA or the UT System. *See Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 589 (Tex. 2015) ("[T]he ultra vires exception to immunity only applies where a government actor fails to perform a ministerial task or acts

without authority of law.").  An allegation that a government official violated various Texas constitutional provisions or the Texas Labor Code is not the same as alleging that the official acted outside of their legal authority.  *See United Steel*, 2018 WL 3017366, at *9 n.7 ("Plaintiffs have not alleged ultra vires action; they allege only that Anderson violated state law.").

In summary, Smith has not demonstrated that the State of Texas has waived its Eleventh Amendment immunity from suit as to his state-law claims or that the *ultra vires* exception to the sovereign immunity of Texas in its own courts allows Smith to pursue his request for injunctive relief as a remedy for state-law violations against Dean Browning and President Eighmy in their official capacities in federal court.  The District Court should therefore also dismiss Smith's state-law claims against Dean Browning and President Eighmy in their official capacities.

**C.    Smith can pursue injunctive relief against the individual Regents in their official capacities.**

The Regents filed a separate motion to dismiss, first arguing that the Eleventh Amendment protects the Board of Regents from suit as an entity.  For the same reasons Smith cannot sue UTSA and the UT System for violations of state law, violations of Section 1983, and violations of the FMLA, Smith cannot sue the Board of Regents as an entity for damages or injunctive relief.  The Board of Regents as an entity, like UTSA and the UT System, is immune from suit as an arm of the State of Texas under the Eleventh Amendment.  *See Doe v. Harrell*, 841 Fed. App'x 663, 668 (5th Cir. 2021) (holding Board of Regents of UT System to be immune from suit under Eleventh Amendment).  Smith also cannot sue the individual Board of Regents in their official capacities for damages, as these claims are also barred by the Eleventh Amendment for the same reasons Smith cannot pursue damages claims against Dean Browning and President Eighmy.  *See Graham*, 473 U.S. at 169.  Finally, the undersigned has already rejected any argument that Smith can sue individual state officials for injunctive relief for

violations of state law based on the *ultra vires* doctrine. This conclusion applies equally to the individual Regents.

*Ex Parte Young* implicates separate issues, however, as to the Regents. Smith argues that he can sue the individual Board of Regents members in their official capacities for injunctive relief for violations of federal law under *Ex Parte Young*. And Defendants concede that Texas law vests the Board of Regents with the authority to provide Smith's requested injunctive relief such that the individual Regents are theoretically proper *Ex Parte Young* defendants. *See Abbott*, 85 F.4th at 334. But the Regents still seek dismissal based on *Ex Parte Young*, arguing that Smith has only sued the Board of Regents as a "corporate entity" and failed to include any individual Regent by name in this lawsuit. The undersigned disagrees with this characterization of Smith's pleadings.

When Smith identifies the Board of Regents as a Defendant for the first time in his pleading, he defines the Board of Regents as "individuals and citizens of the State of Texas" who may be served in "their" official capacities through "their" Chairman. (Fourth Am. Compl. [#18], at ¶ 7 (emphasis added).) Later, in asserting allegations pertaining to his Section 1983 and FMLA claims seeking prospective relief under *Ex Parte Young*, Smith repeatedly and specifically refers to Defendants as "the individual members of the Board of Regents." (*Id.* at ¶¶ 72, 84, 101, 116.) Although Smith did not name each individual Regent by name in the suit, his intent to sue these individuals in their official capacities, rather than the Board of Regents as a singular governing body or entity, is manifest throughout his Fourth Amended Complaint.

Smith asks the Court to permit him to amend his pleadings to add the individual names of the Regents if the Court determines that his pleadings are insufficient to satisfy *Ex Parte Young* and overcome the Board's Eleventh Amendment immunity. In doing so, Smith argues that Rule

17(d) of the Federal Rules of Civil Procedure expressly allows him to sue the individual Regents in an official capacity by their official title rather than by name. *See* Fed. R. Civ. P. 17(d) (specifying that a "public officer who sues or is sued in an official capacity may be designated by official title rather than by name" and permitting the court to order the names be added).

At least one other district court has relied on Rule 17(d) in rejecting the "semantic argument" that a plaintiff naming the Board of Regents has failed to sue the individual Regents for purposes of *Ex Parte Young*. *See Amawi v. Pflugerville Indep. Sch. Dist.*, 373 F. Supp. 3d 717, 740 (W.D. Tex. 2019), *vacated and remanded sub nom. on other grounds Amawi v. Paxton*, 956 F.3d 816 (5th Cir. 2020). That court reasoned that the "official title of the individual members of the Boards is a collective one: the 'Board of Regents,'" construed the complaint as naming the individual members of the Board of Regents as defendants by designating them by their official title, and held that the Eleventh Amendment did not bar suits against the individual Regents. *Id.*

The Fifth Circuit, however, recently rejected a similar argument, although under a distinguishable set of factual circumstances. In *Doe v. Harrell*, the Fifth Circuit affirmed the dismissal of the Board of Regents on Eleventh Amendment grounds because the plaintiff "did not sue any individual Board members using either their official titles or their names; he merely sued the Board itself." 841 Fed. App'x at 668 n.6. The plaintiff in *Doe* also invoked Rule 17(d) to argue that his claims against the Board of Regents "should be treated as claims against the Board's *individual members*." *Id.* (emphasis in original). The Fifth Circuit rejected the argument, stating that the "rule simply allows a 'public officer' to be designated by title instead of name; it does not, as Doe urges, permit a court to treat a suit against an entity as a suit against the individuals that comprise it." *Id.*

The Court should decline to apply the reasoning of *Doe* in this case, as the plaintiff's pleading in *Doe* is distinguishable from Smith's here.  Doe's pleading unequivocally asserted claims only against the Board as an entity, treating it as interchangeable with the UT System, which it defined as "an institution of higher education." *See Doe v. Board of Regents*, No. 1:19-cv-00415-LY (dkt. 21, at ¶ 3).  Again, Smith defined the Board of Regents in his pleading not as an entity or organization but rather as a group of "individuals and citizens." (Fourth Am. Compl. [#18], at ¶ 7.)  Additionally, Doe's complaint did not contain any reference to the individual Regents or the Board members.  As noted, Smith's complaint repeatedly does so.  The District Court should reject the Regents' request to ignore the substance of Smith's pleading, which clearly expresses an intent to sue the individual Regents, in favor of a strict reading of *Doe* based purely on the titling of Defendants.  However, Smith's allegations against the Regents should not be construed as pleading individual-capacity claims against each Regent.  His pleadings do not contain factual allegations against any specific Regent, and nothing in his Complaint suggests an intent to sue them in their individual capacities.

Based on the foregoing, the District Court should deny the Regents' jurisdictional challenge as to Smith's federal constitutional and FMLA claims seeking prospective injunctive relief.  Smith has asserted claims against the individual Regents in their official capacities, and the individual Regents in their official capacities are proper *Ex Parte Young* defendants because they have authority to reinstate Smith to his tenured position.  If the District Court wishes the names of the individual Regents to be added, it should permit one final amendment to Smith's pleadings to add the Regents by name such that his official capacity claims against these individuals are made even more clear.

The undersigned summarizes its recommendations as to Defendants' Rule 12(b)(1) motions as follows.  The District Court should grant Defendants' motions to dismiss under Rule 12(b)(1) in part and hold that (1) the Eleventh Amendment bars Smith's state-law, federal constitutional, and FMLA claims against UTSA, the UT System, and the Board of Regents as entities, as well as Dean Browning and President Eighmy in their official capacities; (2) the Eleventh Amendment bars Smith's state-law claims against the individual Regents in their official capacities; and (3) the Eleventh Amendment bars Smith's federal constitutional and FMLA claims against the individual Regents in their official capacities for damages but not prospective, injunctive relief.  Smith's Section 1983 and FMLA claims may be pursued against the individual Regents in their official capacities under *Ex Parte Young*.  Again, Defendants' Rule 12(b)(1) motions do not affect Smith's Rehabilitation Act and Title VII claims against any Defendant.

### V.  Motions to Dismiss for Failure to State a Claim

In addition to challenging Smith's claims under Rule 12(b)(1), Defendants seek dismissal of all of Smith's claims for failure to state a claim upon which relief can be granted.  Dean Browning and President Eighmy also assert the defense of qualified immunity to Smith's individual-capacity claims.  The Regents argue that all of Smith's claims against them are barred by the governing statutes of limitation.  The undersigned addresses the threshold limitations argument first.

**A.**      **Smith's claims against the Regents are not barred by statutes of limitations.**

The Regents argue that all of Smith's claims against them were untimely filed because Smith did not add the Regents as Defendants until December 15, 2023, when he filed his Fourth

Amended Complaint.  (The other Defendants raise limitations arguments as to Smith's FMLA and Rehabilitation Act claims, which the undersigned considers separately *infra*.)

All of Smith's claims are governed by a two-year statute of limitation, except for his Title VII claim, which is subject to an administrative exhaustion requirement.  *See* 29 U.S.C. § 2617(c)(1) (FMLA); Tex. Lab. Code § 21.256 (Texas Labor Code); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 759 (5th Cir. 2015) (Section 1983); *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (Rehabilitation Act); *Jackson v. Houston Indep. Sch. Dist.*, 994 S.W.2d 396, 402 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (Texas Constitution).  The Regents argue that, applying a two-year statute of limitations to Smith's allegations, the limitations period as to all claims expired on November 20, 2023, based on Smith's termination date of November 18, 2021.  (Fourth Am. Compl. [#18], at ¶ 56.)  Coincidentally, taking into consideration the exhaustion requirement, Smith was required to bring his Title VII claim against the Regents no later than November 20, 2023, as well.  Smith filed a charge of discrimination with the EEOC and Texas Workforce Commission and pleads that the EEOC issued a right to sue letter on August 21, 2023.  (*Id.* at ¶ 12.)  A plaintiff alleging employment discrimination must file a civil action no more than 90 days after receiving notice of the right to sue, which here is also November 20, 2023.  *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009).  Smith filed his Fourth Amended Complaint on December 15, 2023, almost one month after this deadline.

Smith argues that his claims against the Regents relate back to his timely filed Original Complaint and therefore his claims against the Regents should not be dismissed as untimely.  The undersigned agrees.  Rule 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose

out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original

pleading." Fed. R. Civ. P. 15(c)(1)(B).  The rule also addresses the addition of a new defendant

and states that the pleading will relate back to the date of the original pleading where Rule

15(c)(1)(B) is satisfied and

> . . . if, within the period provided by Rule 4(m) for serving the summons
> and complaint, the party to be brought in by amendment:
>
> (i)    received such notice of the action that it will not be prejudiced in
>        defending on the merits; and
>
> (ii)   knew or should have known that the action would have been
>        brought against it, but for a mistake concerning the proper party's
>        identity.

*Id.* 15(c)(1)(C).  The United States Supreme Court recently explained that "the purpose of

relation back [is] to balance the interests of the defendant protected by the statute of limitations

with the preference expressed in the federal Rules of Civil Procedure in general, and Rule 15 in

particular, for resolving disputes on their merits."  *Krupski v. Costa Crociere S.p.A.*, 560 U.S.

538, 550 (2010).  In evaluating the applicability of Rule 15(c)(1)(C), the emphasis is "on what

the party to be added knew or should have known, not on the amending party's knowledge or its

timeliness in seeking to amend the pleading."  *Id.* at 541.

The parties do not dispute that Section (c)(1)(B) of Rule 15 is satisfied and that Smith's

claims against the Regents arose out of the same transaction and occurrence as the claims in the

original Complaint.  The question is therefore whether Smith has shown that (i) the Regents

received notice of the action within the period provided by Rule 4(m) such that they will not be

prejudiced in defending on the merits, and (ii) the Regents knew or should have known that the

action would have been brought against them but for a mistake concerning their identity.  *See id.*

at 545.

The Regents do not make any arguments regarding (i) and the notice requirement, but the undersigned nonetheless notes that the Fifth Circuit infers that a party had notice "if there is an identity of interest between the original defendant and the defendant sought to be added or substituted." *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998). "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* (internal quotation and citation omitted). "In this regard, notice may be imputed to the new party through shared counsel." *Id.* (citations omitted). Here, the parties at issue could not be much more aligned in their interests; the Board of Regents is the governing body of UTSA, and the same attorneys represent UTSA, the UT System, Dean Browning, President Eighmy, and the Regents. Accordingly, at least as to the Regents in their official capacity, the Court should find that they had notice of Smith's suit and would not be prejudiced by their inclusion in the suit for purposes of the relation-back doctrine.

The Regents focus their limitations argument on (ii) and argue that Smith does not assert that he made a mistake concerning the Regents' proper identity and therefore cannot rely on the relation back doctrine. According to the Regents, Smith was clearly aware of the Board's identity when he first filed suit (because his original Complaint contained numerous references to the Regents) and therefore there could be no mistake of identity triggering Rule 15's relation-back provisions.

The Supreme Court addressed Rule 15(c)'s mistake requirement in *Krupski* and expressly rejected the Regents' line of reasoning that "any time a plaintiff is aware of the existence of two parties and chooses to sue the wrong one," there can be no mistake of identity. 560 U.S. at 549. Rather, a deliberate choice to sue one defendant over another does not always "foreclose a

finding that Rule 15(c)(1)(C)(ii) has been satisfied." *Id.*  For example, "a plaintiff might know that a prospective defendant exists but nonetheless harbor a misunderstanding about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression." *Id.*  Moreover, the Fifth Circuit has recognized that "mistakes" are not limited to mistakes of fact as to the existence or identity of a party as a possible defendant; mistakes may also encompass mistakes of law as to who must be sued to pursue a certain claim. *See, e.g.*, *Sanders–Burns v. City of Plano*, 594 F.3d 366, 379 (5th Cir. 2010) (citation omitted) ("In some cases a legal mistake can lead to misnomer, as when a plaintiff names an institutional defendant because of confusion as to whether an individual or an institutional defendant is the proper party . . . .") (internal citation and quotation omitted); *Kirk v. Cronvich*, 629 F.2d 404, 407 (5th Cir. 1980) (treating decision to sue individual rather than institution as legal mistake of variety contemplated by Rule 15(c)), *overruled in part on other grounds as noted by Honeycutt v. Long*, 861 F.2d 1346, 1352 n.9 (5th Cir. 1988)

Smith is not arguing that he was factually mistaken about the identity of the Board; he is arguing that his counsel made the legal mistake of failing to name the Regents as opposed to the immune entities it governs.  This is not the kind of "fully informed decision" to sue one party over another that would preclude the application of Rule 15(c)(1)(C)(ii).  *Cf. Krupski*, 560 U.S. at 552 ("When the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met.").  The purpose of Rule 15(c) is not to promote gamesmanship, but rather to embrace "a sensible approach" that allows suits to be maintained "regardless of technical pleading errors" and to "help, not hinder, persons who have a legal right

to bring their problems before the courts." *Sanders-Burns*, 594 F.3d at 379–80 (internal quotations and citations omitted). As explained in the analysis of Defendants' jurisdictional challenge *supra*, the Regents in their official capacity are the only Defendants not immune from suit as to Smith's request for injunctive relief to remedy his alleged violations of federal law. As the other Defendants are immune from these claims, there is no basis to conclude that the failure to initially include the Regents as Defendants was a "strategic decision." *See id.* at 379 (contrasting "mistake" for purposes of Rule 15(c) with the "strategic decision" to sue one party over another).

In sum, the District Court should find that Smith's Fourth Amended Complaint relates back to his Original Complaint, such that his claims against the Regents asserted in his latest pleading are timely and not barred by the governing statute of limitations.

**B.    Smith fails to plead plausible due process and failure-to-train claims.**

All of the Defendants challenge the plausibility of Smith's due process and failure-to-train claims. Smith alleges that Defendants deprived him of both his procedural and substantive due process rights with respect to his property interest in his tenured appointment as a UTSA professor in violation of the Texas and United States Constitutions and that UTSA and the UT System failed to train the special tribunal in how to conduct his hearing. (Fourth Am. Compl. [#18], at ¶¶ 61–87, 111–15.) Defendants argue these claims should be dismissed because Smith's allegations establish that he received all the process he was due. The undersigned agrees.

In the Fifth Circuit and under Texas law, a public employee with a property interest in his continued employment is entitled to the following minimum procedural due process rights in connection with termination of his services: "(1) to be advised of the cause of the termination [or

29

of the charges to be heard] in sufficient detail to permit him to show any error that may exist; (2) to be advised of [if he does not himself hear] the names and nature of the testimony of the witnesses against him; (3) to be afforded a meaningful opportunity to be heard in his own defense within a reasonable time and (4) before a tribunal that possesses some expertise and an apparent impartiality toward the charges." *Wells v. Dallas Indep. Sch. Dist.*, 793 F.2d 679, 682 (5th Cir. 1986) (alterations in original); *see also Price v. City of Junction, Tex.*, 711 F.2d 582, 590 (5th Cir. 1983) ("The procedural due process rights vouched safe by the Texas constitution to persons being deprived of property requires reasonable notice and meaningful opportunity to be heard.") The same analysis applies to Smith's federal and state constitutional due process claims. *See Price*, 711 F.2d at 590.

As to procedural due process, Smith's pleading contains several references to Defendants' failure to follow the comprehensive periodic evaluation ("CPE") process in evaluating Smith's performance for tenure and alleged deviations from Rule 31008 throughout the termination process. (Fourth Am. Compl. [#18], at ¶¶ 15–20, 112.) Smith cannot base his due process claims on the failure of Defendants to complete a CPE or to comply with other internal governing regulations, as Defendants' alleged violations of state regulations and procedures are immaterial to his constitutional claims. "The fundamental issue in due process law is not whether state officials violated state law, but whether they provided the plaintiff with the constitutional minima." *Gerhart v. Hayes*, 201 F.3d 646, 650 (5th Cir. 2000), *vacated and superseded in part on denial of rehearing on other grounds*, 217 F.3d 320 (5th Cir. 2000); *see also Brown v. Tex. A & M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986) ("The failure of a state agency to comply with its internal regulations is insufficient as a matter of law to establish a

violation of Due Process, because constitutional minima nevertheless may have been met.")
(internal citation and quotation omitted).

Setting aside any allegations regarding the CPE process and internal governing
regulations, Smith's procedural due process claims center on allegations that he was terminated
based on charges of which he did not receive adequate notice and therefore was unable to
prepare a meaningful and adequate defense.  According to Smith, President Eighmy's charging
letter dated January 22, 2021, only referenced Smith's failure to satisfy the requirements of the
2019 and 2020 PIPs and "made no mention of the 2013 PIP, anonymous student complaints, and
other matters that occurred before the 2019-2020 PIP."  (Fourth Am. Compl. [#18], at ¶ 46.)  Yet
Smith claims he was terminated based on these additional charges after evidence was presented
at the special tribunal hearing regarding his entire seven-year performance history and the
conclusions contained in Dr. Espy's July 21, 2020 memorandum. (*Id.* at ¶¶ 63–64.)
Additionally, Smith argues he was deprived of due process when the special hearing tribunal
relied on Google and evidence outside of the record, as he also did not have notice of this
evidence. (*Id.* at ¶ 70.)

These allegations do not state a plausible violation of Smith's constitutional procedural
due process rights under either the United States or Texas Constitutions.  First, Smith's own
allegations and President Eighmy's letter, which has been incorporated into the pleadings by
reference, negate any plausible assertion that Smith did not receive notice of the charges and
evidence that would be considered at the special tribunal hearing.  Smith alleges that President
Eighmy sent him a letter on January 22, 2021, which informed Smith of Eighmy's decision to
convene a special hearing tribunal to hear the charges against Smith and to evaluate the
termination recommendation.  (*Id.* at ¶ 39.)  This letter referenced a November 20, 2020 Zoom

meeting, the purpose of which was to provide Smith the "opportunity to respond in person to the allegations and supporting evidence presented in the July 21, 2020, memorandum and termination recommendation from [Dr. Espy]." (Eighmy Ltr. [#19-3], at 2.) The letter further states that Eighmy's decision to refer the matter to a special hearing tribunal was "based on the charges and evidence presented that establish [the] inability or unwillingness to meet the requirements of [the] Fall 2019 and Spring 2020 [PIPs] or otherwise demonstrate a commitment to improve [his] performance as a UTSA tenured faculty member." (*Id.*) The letter goes on to say that "[t]he facts supporting these charges are described in detail in the July 21, 2020, memorandum and exhibits submitted . . . by Dr. Espy, of which [Smith was] provided a copy." (*Id.*) Dr. Espy's memorandum is referenced expressly a third time in the letter, when Eighmy states that "the evidence in Dr. Espy's memorandum and exhibits combined with [Smith's responses] support the charges that [he] did not fulfill the requirements of the PIPs or adequately attempt to achieve them." (*Id.*) Smith further alleges that, after receiving this letter, he wrote President Eighmy's Chief of Staff, asking for notice of the charges or allegations that would be relied upon at the hearing. (Fourth Am. Compl. [#18], at ¶ 41.) Smith states in his pleading that counsel for the UT System responded that its counsel would present UTSA's case based on the charges and allegations referenced in Dr. Eighmy's January 22, 2021 letter. (*Id.* at ¶ 42.) And Smith alleges that the correspondence he received from the UT System's counsel quoted the portion of Eighmy's letter expressly referencing Dr. Espy's memorandum and its exhibits. (*Id.*)

Smith has not plausibly alleged that he was not on notice that the Espy memorandum and the evidence cited therein would be addressed at the special tribunal hearing. Again, Dr. Eighmy's letter said the tribunal was to address charges that Smith failed to meet the requirements of the most recent 2019 and 2020 PIPs *and* his general failure to "demonstrate a

commitment to improve [his] performance."  (Eighmy Ltr. [#19-3], at 2.)  Whether viewed as separate charges or as evidence supporting these charges, Smith was repeatedly told that the tribunal would be hearing evidence cited in the Espy memorandum regarding matters predating the 2019 and 2020 PIPs.  Smith has not stated a plausible procedural due process violation based on these allegations.

Nor is there a plausible procedural due process violation based on Smith's allegations that some tribunal members were googling topics during the hearing.  These allegations are insufficiently pleaded and conclusory.  Smith does not articulate in his pleading what the tribunal members were googling or how this resulted in him being deprived of due process.  Without additional details, Smith has not articulated a plausible theory of a deprivation of due process. The District Court should dismiss Smith's procedural due process claims arising under the United States and Texas Constitutions.

Smith has not pleaded a substantive due process violation either.  Substantive due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."  *Marco Outdoor Adv., Inc. v. Regional Transit Auth.*, 489 F.3d 669, 672 n.3 (5th Cir. 2007) (quotation and citation omitted).  To state a substantive due process claim, Smith must plausibly allege that Defendants terminated him in an arbitrary and capricious manner.  *State of Tex. By & Through Bd. of Regents of Univ. of Texas Sys. v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998) ("[S]ubstantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest.").  As Defendants point out, this is a "demanding" standard, *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992), especially "in the context of higher education personnel decisions," *Jones v. La. Bd. of Sup'rs of Univ. of La. Sys.*, 809 F.3d 231, 240

(5th Cir. 2015). To prevail on a substantive due process claim, the plaintiff must "demonstrate that the abuse of power by the state official shocks the conscience." *Marco*, 489 F.3d at 672 n.3 (quotation and citation omitted). In the context of a termination decision, this means, the plaintiff must show "that the decision was made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Lewis*, 665 F.3d at 631 (quotation and citation omitted).

Smith's allegations do not rise to this level. Smith's substantive due process claim is based on allegations that Defendants' conclusion that Smith did not meet the requirements of his PIP or produce documented progress towards meeting those requirements was unreasonable because he "produced two PIP reports with 72 manuscript pages." (Fourth Am. Compl. [#18], at ¶ 86.) Smith's allegations do not approximate the type of arbitrary and capricious action that shocks the conscience and implicates substantive due process concerns. The District Court should also dismiss Smith's substantive due process claim.

Because Smith fails to plead plausible due process claims, his failure-to-train claim fails as well. Smith alleges that the UT System and UTSA are liable for the failure to train the special hearing tribunal because the tribunal entertained matters not charged at the hearing and offended due process. (*Id.* at ¶¶ 111–15.) A failure-to-train cause of action requires an underlying constitutional violation. *Graham v. Hodge*, 619 Fed. App'x 394, 395 (5th Cir. 2015). Because Smith's failure-to-train claim is based on alleged yet implausible due process violations, this claim should also be dismissed.

**C.    Smith fails to allege a plausible free-speech retaliation claim under either the United States or Texas Constitutions.**

Smith alleges Defendants engaged in unlawful retaliation by terminating him in part based on his protected speech in violation of Article I, Section of the Texas Constitution and the

First Amendment.  (Fourth Am. Compl. [#18], at ¶¶ 88–110.)  Smith's free-speech claims center on an op-ed he wrote criticizing UTSA's credit requirements in the engineering program.  (*Id.*)

The First Amendment of the U.S. Constitution and Article I, Section 8 of the Texas Constitution protect a public employee's right to speak in certain circumstances as a citizen addressing matters of public concern.  *Anderson v. Valdez*, 913 F.3d 472, 476 (5th Cir. 2019); *see also Caleb v. Carranza*, 518 S.W.3d 537, 544 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (construing Texas and federal constitutional provisions regarding free speech equivalently and relying on Fifth Circuit precedent for contours of free-speech retaliation claim).  To establish a § 1983 claim for employment retaliation related to speech, a plaintiff-employee must show: "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in efficient provision of public services; and (4) the speech precipitated the adverse employment action."  *Anderson*, 913 F.3d at 476–77.  Defendants first argue that Smith fails to state a plausible free-speech claim because he does not allege that he engaged in speech "as a citizen on a matter of public concern," but rather engaged in speech as part of his official duties as an employee/professor.

The Supreme Court explained in *Garcetti v. Ceballos* that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  547 U.S. 410, 421 (2006).  Defendants argue that Smith's allegations regarding the op-ed piece do not describe protected speech because Smith alleges that he gave Dean Browning a report in September 2017 summarizing his opinions from the op-ed prior to its publication.  (Fourth Am. Compl. [#18], at ¶ 23.)  Defendants therefore argue that the speech at issue originated as speech within Smith's job duties and was merely reprised in a later op-ed.

*See Foerster v. Bleess*, No. 20-20583, 2022 WL 38996, at *3 (5th Cir. Jan. 4, 2022) (noting that employee speech that would otherwise be unprotected "is not transformed into protected speech simply by continuing to express those same concerns to certain external parties"). This is not a valid basis for dismissing Smith's free-speech claims.

In evaluating whether the speech at issue is protected speech, this Court employs a three-factor test to determine whether one is speaking as a public citizen or as a private citizen/employee, considering the "content, form, and context of a given statement." *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 381–82 (5th Cir. 1999) (citing *Connick v. Myers*, 461 U.S. 138, 417–48 (1983)). Considering these three factors, the speech described in Smith's pleadings is plausibly categorized as speech involving matters of public concern, not merely speech made in the context of his employment with UTSA. In terms of content, the op-ed criticized not just UTSA's credit requirements in the engineering department but made recommendations for a state-wide limitation of credits for engineering departments at all Texas public universities that would decrease costs to Texas taxpayers. (Fourth Am. Compl. [#18], at ¶ 23.) In terms of context and form, the speech was made in an op-ed published in a widely circulated newspaper, not in a private employee-employer setting.

Nonetheless, the District Court should still dismiss this claim because Smith fails to plead a sufficient causal connection between the speech at issue and the termination decision. Smith alleges that he wrote the op-ed in 2018 and that it was published on July 18, 2018, in the San Antonio News Express. (*Id.*) The only individual Smith alleges to have been aware of the op-ed was President Eighmy, who allegedly brought up the op-ed in an April 5, 2019 meeting about Smith's potential termination. (*Id.* at ¶ 24.) There are several issues with Smith's allegation that his termination was in retaliation for his expressing the opinions contained in the op-ed. First,

when Smith authored the op-ed in 2018, Dean Browning had already made the recommendation for termination the previous year and set the termination process in motion.  (*Id.* at ¶ 19.)  Second, Smith alleges that just weeks after the April 5, 2019 meeting with President Eighmy in which Eighmy referenced the op-ed, Eighmy decided *not* to proceed with termination at that time and to instead place Smith on a PIP as of April 24, 2019.  (*Id.* at ¶ 25.)  The termination matter was not again referred to President Eighmy until January 2021, nearly two years later, when Provost Espy had adopted Dean Browning's initial termination recommendation and had authored the memorandum regarding Smith's failure to fulfill the requirements of the PIP and to improve his performance.  (*Id.* at ¶ 39.)  At this time, Eighmy decided to refer the termination recommendation to a special hearing tribunal and, after the tribunal recommended termination by a 3 to 2 vote, President Eighmy adopted the recommendation of the tribunal and recommended termination to the Regents on July 27, 2021.  (*Id.* at ¶¶ 39–51.)

Smith does not allege that Eighmy ever again referenced the op-ed aside from his "randomly" bringing it up in the April 2019 meeting, more than two years before his termination.  And again, there is no allegation that any other decisionmaker involved in the termination process—Dean Browning, Provost Espy, the special hearing tribunal, or the Regents—were aware of the op-ed or referenced the op-ed in their termination decision.  Had the op-ed been authored before the termination process began or had the comment about the op-ed been made close in time to President Eighmy's recommendation of termination, then perhaps these allegations might be sufficient to provide a plausible basis for causation.  But viewing the allegations as a whole, Smith's assertion that the speech contained in the op-ed caused President Eighmy's termination recommendation is simply too speculative and implausible to satisfy pleading standards.

**D.    Smith states a plausible claim of retaliation under the FMLA, but his FMLA interference claim, if any, is barred by the statute of limitations.**

Smith's Fourth Amended Complaint references both a claim of FMLA interference and retaliation.  (*Id.* at ¶¶ 116–24.)  To plead FMLA interference, a plaintiff must allege (1) he was an eligible employee, (2) his employer was subject to the FMLA's requirements, (3) he was entitled to leave, (4) he gave proper notice of his intention to take FMLA leave, (5) his employer interfered with, restrained, or denied him the benefits to which he was entitled under the FMLA, and (6) he was prejudiced thereby.  *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017). Smith's interference claim is based on allegations that Smith applied for and received FMLA leave due to injuries from his bicycle accident; his FMLA leave entitled him to a 50 percent workload; the PIPs he received established expectations impossible to meet within his FMLA restrictions; and Defendants interfered with his FMLA rights by imposing the conflicting PIPs, refusing to allow him to grieve the conflict, and terminating him when he failed to meet expectations.  (Fourth Am. Compl. [#18], at ¶¶ 118–21.)

To plead FMLA retaliation, a plaintiff must allege (1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) the adverse action was taken because the employee sought protection under the FMLA.  *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016); *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006).  Smith's FMLA retaliation claim overlaps factually with his interference claim.  Smith claims Defendants held his exercise of FMLA rights against him when Dean Browning recommended termination for failure to complete PIP requirements in May 2020, soon after he took FMLA leave, and when President Eighmy specifically mentioned Smith's inability to satisfy the PIP despite FMLA accommodations in recommending termination to the Regents. (Fourth Am. Compl. [#18], at ¶¶ 121–24.)

38

Defendants UTSA, UT System, Dean Browning, and President Eighmy argue that both of Smith's FMLA claims are barred by limitations. Both interference and retaliation claims arising under the FMLA are subject to a two-year statute of limitations. 29 U.S.C. § 2617(c)(1). Defendants contend that Smith's interference claim accrued on the date he received the PIP and was aware of its contents in June 2019—nearly four years before he filed suit on April 26, 2023. Defendants argue that Smith's retaliation claim accrued when Smith's FMLA leave and medical restrictions ended and Dean Browning proposed termination in May 2020—three years before he filed suit. (*See* Espy Mem. [#19-1], at 4 n.5.)

The District Court should reject Defendants' limitations argument as to Smith's retaliation claim. The FMLA is clear that the limitations period commences upon the "last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). Smith's retaliation claim focuses on the harm that was caused when his exercise of FMLA rights was used as grounds for termination. Plaintiff had his pre-termination hearing on April 26, 2021; Eighmy recommended his termination to the Regents on July 27, 2021, allegedly referencing the intermittent FMLA leave and Smith's inability to satisfy the PIP despite his receiving FMLA leave and various accommodations; and Smith was terminated on November 18, 2021. (Fourth Am. Compl. [#18], at ¶ 54.) All these dates are within two years of the date he filed this lawsuit. Smith's FMLA retaliation claim is not time-barred.

Any claim of FMLA interference, however, is time-barred. Smith contends that the last event as to this theory of FMLA liability was also his termination, as Defendants did not just interfere with his FMLA by imposing an overly demanding PIP but by terminating him when he failed to satisfy the PIP. One of the essential elements of an FMLA interference claim is a showing of prejudice by the alleged interference or denial of FMLA rights. *Acker v. Gen.*

*Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017). Smith maintains that part of the prejudice he suffered was the termination.

The Court should reject Smith's argument, as it would require the Court to embrace duplicative theories of FMLA interference and retaliation. A court looks to the substance of a plaintiff's claim to determine whether it arises "from the deprivation of an FMLA entitlement (interference) or from punishment exacted for the plaintiff's exercise of an FMLA right (retaliation)." *Kendall v. Walgreen Co.*, No. A-12-CV-847-AWA, 2014 WL 1513960, at *5 (W.D. Tex. Apr. 16, 2014) (citing *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 351 (5th Cir. 2013) (Elrod, J., concurring)). Smith's retaliation claim focuses on his termination as a punishment for the exercise of his right to FMLA leave. To constitute a distinct theory of FMLA liability, Smith's interference claim must focus on the deprivation of his right to FMLA. Smith alleges that the overburdensome PIP deprived him of his ability to take the FMLA leave to which he was entitled. Smith's pleading alleges that his FMLA leave ended in February or March of 2020, approximately three years before he filed suit. (Am. Compl. [#18], at ¶ 122; Espy Mem. [#19-1], at 4 n.5.) Smith's FMLA interference claim therefore accrued at the latest when his FMLA leave ended and he was reinstated without limitation, which was approximately three years prior to his filing suit. Accordingly, his FMLA interference claim is time-barred. Because Smith's FMLA interference claim is time-barred, the Court need not consider Defendants' other arguments as to the implausibility of this claim.

As to Smith's FMLA retaliation claim, Defendants argue Smith does not plead a plausible causal link between his FMLA leave and his termination. Neither the Fifth Circuit nor the Supreme Court has decided whether the heightened "but for" causation standard required in Title VII retaliation cases applies to FMLA retaliation claims. *See Stanton v. Jarvis Christian*

*Coll.*, No. 20-40581, 2022 WL 738617, at *5–6 (5th Cir. Mar. 11, 2022) (discussing cases).  The Fifth Circuit has, however, previously applied a mixed-motive framework to FMLA retaliation cases.  *Id.* (citing *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)).  Smith alleges he was terminated for his failure to satisfy a PIP that imposed expectations inconsistent with his FMLA leave.  Smith alleges that President Eighmy specifically referenced his inability to satisfy the PIP despite being given accommodations through his FMLA leave in his termination recommendation.  (Fourth Am. Compl. [#18], at ¶ 123.)

When evaluating causation in an FMLA retaliation case, the court should consider the temporal proximity between the FMLA leave and the termination.  *Mauder*, 446 F.3d at 583.  Smith's allegations regarding President Eighmy's reference to the FMLA, combined with the close temporal proximity between Smith's FMLA leave and the formal termination recommendations of Dean Browning and President Eighmy, are sufficient to state a plausible causal connection between Smith's exercise of his right to FMLA leave and his termination, i.e., that his FMLA leave played a role in the challenged employment action.  *See Richardson*, 434 F.3d at 333.

Smith's FMLA leave concluded in March 2020, and Dean Browning recommended him for termination in May 2020.  (Fourth Am. Compl. [#18], at ¶ 121–24; Espy Mem. [#19-1], at 4 n.5.)  Defendants argue that the Fifth Circuit has held that a temporal proximity of two-and-a-half months between FMLA leave and termination was not sufficient to establish causation.  *See Besser v. Tex. Gen. Land Office*, 834 Fed. App'x 876, 884–85 (5th Cir. 2020).  But *Besser* was decided in a different procedural posture on a motion for summary judgment, and the temporal proximity between the FMLA leave and adverse employment action was the sole basis for causation.  *Id.*; *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)

(affirming summary judgment in favor of defendant where only causation evidence was temporal proximity of three months). Here, Smith alleges that his FMLA leave was expressly referenced by President Eighmy in his July 2021 letter recommending termination to the Regents. (Fourth Am. Compl. [#18], at ¶ 54.) Smith's causation allegations therefore encompass more than merely a temporal relationship between his FMLA leave and termination. Moreover, the Fifth Circuit has repeatedly found that a two to four month gap is sufficient to satisfy the causation requirement of a prima facie case of retaliation. *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (76-day period between protected activity and termination sufficient to create causal connection for purposes of prima facie case); *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 995 (5th Cir. 2005) (two-month period sufficient to show causal connection); *Evans v. Cnty. of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (four-month period sufficient to establish causation). Smith is not required to prove causation to survive Defendants' motion to dismiss, only to plead a plausible causal connection between his FMLA leave and termination. He has done so.

The undersigned is also not persuaded by Defendants' argument that because Smith's performance issues predated the beginning of his FMLA leave, there can be no causal connection to sustain his retaliation claim. The cases cited by Defendants were in a summary judgment posture and were not evaluating the plausibility of allegations regarding causation on a motion to dismiss. Instead, these cases evaluated whether the plaintiff could establish that the employer's legitimate non-retaliatory reasons for an adverse employment decision were pretext for unlawful retaliation. *See Mauder*, 446 F.3d at 584 (affirming summary judgment for employer where plaintiff presented "weak inference" as to pretext in light of his already being "on corrective action approximately three weeks" before requesting FMLA leave and there being extensive

documentation of legitimate, nondiscriminatory reasons for plaintiff's discharge); *Ray v. United Parcel Serv.*, 587 Fed. App'x 182, 196 (5th Cir. 2014) (affirming summary judgment for employer where plaintiff failed to produce substantial evidence of pretext in light of evidence that employer "initiated performance-improvement measures prior to [plaintiff's] FMLA leave"). At the pleading stage and in light of the mixed-motive causation framework applicable to Smith's FMLA retaliation claim, Smith's allegations are sufficient to survive Defendants' motion to dismiss.

**E.    Smith fails to plead a plausible claim under Section 504 of the Rehabilitation Act.**

Smith alleges he suffered from disability discrimination related to injuries sustained in a bicycle injury in violation of the Rehabilitation Act. (Fourth Am. Compl. [#18], at ¶¶ 125–32.) To avoid dismissal of a claim of disability discrimination under the Rehabilitation Act, Smith must plead facts supporting the following elements: (1) that he is a qualified individual with a disability; (2) that he is being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 417 (5th Cir. 2021). Section 504 of the Rehabilitation Act is construed under the same governing standards as claims of disability discrimination under the American with Disabilities Act, except that Section 504 imposes a heightened causation standard, requiring "but for" causation. *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005) (citing 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability in the United States . . . shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .") (emphasis in original).

Smith alleges he has permanent impairments resulting from a bicycle accident and was discriminated against by Defendants when they adopted a PIP that failed to accommodate his disabilities and then terminated him for failing to meet the PIP's requirements.  (Fourth Am. Compl. [#18], at ¶ 131.)  This claim parallels Smith's FMLA retaliation claim, and Defendants also argue this claim was filed outside of the two-year limitations period governing Rehabilitation Act claims.  *See  Frame*, 657 F.3d at 237 (recognizing two-year limitations period for Rehabilitation Act claims).  For the same reasons stated with respect to Smith's FMLA retaliation claim, this claim is also not barred by limitations.  Smith suffered harm when his disabled status and inability to work a full schedule was held against him when evaluating whether he satisfied the requirements of his PIP, resulting in his termination.

Defendants also challenge the factual sufficiency of Smith's Rehabilitation Act claim, arguing that Smith fails to adequately plead but-for causation.  The undersigned agrees.  Smith's pleading does not plausibly allege that disability discrimination related to his bicycle injuries were the sole reason for his termination.

Smith's pleading does not provide an approximate or exact date of his bicycle accident, but he clearly alleges that he was placed on a PIP in June 2019 that later had to be modified due to his injuries.  (Fourth Am. Compl. [#18], at ¶¶ 26–30.)  The timing of his allegations foreclose any plausible assertion that the only reason he was placed on a PIP was disability discrimination or that the only reason he was disciplined for failing to satisfy that PIP was disability discrimination.

Smith admits that he fell short of the demands of the 2019 PIP.  (*Id.* at ¶¶ 32–33.)  And Smith alleges that there were multiple reasons he could not satisfy the 2019 and 2020 PIPs wholly unrelated to his alleged disability, namely the COVID-19 pandemic and his lack of

experience conducting academic research. (*Id.* at ¶¶ 31, 34.) Smith also alleges in his Complaint that racial discrimination, not just disability discrimination, contributed to the termination decision. (*Id.* at ¶ 35.) Smith may have plausibly alleged that Defendants unlawfully relied on the FMLA as one reasons for his termination, but he has not alleged that disability discrimination was the sole reason for his termination. If his termination was motivated even in part by other considerations, Smith cannot prevail on his Rehabilitation Act claim. *See Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F. Supp. 3d 681, 704 (N.D. Tex. 2014) (dismissing Rehabilitation Act claim for failure to plead but-for causation where complaint referenced "other considerations" such as personal animus and race-based/national-origin discrimination). The Court should grant Defendants' motion to dismiss as to Smith's Rehabilitation claim.

**F.     Smith fails to plead a plausible violation of Title VII and the Texas Labor Code.**

Smith alleges he suffered retaliation in violation of Title VII and Chapter 21 of the Texas Labor Code in retaliation for opposing unlawful workplace practices.[3] (Fourth Am. Compl. [#18], at ¶¶ 133–38.) Smith alleges that he reported to UTSA his belief that Dean Browning was a racist in both 2017 and the Spring of 2020 and that shortly after both complaints he suffered adverse employment actions—the initial recommendation by Dean Browning for termination in November 2017 and a formal termination recommendation in May 2020. (*Id.* at ¶¶ 136–37.)

To plead a claim of Title VII retaliation, a plaintiff must allege that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). Retaliation claims under the Texas

---

[3] Defendants repeatedly argue Smith fails to state a Title VI claim in their motion, but Smith does not assert a Title VI claim in his pleading or reference this claim in his responses to the motions to dismiss.

Labor Code are guided by the same analysis that applies to claims of retaliation under Title VII. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014).

Defendants' challenge to these claims are two-fold. First, they argue that Smith fails to plead protected activity because he provides insufficient details of the basis of his belief that Dean Browning was racist and as to what decisions she supposedly made or how they were impacted by race. Second, Defendants argue Smith fails to allege that anyone who participated in the Rule 31008 process knew about the report or acted on the termination decision because of it. The undersigned agrees with Defendants that Smith's allegations as to engaging in protected activity by reporting race discrimination are too vague to give rise to a plausible claim of retaliation under Title VII or the Texas Labor Code.

The totality of Smith's allegations regarding his Title VII protected activity are that he "reported that his supervisor, Dean Browning was a 'racist'" in the Spring of 2020 and had made a similar report previously in 2017. (Fourth Am. Compl. [#18], at ¶ 35.) Smith does not describe the basis of this complaint, identify to whom he made these reports, or advance any specific allegations suggesting that any decisionmaker influencing or participating in the termination decision had knowledge of these complaints. "[T]o establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003). Generally, this requires some showing that the decisionmaker—the individual "who actually made the decision or caused the decision to be made"—was aware of the activity. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000). Smith's pleading does not include any allegations from which such knowledge could be inferred. A reasonable factfinder could not infer any retaliatory motivation in the termination of Smith related to the

alleged protected activity of reporting racial bias based on Smith's allegations, and the District Court should dismiss these claims.  *See E.E.O.C. v. EmCare, Inc.*, 857 F.3d 678, 683–84 (5th Cir. 2017) ("[I]f the plaintiff fails to produce any evidence that a decisionmaker was aware of the protected activity, judgment as a matter of law should be granted.")

**G.     Dean Browning's and President Eighmy's defense of qualified immunity is moot.**

Defendants' final challenge to Smith's pleading is that Dean Browning and President Eighmy are entitled to qualified immunity as to the claims asserted against them in their individual capacities.  Qualified immunity shields federal and state officials from liability for monetary damages.  To overcome qualified immunity a plaintiff must plead facts showing both (1) that the official violated a statutory or constitutional right, and (2) that the right allegedly violated was "clearly established" at the time of the alleged violation.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Defendants do not identify for which of Smith's claims they are asserting a qualified immunity defense.  But a review of Smith's pleadings suggests that he is only asserting individual-capacity claims against Dean Browning and President Eighmy as to his free-speech retaliation claim.  (Fourth Am. Compl. [#84], at ¶¶ 75, 84.)  Smith does not assert any other allegations against Dean Browning and President Eighmy in their individual or personal capacities.  The undersigned has already recommended that these claims be dismissed for failure to state a claim under Rule 12(b)(6).  Accordingly, the qualified immunity defense is moot.

Because Smith does not allege any other causes of action against Dean Browning and President Eighmy in their individual capacities, they should be dismissed from this lawsuit in their personal capacities.

## VI.  Conclusion and Recommendation

Having considered Defendants' motions, the responses and replies thereto, the pleadings, and the governing law, the undersigned **recommends** that Defendants UTSA, UT System, Dr. Joann Browning, and Dr. Taylor Eighmy's Motion to Dismiss Plaintiff's Fourth Amended Complaint [#19] and Defendant the University of Texas System Board of Regents' Motion to Dismiss Plaintiff's Fourth Amended Complaint [#29] be **GRANTED IN PART AND DENIED IN PART**.  In light of the various immunity determinations and the conclusions as to the sufficiency of the pleadings detailed herein, the undersigned makes the following recommendations as to the claims and parties at issue in this suit:

- The District Court should dismiss Smith's due process, failure to train, and free-speech retaliation claims under Section 1983 and the Texas Constitution as to all Defendants for failure to state a claim (Counts 1 through 6).

- The District Court should grant Defendants' motion to dismiss as to Smith's FMLA interference claim but deny Defendants' motion to dismiss as to Smith's FMLA retaliation claim for failure to state a claim (Count 7).

- The District Court should dismiss Smith's Rehabilitation Act, Title VII, and Texas Labor Code claims for failure to state a claim (Counts 8 and 9).

- Defendants UTSA, the UT System, the Board of Regents as an entity, and Dean Browning and President Eighmy in their official capacities should be dismissed from this suit because they are immune from suit under the Eleventh Amendment as to all claims except for the Rehabilitation Act and Title VII, claims which should be dismissed from this action for failure to state a claim.

- Dean Browning and President Eighmy should be dismissed from this suit as to any claim asserted against them in their individual capacities.

- The only remaining Defendants should be the individual Regents in their official capacities.  The Eleventh Amendment bars Smith's FMLA retaliation claim for damages against the individual Regents in their official capacities but permits Smith to seek prospective injunctive relief, including reinstatement.

## VII.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Objections are limited to no more than 20 pages unless leave of court is granted.  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 21st day of August, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE